IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

BENJAMIN BEDOGWAR ORYANG,
INMATE IDENTIFICATION NUMBER: 168079
    (Plaintiff)

                VS.          CIVIL ACTION NO: _____
                                              (To be assigned)

DR. JOHN DOE, BILLY MITCHEM, DR. JANE
DOE, nurse JANE DOE, DR. JOHN DOE (II),
JOSEPH GUTHRIE, DR. JOHN DOE (III), DR.
TAHIR SIDDIQ, nurse practitioner JOHN
DOE, MS. WAUGH, DR. PERRYMAN, DR. BELL,
LIEUTENANT PARKER, JOSEPH HEADLEY,
JEFFERSON DUNN, NAPHCARE, CORIZON, PRIS-
ON HEALTH SERVICES, CORRECTIONAL MEDICAL
SERVICES, WEXFORD HEALTH SERVICES,
ALABAMA DEPARTMENT OF CORRECTIONS,
Individually and in their Official capac-
ities,
        (Defendants)

2019 OCT -2 A 11: 42
U.S. DISTRICT COURT
N.D. OF ALABAMA

2:19cv1615 KOB-HNJ

I.   Previous lawsuits
    A. Have you began other lawsuits in state or federal court(s) dealing
       with the same facts involved in this action or otherwise relating
       to your imprisonment?
       YES  ( X )         NO (   )
    B. If your answer to (A) is "Yes," describe each lawsuit below.
       1. Parties to previous lawsuit #1:
          Plaintiffs: Benjamin Oryang, Michael Carpenter, et.al.
          Defendants: Warden, Donaldson Correctional Facility; Commiss-
                     ioner, Alabama Department of Corrections

          Parties to previous lawsuit #2:
          Plaintiffs: Benjamin Oryang and all those similarly situated
          Defendants: Warden Steven Bullard, et.al

       2. Court
          Lawsuit #1: U.S. District Court for the Middle (or Northern)
                     District of Alabama.

          Lawsuit #2: U.S. District Court for the Northern (or Middle)
                     District of Alabama.

       3. Docket Number
          Lawsuit #1: Unable to recall (Records confiscated by prison
                     authorities in 2013) (See Exhibit I)

          Lawsuit #2: Unable to recall (Records confiscated by prison
                     authorities in 2013) (Exhibit I)

4. Name of judge to whom case was assigned, lawsuit #1: <u>Unable to recall. (Records confiscated by prison authorities)</u>
Name of judge to whom case was assigned, lawsuit #2: <u>Unable to recall. (Records confiscated by prison authorities)</u>

5. Disposition, lawsuit #1: <u>Settlement reached; Department of Corrections abolished regulation that prohibited prisoners from receiving more than one newspaper and one magazine in the mail.</u>
Disposition, lawsuit #2: <u>Dismissed with prejudice for failure to state a claim upon which relief could be granted.</u>

6. Approximate date of filing lawsuit #1: <u>Between 1995 and 1997</u>
Approximate date of filing lawsuit #2: <u>Between 2000 and 2002</u>

7. Approximate date of disposition, lawsuit #1: <u>Between 1997 and 1999</u>
Approximate date of disposition, lawsuit #2: <u>Between 2003 and 2006</u>

II. Place of present confinement: <u>Staton Correctional Facility, Elmore County, Alabama</u>

   A. Is there a prisoner grievance procedure in this institution?
      **Yes ( X )**        No (   )

   B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?
      **Yes ( X )**        No (   )

   C. If the answer is **YES**:

      1. What steps did you take? <u>After numerous treatment requests were denied without even cursory evaluation, I filled out a formal Medical Grievance form and submitted it to the health-care providers</u> (EXhibit II)

      2. What was the result? <u>The health-care providers scheduled me for an appointment with the site-medical doctor, who referred me to an off-site specialist for further evaluation; the off-site specialist determined that I was sent to him after it was too late for any treatment to help my condition.</u>

   D. If your answer is **NO**, explain why not? _____<u>N/A</u>_____

III. Parties:

   A. Name of plaintiff <u>Benjamin Bedogwar Oryang</u>
      <u>AIS# 168079   F2-34A</u>
      Address: <u>Staton Correctional Facility</u> / 2690 MARION SPILLWAY Rd.
      <u>Elmore, Alabama 36025</u>

-2-

B. Defendant Dr. John Doe (See Notice of Restrictions)
Is/Was employed as On-site medical doctor (November 1999 to April 2001)
At Donaldson Correctional Facility, Bessemer, Alabama

C. Additional Defendants:
Billy Mitchem, Warden, Donaldson Correctional Facility (1999, 2000, 2001)

Dr. Jane Doe, on-site medical doctor, Donaldson C.F. (2001)

Jane Doe, "sick-call" screening nurse, Donaldson C.F. (1999 to 2009)

Dr. John Doe (II), on-site medical doctor, Kilby C.F. (May 3 and 4, 2001)

Joseph Guthrie, nurse practitioner, St. Clair C.F. (2010-2013)

Dr. John Doe (III), on-site medical doctor, St. Clair C.F. (December 2009 to mid-2013)

Dr. Tahir Siddiq, on-site medical doctor, Bullock C.F. (2013 to January 2017)

John Doe, nurse practitioner, Bullock C.F. (2014 - 2017)

Ms. Waugh, nurse practitioner, Draper/Staton C.F. (2017 to present)

Dr. Perryman, on-site medical doctor, Draper/Staton C.F. (January 2017 - present?)

Dr. Bell, on-site medical doctor, Draper/Staton C.F. (2017 to present?)

Lieutenant Parker, Americans with Disability Act Coordinator, Draper C.F. (2017 to January 2018)

Joseph Headley, Warden, Staton C.F. (Current)

Jefferson Dunn, Commissioner, Alabama Department of Corrections (ADOC) (Current)

Naphcare, health-care provider, ADOC (1999 -      )

Corizon, health-care provider, ADOC (      - 2018)

Prison Health Services, health-care provider, ADOC (

Corrections Medical Services, health-care provider, ADOC (            )

Wexford Health Services, health-care provider, ADOC (2018 - present)

Alabama Department of Corrections, prison authority, State

-3-

<u>of Alabama (1999 - present)</u>

IV. Supporting facts and statement of Claims:
(Plaintiff re-alleges and incorporates preceding paragraphs I - III and the attached "Affidavit Of Benjamin B. Oryang," in combination with the following facts)

Facts:

Plaintiff Oryang is a Ugandan national who has been incarcerated in the ADOC since 1992. Around November or December, 1992 Plaintiff formally requested an evaluation and treatment for his left ear by signing up for "sick-call screening;" his ear was making ringing sounds, causing him dizziness and difficulty hearing, and had his temperature elevated. Defendant nurse Jane Doe screened Plaintiff and refused to give him any treatment for it, but she referred Plaintiff to Defendant Dr. John Doe for further evaluation and treatment. Dr. John Doe also refused to give Plaintiff treatment. Between November, 1999 and May, 2000 Plaintiff initiated meetings with both nurse Jane Doe and Dr. John Doe around ten more times, in attempt to get treatment for his ailing ear, but they denied him any treatment. After six months of suffering without any treatment for his ailing left ear, an audiologist examined and diagnosed Plaintiff as needing treatment to stop damage that was occurring to his left-inner ear so as to prevent further hearing-loss; the audiologist also ordered hearing-aid placement for plaintiff, and follow-ups to monitor the progress of the treatments he had prescribed. Still, Defendants Dr. John Doe (1999 - 2009), nurse Jane Doe (November 1999 - December 2009), Dr. Jane Doe (May 17, 2001 - 2009), Dr. John Doe (II) (May 3, 2001), Joseph Guthrie (2010 - 2013), Dr. John Doe (III) (December 2009 - May 2013), Dr. Tahir Siddiq (May 2013 - January 2017), nurse practitioner John Doe (2014 - January 2017), Ms. Waugh (2017 - present), Dr. Perryman (2017 - 201?), and Dr. Bell (2017 - 201?) continued to deny Plaintiff's requests for the treatment of his ailing ear, telling him that ADOC, Naphcare, Corizon, Correcections Medical Services, Prison Health Services and Wexford Health Services policies restricted them from giving Plaintiff any treatment or services for his deteriorating left-inner ear and progressively worsening hearing-loss because Plaintiff was able to hear them using his unaffected right ear. Finally on April 9, 2018 a different audio-

logist evaluated and informed Plaintiff Oryang that his inner-left ear had by this time deteriorated too far to be salvaged, and that Oryang's hearing-loss in his left ear had progressed beyond a stage that could be reversed; a May 10, 2018 MRI confirmed the audiologist's diagnosis, and on May 16, 2018 Dr. Bell informed Plaintiff Oryang that he has officially become legally and clinically deaf. Defendants Jefferson Dunn and Joseph Headley, as Commissioner of the ADOC and Warden of Staton Correctional Facility respectively, create the ADOC policies under which their employees operate; the same was true for Defendant Billy Mitchem, but Mitchem was more directly involved in the failure to treat Plaintiff's ear. Defendant Lieutenant Parker failed and/or denied Plaintiff treatment and/or services for his left ear ailments from May 22, 2017 to March, 2018, while the Defendant was employed as institutional coordinator for the Americans with Disability Act at Draper Correctional Facility. To date, despite countless encounters with several different doctors, nurse practitioners, nurses and other prison officials, and despite the reports and prescriptions of two seperate audiologists for the treatment and hearing-aid accommodation of Plaintiff, - along with the symptoms Plaintiff exhibited and his suffering through two decades, - Plaintiff has still been denied any treatment and/or services for his hearing loss. Plaintiff is an immigrations detainee serving a prison sentence for state convictions, but pending deportation upon the conclusion of his sentence. (Exhibit IV)

Claims:

1.  DEFENDANTS' DELIBERATE AND CALLOUS INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS FOR TREATMENT OF HIS EAR VIOLATED PLAINTIFF'S RIGHTS, WERE A DUE PROCESS VIOLATION AND CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT UNDER THE FIFTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

2.  DEFENDANT'S DELIBERATE AND CALLOUS INDIFFERENCE TO A SUBSTANTIAL RISK OF SERIOUS HARM TO PLAINTIFF IN DENYING HIM TREATMENT FOR HIS SERIOUS MEDICAL NEEDS VIOLATED PLAINTIFF'S RIGHTS, VIOLATED DUE PROCESS, AND CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT UNDER THE FIFTH AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

3. <u>DEFENDANTS WERE DELIBERATELY INDIFFERENT TO A SUBSTANTIAL RISK OF SERIOUS HARM TO PLAINTIFF AND VIOLATED HIS RIGHTS WHEN THEY CREATED, UPHELD, OR FOLLOWED POLICIES AND CUSTOMS TO DENY PLAINTIFF TREATMENT AND SERVICES FOR HIS SERIOUS MEDICAL NEEDS WHILE AFFORDING TREATMENT AND SERVICES TO OTHER SIMILARLY AILING PRISONERS, CONSTITUTING A VIOLATION OF DUE PROCESS, CRUEL AND UNUSUAL PUNISHMENT, AND DISCRIMINATION UNDER THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION</u>

4. <u>DEFENDANTS NAPHCARE, PRISON HEALTH SERVICES, CORRECTIONS MEDICAL SERVICES, CORIZON, WEXFORD HEALTH SERVICES, BILLY MITCHEM, JEFFERSON DUNN, JOSEPH HEADLEY AND ALABAMA DEPARTMENT OF CORRECTIONS' CREATION OF POLICIES AND/OR CUSTOMS THAT DENIED PLAINTIFF TREATMENT FOR HIS SERIOUS MEDICAL NEEDS VIOLATED PLAINTIFF'S RIGHTS AND CONSTITUTED A VIOLATION OF DUE PROCESS, AN UNNECESSARY AND WANTON INFLICTION OF PAIN, CRUEL AND UNUSUAL PUNISHMENT, AND DISCRIMINATION UNDER THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION</u>

5. <u>DEFENDANTS' RECKLESS AND CALLOUS INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS FOR TREATMENT VIOLATED PLAINTIFF'S RIGHTS AND CONSTITUTED CRUEL AND UNUSUAL PUNISHMENT UNDER THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION</u>

6. <u>PLAINTIFF HAS NO PLAIN, ADEQUATE OR COMPLETE REMEDY AT LAW TO REDRESS THE WRONGS DESCRIBED HEREIN. PLAINTIFF HAS BEEN AND WILL CONTINUE TO BE IRREPARABLY INJURED BY THE CONDUCT OF THE DEFENDANTS UNLESS THIS COURT GRANTS THE DECLARATORY AND INJUNCTIVE RELIEF WHICH PLAINTIFF SEEKS</u>

**V.  RELIEF:**

Plaintiff respectfully prays that this Honorable Court will enter judgments granting Plaintiff:

1. A declaration that the acts and omissions described herein violated and continue to violate Plaintiff's rights under the

Constitution and laws of the United States.

2. A preliminary and permanent injunction ordering Defendants Jefferson Dunn, Joseph Headley, Alabama Department Of Corrections and Wexford Health Services to:
   (i) Implement or enforce within the ADOC and Staton Correctional Facility the ADOC Administrative Regulation 705-I, 705-II, 705-IV-C, 705-IV-J, 705-V-C, and 705-V-H so that Plaintiff can start being provided with services for auxiliary aids, hearing assistance, and devices for his hearing impairment.
   (ii) Implement or enforce within the ADOC and Staton Correctional Facility the Americans with Disability Act Court orders under which the ADOC is bound regarding their responsibility towards prisoners with disabilities, so that Plaintiff is afforded Constitutionally appropriate treatment and services for his hearing impairment.
   (iii) Cease the ADOC and health-care provider policies and/or customs that dictate no treatment or hearing-aid placement for ADOC prisoners with ailing ears if they have one functioning ear, and amend the said policies or customs to conform to both the Eighth Amendment and the requirements of the ADA.

3. A preliminary and permanent injunction against all Defendants, ADOC employees, ADOC health-care providers and ADOC affiliates to:
   (i) Desist from any form of retaliation against Plaintiff, real or implied, for his having filed this lawsuit.

4. Compensatory damages in the amount of $600,000 against each Defendant.

5. Punitive damages in the amount of $675,000 against each Defendant.

6. A jury trial on all issues triable by jury.

7. Plaintiff's costs in this suit.

8. Any additional relief this Honorable Court deems just, proper and equitable.

Respectfully Submitted,

_____  9/30/2019
BENJAMIN B. ORYANG   168079
(PLAINTIFF)

I Declare under penalty of perjury that the foregoing is true

and correct.

Executed on  9/30/2019

                                  BENJAMIN B. ORYANG
                                  AIS   168079   F2-34A
                                  STATON CORRECTIONAL FACILITY
                                  2690 MARION SPILLWAY ROAD
                                  ELMORE, ALABAMA 36025
                                      (Plaintiff, Pro Se)

                                  NOTARY SERVICE
                                  My Commission Expires September 28, 2021.

My Commission Expires: _____

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA

## AFFIDAVIT OF BENJAMIN B. ORYANG

Before me a Notary Public personally appears Benjamin B. Oryang #168079, who swears under oath to the following:

My name is Benjamin B. Oryang and I have been incarcerated in the State of Alabama since 1991, and in the Alabama Department of Corrections since 1992. I make this Affidavit of my own free will.
Around November or December, 1999 while housed at Donaldson Correctional Facility I begun to suffer dizziness, elevated temperatures, ringing sounds, and difficulty hearing out of my left ear, so I requested for treatment by signing up for "sick-call screening." The screening nurse referred me to Dr John Doe ("John Doe" and Jane Doe" are herein designated for names I have forgotten or are not known to me, but which can be ascertained from my prison medical file or prison record. All single last names are the only identifications I have, but full names can also be ascertained from my prison medical file or prison record) who refused to give me any treatment for it, despite its persistence. After around ten separate visits with a screening nurse and/or Dr John Doe without being given any treatment for my left ear, on May 18, 2000 I was eventually taken to an off-site audiology clinic for evaluation, afterwhich the audiologist informed me that my inner-left ear was marked by scarring that was consistent with damage caused by an untreated ear infection; the audiologist said he had written orders for treatments that would prevent further damage to my inner ear, had ordered hearing-aid placement, and a follow-up with him to monitor the progress of my treatment.
Even after the audiology exam and orders, Dr John Doe refused to give me any treatment for my left-ear problems; my dizziness, ringing ear and consistent hearing loss continued. I continued signing up for sick-call, saw the screening nurse and Dr John Doe several more times, all to no avail until on November 1, 2000 when Nurse Jane Doe informed me the prison doctor had ordered over-the-counter motrin tablets for me, though she was unaware what the purpose of the order was. (I was suffering with other ailments at the time, and continue to suffer with other ailments that require me to meet with the healthcare providers quite often)
On November 1, 2000 I submitted a formal request to meet with Warden Billy Mitchem pleading with him to intervene, and on November 8, 2000 he met formally with me to address my complaint about a lack of medical treatment for my left ear: the warden told me he would address my complaints with the medical staff, but still nothing was done about it. On January 26, 2001 I was asked to prepare for transport to see an audiologist, but before the trip a shift supervisor by the name of Sergeant Reynolds informed me that my appointment had been cancelled, even though other prisoners scheduled for the same trip would still be taken for their appointment with the audiologist. I continued seeking treatment and on February 26, 2001 nurse Jane Doe informed me that my audiology appointment was cancelled because I could hear sufficiently enough out of my rightear, and on March 15, 2001 nurse Jane Doe informed me that both Naphcare and DOC policy dictated no treatment for my left ear because, according to her, I could hear sufficiently enough out of my right ear.

-1-

Beginning on March 29, 2001 I sent the first of several letters pleading for treatment and hearing-aid accommodation to the warden and to the the healthcare providers at Donaldson, but neither of them responded to me. Instead on May 1, 2001 I was abruptly transferred to a different prison, where I continued my formal request for treatment of my left ear. On May 3, 2001 Dr John Doe evaluated me while at the Kilby Correctional Facility, and told me he was making a referral for me to be treated by an audiologist but, on May 4, 2001 I was again transferred back to Donaldson before any audiologist visit or treatment had been given to me.

On May 17, 2001 upon another formal request for treatment for my left ear, Dr Jane Doe ordered Antivert medication specifically to target the ringing sounds I was experiencing, but told me that she would not be giving me any additional treatments or making any referrals regarding my left ear problems. After over eighteen months of trying, this was the first treatment I was given for my left-ear problems; it, along with a second time the same medication was ordered a decade later have been the only two treatments I have been given for my left-ear problems. From May, 2001 to May, 2018 I continued to request treatment for my progressively worsening hearing loss, particularly during times when the ringing sounds and dizziness were high. I also requested hearing-aid placement multiple times. All my requests were ignored or denied except for one time when Antivert medication was ordered for the ringing ears. The following is a summary:

<u>Donaldson Correctional Facility</u> (1992 to December, 2009)
After May 17, 2001, no other treatment was given for my worsening hearing-loss, dizziness, or ringing ears, despite my verbal requests and formal requests to Dr John Doe, nurse Barbara Arthur, Dr Jane Doe, and every other healthcare provider I came into contact with. I was diagnosed with "possible avascular necrosis" around 2006, and in effect had many appointments with the facility doctor and nurses; every single request for treatment for my ear was denied.

<u>St Clair Correctional Facility</u> (December, 2009 to mid-2013)
Dr John Doe, Anissa Thomas (nurse practitioner), nurse Guthrie (nurse practioner) and every other healthcare provider I requested treatment from for my left ear refused, with the explanation that Department of Corrections and healthcare company policies both dictated no treatment or hearing-aid placement for my left ear because I could hear them sufficiently enough with my right ear as they spoke to me.

<u>Bullock Correctional Facility</u> (Mid-2013 to January, 2017)
During this time I could still make phone calls and hear what is transmitted through the speaker using my left ear. When I suffered a bout of severe ringing and dizziness, Dr Siddiq Tahir ordered Antivert medication for the ringing ear, but said he would not give me any other treatment or hearing-aid placement for it unless the ear had become painful; he told me to stop wasting his staff's time with any complaints about my ear. Nurse practitioner John Doe also denied my requests to him for help.

<u>Draper Correctional Facility</u> (January, 2017 to March, 2018)
When my ear started emitting ringing sounds again and I had a visit with nurse practitioner Ms Waugh, she told me that nothing will be done about my ear because I can hear her as she spoke to me. She said she was not going to refer me to anyone else, and that I should stop bothering healthcare staff about my ear. Because I

was suffering with the most persistent dizziness and ringing sounds in my left ear that I had yet experienced, simultaneously, I continued to request treatment. On May 22, 2017 I filed a formal request for accommodations under the Americans With Disability Act (ADA), but three weeks later Lt Parker, the Draper ADA Coordinator, told me to personally hand him another request because he never received the first one; I handed him another request that he promised to process. After several weeks without any response to my ADA requests I signed up for sick-call screening again: Ms Waugh told me that she was not going to give any treatment for my ringing ear, dizziness or what had become severe hearing difficulty from my left ear, but at my request she referred me to the site doctor. On July 17, 2017, the scheduled day of the appointment, a Miss Evans in the healthcare unit told me that my appointment with a Dr Perryman was being cancelled because I had "already seen the nurse practitioner" about my ear, and she told corrections officers Barber, Simpson and Cunningham to send me back to my unit. On August 28, 2017 Ms Waugh told me that because I could hear her well enough while she spoke to me, Dr Perryman was not obliged to do anything about my hearing-loss and its related complications*. On October 19, 2017 I sent a letter to the U.S. Department of Justice investigators concerning prison conditions at Draper, pursuant to their probe into Draper Correctional Facility. On December 11, 2017 I was summoned to an interview with the ADOC state-wide ADA Coordinator, the ADOC Eastern Region Coordinator, and Lt Parker who was Draper's ADA Coordinator: they wanted to know my opinion regarding services provided to ADOC prisoners, so I detailed to them my experience of being denied all the treatment and services required by the Disability Act, despite my formal claims and requests. In early January, 2018 the ringing sounds in my left ear and the dizziness abruptly stopped on their own, but my left ear felt like it had an ear-plug in it: when it persisted for a few days, on January 10, 2018 I decided to instead file a formal Medical Grievance for the blatant refusals to treat my clearly serious medical condition extending over eighteen years; I requested a copy of the May 18, 2000 audiology report and order from my medical file so that I could try on my own to seek alternative treatments for my hearing difficulty and loss. (Exhibit II)

After the filing of my medical grievance, the following occurred:

On January 30, 2018 I was evaluated by Dr Bell, the ADOC doctor. After his evaluation of my left ear and review of my prison medical record, Dr Bell told me he was terribly sorry I had not received treatment in so many years; he said my condition required that he refer me to a specialist for specialized evaluation and treatment.

On April 9, 2018 I was taken to an off-site audiology clinic where extensive evaluations were done of my ears. Afterwards, the audiologist asked me why I waited two whole decades since the initial audiology exam to seek treatment; he said since the May 18, 2000

---

*My medical record reflects that I also suffer with hypertention, Paget's Disease of bone, and a herniated disk. On 10/13/2017 Ms Waugh notified me that I also have severe spinal arthritis with the development of spikes, which is also responsible for my pain and stiffness. However, after that she discontinued the ambulation-assistance and inflamation/pain-management treatments prescribed by the diagnosing orthopedists and ADOC doctors for over a decade, in effect increasing my suffering and placing me at higher risk of sustaining injury. I recently filed a medical grievance and intend to add this as an additional claim if not resolved. (Exhibit III)

-3-

    audiology report that we discussed, my inner-left ear and ability to hear out of my left ear had both deteriorated too far to be salvaged through any known treatment, or to be reversed through any means he knew of. As a last-ditch effort to determine other possible diagnoses he recommended an MRI of my cranium to find out if I had a tumor causing nerve-blockage or other anomalies that could minimize the connotations of having had no treatment of consequence since the onset of my left-ear problems in 1999.
    On May 10, 2018 I was taken to an off-site imaging clinic where an MRI of my cranium was performed.
    On May 16, 2018 Dr Bell informed me that the MRI results ruled out other possible diagnoses and/or treatment options; he informed me that I was now clinically and legally deaf, and that the recommendation of the audiologist was for a hearing-aid that functions by transmitting sounds occurring on my left side to my right ear via microphone, speaker, and cords.

Notwithstanding the Americans with Disability Act settlement the ADOC is bound by under court order, the ADOC Administrative Regulations regarding hearing impaired prisoners, and my extensive record regarding my hearing impairment, May 16, 2018 was the last time (to date) that any prison authority or healthcare provider has consulted with me concerning my impairment; neither have I received any services since then, nor been provided with any hearing-aid accommodations or check-ups yet.

The gradual loss of ability to hear out of my left ear saw me suffer many different episodes of dizziness and a ringing ear across the decades. Now I constantly feel endangered due to an inability to hear verbal or sounded warnings; it has caused me to repeatedly be accused of ignoring or disobeying authority orders or sound signals, to suffer missed opportunities and untold mental/psychological insecurities. It also has direct dampening effect on my future abilities to execute in my dual careers of practical nursing, and as a master technician (in the fields of Heating, Ventilation, Air Conditioning and Refrigeration) which require keen listening for effective and safe functioning.

Under penalty of perjury, I swear and affirm that the above is true and correct, to the best of my knowledge and recollections.
Respectfully submitted on this the 30th day of September, 2019.

                              BENJAMIN B. ORYANG
                              AIS# 168079 F2-34A
                              STATON CORRECTIONAL FACILITY
                              2690 MARION SPILLWAY ROAD
                              ELMORE, ALABAMA 36025

**NOTARY**
SWORN TO AND SUBSCRIBED BEFORE ME ON THIS THE 30th DAY OF September, 2019.

                        NOTARY SERVICE
                        My Commission Expires September 26, 2021.

                        MY COMMISSION EXPIRES

**EXHIBIT I**

# State of Alabama
# Department of Corrections



104 Bullock Drive
P. O. Box 5107
Union Springs, AL
(334) 738-5625

ROBERT BENTLEY
GOVERNOR

KIM T. THOMAS
COMMISSIONER

DATE: August 1, 2013

FROM: Warden Rene' Mason

TO: Inmate Benjamin Oryang B/168079

RE: **Excessive paper documents**

Inmate Benjamin Oryang (B/168079) was transferred to Bullock Correctional Facility from St. Claire Facility on July 18, 2013. Inmate had eight three (83) pounds of paper documents which he stated was current legal documents.

On this date, Inmate Oryang and his excess paper property was brought to my office. Inmate Oryang stated the following legal work was current:

US Northern District: CV-03-H-0287-S
US Middle District: CV – 97- T-1778-N
Al Criminal Court of Appeals: App No 95-1765

The above cases were checked with the following dispositions:

CV- 03-H-0287-S: Closed
CV – 97- T-1778 –N: Closed 1/99
Al Criminal Court of Appeals App No 95-1765: Closed 1/97

I am requesting the following boxes be mailed to my brother:
David Oryang
▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Dumfries, Va. 22026

168079
BENJAMIN ORYANG         8/1/13      $34.08 (55 lb box)
                                     28.12 (28 lb box)
[signature]             8/1/13      $62.20
Witness

M.O. Made out to US Postal

# EXHIBIT II

**CORIZON HEALTH**

Alabama Inmate Grievance

[✓] Medical Grievance      [ ] Medical Grievance Appeal

Check the appropriate above box which identifies the type of grievance you are filing. Be aware that you may not check the appeal box if you have not previously submitted a grievance for the same issue.

NAME: BENJAMIN ORYANG      AIS #: 168079      UNIT: H1-20A      DATE: 01/10/2018

---

**PART A --- Inmate Grievance**

After numerous attempts over the past eighteen years (only one of those years while here at Draper), prison healthcare staff and administrators have repeatedly denied me treatment and placement for my hearing-loss. As a result I am suffering missed opportunities and also I feel endangered due to not hearing warnings. My medical file will reflect that on 05/18/2000 I was transported from Donaldson Prison to the Kirkland Clinic in Birmingham, Alabama, for an audiology exam. The resultant order by the audiologist was for hearing auxiliary aid placement and further evaluation/treatment, but this has been denied/withheld by Corizon staff and prison administrators. I need to know, in writing, the official reason for this continued denial, and I need a copy of the Kirkland Clinic order of 05/18/2000 so I can pursue other means to get help/treatment. Thky

INMATE SIGNATURE: [signature]

---

**PART B – RESPONSE**      DATE RECEIVED: 1-25-18

Mr Oryang we have made you an appointment to see Dr Bell so he can evaluate your hearing loss. Dr Bell will determine if you need to go to offsite provider. Please look for your appointment in newsletter

CMS Department Head Signature: [signature]

DATE: 1-25-18

---

If you wish to appeal a grievance response you may file a Grievance Appeal. Return the completed form to the attention of the Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.

MEDICAL ADMINISTRATOR USE ONLY:
[ ] Medical   [ ] Dental   [ ] Mental Health   [✓] Other

| | | | | |
|---|---|---|---|---|
| [ ] | I  Quality of Onsite Care | | [✓] | VI  Timeliness of Specialty Care |
| [ ] | II  Quality of Specialty Care | | [ ] | VII  Medication Issues |
| [ ] | III  Access to Onsite Care | | [ ] | VIII  Treatment and Testing Issues |
| [ ] | IV  Access to Specialty Care | | [ ] | IX  Care Staff Conduct |
| [ ] | V  Timeliness of Onsite Care | | [ ] | X  Other |

## Alabama Inmate Grievance

**EXHIBIT III**
AUG 1 2 2019

[✓] Medical Grievance          [ ] Medical Grievance Appeal

Check the appropriate above box which identifies the type of grievance you are filing. Be aware that you may not check the appeal box if you have not previously submitted a grievance for the same issue.

NAME: BENJAMIN ORYANG    AIS #: 168079    UNIT: F2-34A    DATE: 8/12/19

**PART A---Inmate Grievance**

My medical record reflects that I struggle with Paget's Disease of Bone, and a herniated disk. On 10/13/17 MS. Waugh notified me that I also have severe spinal arthritis with the development of spikes, which is responsible for some of my pain and stiffness. However, since then she has discontinued the ambulation-assistance and pain/inflamation-management treatments prescribed by the orthopedists and MDs, saying I do not meet the "criteria" to receive the treatments. Have the orthopedists and MDs been mistaken about my ailments for over a decade? Despite my earnest attempts to manage my ailments with the limited available resources, MS Waugh has effectively increased my suffering and placed me at higher risk to sustain injury. Please refer me to someone who can help me.

INMATE SIGNATURE

**PART B –RESPONSE**    DATE RECEIVED: 8/14/19

Good Evening
I understand your frustration but I need you to put in a sick call. You can get some Ibuprofen for pain.

Department Head Signature: G. Anthony Ombudsman
DATE: 8/14/19

If you wish to appeal a grievance response you may file a Grievance Appeal. Return the completed form to the attention of the Health Service Administrator. You may place the form in the sick call request box or give it to the segregation sick call nurse on rounds.

**MEDICAL ADMINISTRATOR USE ONLY:**
[ ] Medical   [ ] Dental   [ ] Mental Health   [ ] Other

| | | | |
|---|---|---|---|
| [ ] | I   Quality of Onsite Care | [ ] | VI   Timeliness of Specialty Care |
| [ ] | II  Quality of Specialty Care | [ ] | VII  Medication Issues |
| [ ] | III Access to Onsite Care | [ ] | VIII Treatment and Testing Issues |
| [ ] | IV  Access to Specialty Care | [ ] | IX   Care Staff Conduct |
| [ ] | V   Timeliness of Onsite Care | [ ] | X    Other |

U.S. Department of Justice
Immigration and Naturalization Service

Notice of Country to which Deportation has been directed and Penalty for Reentry without Permission

**EXHIBIT IV**

77 Forsyth Street, SW.
Atlanta, Georgia 30303

PLEASE REFER TO THIS FILE NO. A29 884 998

DATE: NOV 0 7 1994

Benjamin Iwangaboko ORYANG, #168079
c/o William E. Donaldson Correctional Center
100 Warrior Lane
Bessemer, Alabama 35023

Dear Mr. Oryang,

**This is a warning. Please read carefully.**

It has been ordered that you be deported to  United Kingdom or Uganda                                                          .

You will be informed, if appropriate, when departure arrangements are complete. If needed, we will assist you as much as possible in arranging your personal affairs for your departure. However, you may be deported at any time and without further notice.

Should you wish to return to the United States you must write this office or the United States Consular Office nearest your residence abroad as to how to obtain permission to return after deportation. Permission must be obtained from the Attorney General if you are seeking admission within five (5) years of deportation or removal, or within twenty (20) years if your deportation was subsequent to a conviction for an aggravated felony.

By law, (Title 8 of the United States Code, Section 1326), any alien who has been arrested and deported or excluded and deported who enters, attempts to enter, or is at any time found in, the United States shall be subject to the penalties listed below unless, prior to his reembarkation at a place outside of the United States or his application for admission from a foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission:

(a) Any such alien, other than an alien convicted of a felony, shall be fined not more than $250,000.00 or imprisoned for not more than two (2) years. [8 U.S.C. § 1326(a)].

(b) Any such alien whose deportation was subsequent to a conviction for a felony (other than an aggravated felony) shall be fined not more than $250,000.00, imprisoned for not more than five (5) years, or both. [8 U.S.C. § 1326(b)(1)].

(c) Any such alien whose deportation was subsequent to a conviction for an aggravated felony shall be fined not more than $250,000.00, imprisoned for not more than fifteen (15) years, or both. [8 U.S.C. § 1326(b)(2)].

Very truly yours,

[signature]

Assistant District Director
Detention and Deportation

**[72 Hour Notice**

**CERTIFIED**

Form I-294 (Rev. 06/12/92) N

I understand that I may now be removed from the United States sooner than 72 hours after service of the Final Order of Deportation in my case. I knowingly and voluntarily request to waive this 72 hour period and be deported from the United States as soon as possible.

Signed _____ Date _____

_____   _____
        Immigration Officer                          Date

Attorney of record telephonically notified of alien's request for waiver on _____
                                                            Date