**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

RECEIVED

2022 AUG -5  A 10: 18

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

BENJAMIN BEDOGWAR ORYANG,
AIS# 168079,
      Plaintiff,

V.                     CASE NO. 2:21-CV-00023-WKW-CWB

JEFFERSON DUNN, et al.,
      Defendants.

## RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT

    Comes now Plaintiff Benjamin Bedogwar Oryang, pro se, pursuant to this Honorable Court's Orders of May 31, 2022 (Doc. 149) and Rule 56 of the Fed.R.Civ.P., and responds in opposition to the Defendant's motions for summary judgement. (Docs. 49, 50, 52, 53, 87, 92, 104) Plaintiff Oryang submits the following as grounds:

### 1
### JURISDICTION

This civil action is authorized by 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.
This Court has jurisdiction under 28 U.S C. §1331, 1343{a)(3), 1355, 1367, 1391(b)(2), 2201, 2202, 2283, and 2284; 29 U.S.C. § 705(9)(B); and, 42 U S.C. § 12102.

### 2
### FACT'S AND PROCEDURAL HISTORY

(A) Plaintiff Benjamin B. Oryang is an Alabama state prisoner who has been under the custody of the Alabama Department of Corrections ("ADOC") since 1992. (Docs. 1, 5, 25, 36, 126, 151) Plaintiff initiated this Section 1983 action by filing a complaint in the U.S. District Court for the Northern District of Alabama on September 30, 2019, alleging a continuing violation of his federally protected Constitutional Rights against deliberate indifference and cruel and unusual punishment beginning in 1999. (Doc. 1, 5) Plaintiff named 21 defendants who he alleged had been deliberately indifferent to his serious medical needs for the treatment and hearing aid placement of his ailing left ear, and in failing to provide Plaintiff with required Americans With Disabilities Act ("ADA") disability services related to his hearing impairment. (Docs. 1, 5) The Northern District Court dismissed the complaint in part as time barred, without prejudice, and transferred the remaining claims to the U.S. District Court for the Middle District of Alabama. (Docs. 15, 17, 18, 19)

(B) On February 18, 2021 the Middle District Court entered an Order requiring Plaintiff to amend his complaint. (Doc. 21) Plaintiff filed an amended complaint on March 5, 2021, (Doc. 22) but the Court rejected it with leave for Plaintiff to file another amended complaint meeting specifications set out by the Court. (Doc. 24)

(C) On March 18, 2021 Plaintiff filed the current Amended Complaint challenging the constitutionality of medical care afforded him specifically for his ailing left ear while he was incarcerated at ADOC's Bullock, Draper, and Staton Correctional Facilities between mid-2013 and March 18, 2021. (Doc. 25)  The Amended Complaint specifically challenges the lack of medical treatment and hearing aid placement for Plaintiff's ailing left ear, and the defendants' failures to provide Plaintiff with any required ADA accommodations or services despite Plaintiff's well-documented hearing disability and hearing impairment. (Docs. 25, id at page 2; 25-1)
In the Amended Complaint Plaintiff claims both a violation of his Constitutional Rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, and a continuing violation of his Constitutional Rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution from 2013 to the date of the Amended Complaint on March 18, 2021. (Docs. 25, 25-1) Plaintiff invoked the Fifth Amendment of the United States Constitution because he is and was at all times mentioned in this civil action an immigrations detainee awaiting deportation. (Doc. 25, 25-11)
Plaintiff named 15 defendants and raised the following grounds for relief:
> (1) Defendants' deliberate indifference to Plaintiff's serious medical needs violated Plaintiff's rights and constituted cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution.
> (2) Defendants' deliberate indifference to Plaintiff's serious medical needs violated plaintiff's rights, and constituted cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution.
> (3) Defendants' use of discriminatory policies to deny plaintiff his serious medical needs violated plaintiff's rights and Equal Protection, under the Eighth and Fourteenth Amendments of the United States Constitution.
> (4) Defendants'enforcement of discriminatory policies that denied plaintiff's serious medical needs violated plaintiff's rights, Due Process, and Equal Protection under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.
> (5) Defendants' deliberate indifference to a substantial risk of serious harm to plaintiff was a continuing violation of plaintiff's rights and Due Process, and constituted cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.
> (6) Defendants' reckless and callous indifference to Plaintiff's serious medical needs was a continuing violation of Plaintiff's rights and Due Process, and constituted cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

(Docs. 25, 51, 51-1, 51-2, 51-3)

(D) In support of his Complaint, Plaintiff attached verified claims against each named Defendant, (Docs. 1, 25-1) submitted sworn affidavits and declarations stating the facts of his claims, (Docs. 1, 5, 25-1, 25-2, 25-3, 25-5) and submitted various medical records, and other documents (Docs. 25-6 - 25-11, 36, 51-1, 51-2, 51-3, 101-2, 101-3, 101-4, 101-5, 126, 151-1) to the effect that:

- (1) Plaintiff has been under the custody of the ADOC since 1992, and all the Defendants were fulfilling roles as "state actors" at the time of the alleged Constitutional violations. (Docs. 1, 25, 25-1, 51-1, 51-2, 51-3, 126, 151)

- (2) In 1999 Plaintiff began suffering bouts of dizziness, elevated body temperatures, ringing sounds, and difficulty hearing out of his left ear. Plaintiff made multiple formal requests for the treatment of his ailing ear, but treatment was denied. (Docs. 1, 5, 25, 25-1 - 25-10, 36, 51-1, 51-2, 51-3, 101, 126, 151)

- (3) In May, 2000, a physician diagnosed Plaintiff Oryang as requiring medical treatment for Plaintiff's left ear disease to inhibit the progressively worsening degenerative disorder afflicting Plaintiff's inner left ear, and to inhibit the progression of hearing loss that plaintiff was suffering as a result of the ear disease. The physician ordered medications, medical implementations and hearing aids for Plaintiff, and also ordered follow-ups to monitor the progress of the ear disease and Plaintiff's treatment for it. After the May, 2000 physician's diagnosis, ADOC and ADOC healthcare providers continued to deny plaintiff any treatment or hearing aid accommodations for Oryang's ailing left ear, on the basis of an ADOC and ADOC healthcare provider policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 1, 5,  25, 25-1, 25-2, 25-3, 25-5, 25-8, 36, 51-1, 51-2, 51-3, 101, 126, 151-1)

- On multiple different occasions each between May, 2000 and April, 2018, at Donaldson, Kilby, St Clair, Bullock, Draper, and Staton Correctional Facilities, whenever Plaintiff came into contact with or requested treatment and ADA accommodation services from ADOC healthcare providers and ADOC officials  regarding his ailing left ear he referred them to the physician diagnoses and orders of May 2000 but ADOC officials and ADOC healthcare providers including Defendants Waugh, Lt Parker, Prevo, Dr Bell, and Dr Perryman, and also several non-parties to this civil action including but not limited to nurse Barbara Arthur, Warden Billy Mitchum, Dr Silvia McQueen, Dr Tahir Siddiq, nurse practitioner Joseph Guthrie, Prison Health Services, Naphcare, and Correctional Medical Services all disregarded the physician diagnosis and orders of May, 2000 that were in Plaintiff's medical file, and denied Plaintiff Oryang treatment for his ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing disability, on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear out of his right ear. Even though the healthcare providers were already in possession of the May 2000 physician's orders in question, Plaintiff still called theirs' and the attention of the ADOC officials to the orders. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-8, 36, 51-1, 51-2, 51-3, 101, 126, 151-1)

- (4) On April 9, 2018 another offsite physician diagnosed Plaintiff Oryang as clinically and legally deaf as a result of the uninhibited progression of Oryang's left ear disease, and as requiring a special kind of hearing aid. The offsite physician ordered an MRI of

Plaintiff's cranium to rule out other possible diagnoses, and also as a prerequisite to developing a required treatment plan for Plaintiff's left ear disease. The MRI results confirmed the physician's diagnosis but between April 9, 2018 and the date of this pleading defendants Waugh, Prevo, Dr Bell, Dr Perryman, Dr Borowicz, Wexford, Warden Headley, Warden Gordy, and other non-party ADOC officials and ADOC healthcare providers have continued to deny plaintiff any treatment for his ailing ear, hearing aids for his hearing impairment, and required ADA accommodation services for his hearing disability, on the basis of their policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

- (5) From 2014 to the date of the Amended Complaint defendant ADOC Commissioner Jefferson Dunn created, approved, and/or enforced a policy at Bullock, Draper and Staton Correctional Facilities that was used by all the other defendants to deny Plaintiff Oryang treatment for Plaintiff's ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing impairment, on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear out of his right ear. Beginning in 2014, continuing through March 18, 2021 when the Amended Complaint was filed, and still persisting by the date of this pleading, several non-parties to this civil action along with all the named defendants in this case (all employees of the ADOC, defendant Corizon, and defendant Wexford) denied Plaintiff Oryang needed medical treatment for Plaintiff's ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing disability, on multiple different occasions, on the basis of the ADOC policy that was created, approved, and enforced by Defendant Dunn to treat ADOC prisoners with ailing ears only if both ears are afflicted. During Defendant Dunn's tenure as Commissioner of the ADOC,  Plaintiff was denied all medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and (iv) any required ADA claims or accommodation services whatsoever for Plaintiff's hearing disability and impairment. The physician diagnoses and orders of May, 2000 and April 9, 2018, the MRI results of May 10, 2018, the numerous formal requests made by Plaintiff for the treatment of his ailing left ear, the numerous formal grievances filed by Plaintiff related to the failure to treat his ailing ear, and the numerous formal claims and requests for required ADA accommodation services filed by Plaintiff with regard to his hearing disability and impairment have all been either denied, ignored or disregarded by the defendants because Plaintiff is not afflicted in both ears and can hear using his right ear. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 126, 151-1)

- (6) Between 2013 and March 31, 2018 Defendant Corizon created, approved, and/or enforced a policy that was used by other defendants to deny Plaintiff Oryang treatment for his ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing disability, on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear out of his right ear. Between mid-2013 and March 31, 2018, several non-parties to this civil action like Dr Tahir Siddiq at Bullock Correctional

Facility, along with Defendants Waugh, Dr Bell, Dr Perryman, Lieutenant Parker, and Deidre Prevo at Draper and Staton Correctional Facilities, all employees of Corizon and the ADOC, denied Plaintiff Oryang treatment for his ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing impairment and disability, on multiple different occasions, on the basis of Defendant Corizon's policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. Plaintiff informed every healthcare provider and ADOC official he came into contact with or requested treatment and ADA accommodation services from for his ailing ear (including Defendants Waugh, Lt Parker, Prevo, Dr Bell, and Dr Perryman) about the physician diagnoses and orders of May, 2000 that were in Plaintiff's medical file, but the said physician orders were disregarded by the defendants and other ADOC and healthcare officials. (Docs. 1, 5, 25, 25-1, 25-6, 25-7, 25-8, 51-1, 51-2, 51-3, 101, 126, 151-1) During Defendant Corizon's tenure as healthcare provider for the ADOC, Plaintiff Oryang never received a single treatment for his ailing left ear because, as Plaintiff was told by the defendants, Oryang was not afflicted in both ears. The physician's diagnosis and orders of May, 2000, the symptoms Plaintiff was suffering as a result of the ear affliction, the numerous formal requests made by Plaintiff for the treatment of his ailing ear, the numerous formal grievances filed by Plaintiff related to the failure to treat his ailing ear, and the numerous formal claims and requests for required ADA accommodation services filed by Plaintiff with regard to his hearing disability and impairment were all disregarded by the defendants and other officials, who denied Plaintiff any medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and failed to provide or grant any required ADA claims or accommodation services whatsoever for Plaintiff's hearing disability and impairment. The physician diagnoses and orders of May, 2000 and April 9, 2018, the MRI results of May 10, 2018, the numerous formal requests made by Plaintiff for the treatment of his ailing left ear, the numerous formal grievances filed by Plaintiff related to the failure to treat his ailing ear, and the numerous formal claims and requests for required ADA accommodation services filed by Plaintiff with regard to his hearing disability and impairment have all been either denied, ignored or disregarded by the defendants because Plaintiff is not afflicted in both ears and can hear using his right ear. (Docs. 1, 5, 25, 25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 51-1, 51-2, 51-3, 101, 126, 151-1)

- (7) From April 1, 2018 to the date of this pleading, Defendant Wexford created, approved, and/or enforced a policy that has been used by other defendants to deny Plaintiff Oryang treatment for his ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing disability and impairment, on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear out of his right ear. From April 1, 2018 to the present date, Defendants Wexford, Waugh, Dr Bell, Dr Borowicz, Warden Headley, Warden Gordy, and Deidre Prevo - all employees of Wexford and the ADOC - have denied Plaintiff Oryang treatment for Plaintiff's ailing left ear, hearing aid placement, and required ADA claims and accommodation services for Plaintiff's hearing disability and impairment, on multiple different occasions, on the basis of the policy that was created, approved, and/or enforced by Defendant Wexford at

Staton Correctional Facility to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

During Defendant Wexford's tenure as healthcare provider for the ADOC, Plaintiff Oryang's ailing ear has been evaluated by one specialist physician on April 9, 2018, and Plaintiff's ailing ear has been evaluated by one MRI on May 10, 2018.

During the tenure of Defendant Wexford as healthcare provider for the ADOC from April 1, 2018 to the date of this pleading, with the exception of the two diagnostic measures of April 9 and May 10, 2018, Plaintiff Oryang has not received any medical treatment whatsoever to:

> (i) inhibit the progression of his left ear disease,
>
> (ii) manage the degenerative ear disease,
>
> (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction.

Neither has Plaintiff received or been granted any required ADA claims or accommodation services whatsoever for his hearing disability and impairment.

The physician diagnoses and orders of May, 2000 and April 9, 2018, the MRI results of May 10, 2018, the numerous formal requests made by Plaintiff for the treatment of his ailing left ear, the numerous formal grievances filed by Plaintiff related to the failure to treat his ailing ear, and the numerous formal claims and requests for required ADA accommodation services filed by Plaintiff with regard to his hearing disability and impairment have all been either denied, ignored or disregarded by the defendants because Plaintiff is not afflicted in both ears and can hear using his right ear. (Docs. 1, 5, 25, 25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

- (8) On multiple different occasions between mid-2017 and March 18, 2021 when the Amended Complaint was filed, Defendant Waugh denied Plaintiff Oryang treatment for Plaintiff's left ear ailments and hearing aid placement for Plaintiff's hearing impairment on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear out of his right ear. Beginning around June, 2017 Defendant Waugh began denying Plaintiff treatment for his ailing left ear because, as Waugh said to Oryang, Plaintiff could hear her well enough as she spoke to him. Several days later during another of several attempts by Plaintiff to get treatment for his ailing ear, Defendant Waugh agreed to Plaintiff's request and made a referral for Plaintiff to be seen by the Draper Correctional Facility doctor, Defendant Dr Perryman, regarding Plaintiff's ear ailments. Weeks later in July, 2017 the scheduled appointment with Defendant Dr Perryman was cancelled with the explanation that Defendant Waugh had already addressed Plaintiff's ailing ear condition. When Plaintiff complained about the cancellation to Defendant Waugh, Waugh told Plaintiff that Dr Perryman was not obliged to do anything about Plaintiff's hearing loss and ailing left ear because Plaintiff could hear her well enough when she spoke to him. By the time Plaintiff initiated this Section 1983 action, Defendant Waugh had denied Oryang treatment for his ailing left ear on multiple different occasions, and had also discontinued physician prescribed treatments that were being used to manage Plaintiff's chronic hypertension and Paget's disease of bone, without any valid reason. Even after

the physician diagnosis of April 9, 2018 Defendant Waugh still continued to deny Plaintiff any  medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, or (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction.

(Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8,  25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-4, 126, 151-1)

- (9) Multiple different times between June, 2017 and an unknown date in 2018, Defendant Dr Perryman ignored Plaintiff Oryang's requests for the treatment of Plaintiff's ailing left ear, and three medical grievances regarding the lack of treatment and hearing aid accommodations for Plaintiff's ear ailments and hearing impairment. For the entire time that Plaintiff was incarcerated at Draper and the first months after Plaintiff was transferred from Draper to Staton Correctional Facility, Defendant Dr Perryman ignored all of Plaintiff's pleas regarding the treatment of Oryang's ailing left ear. As alleged by Defendant Waugh, Dr Perryman was not obliged to do anything about Plaintiff's hearing loss and ailing left ear because, as Waugh said, Plaintiff could hear her well enough when she spoke to him. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3,  101, 126, 151-1)

- (10) From early in 2017 to March 2018, as ADA Coordinator for Draper Correctional Facility, Defendant Lt Parker ignored Plaintiff Oryang's formal ADA request forms, claims and complaints regarding the difficulties Oryang was suffering as a result of his hearing impairment. After a meeting aimed at addressing Oryang's ADA-related issues on December 11, 2017 between Defendant Prevo, Defendant Lt Parker, Plaintiff Oryang, and another lady who is a non-party in this civil action, Lt Parker told Plaintiff not to bother him again concerning Plaintiff's left ear ailments. (Docs. 1, 5, 25, 25-1, 25-8, 25-9, 51-1, 51-2, 51-3, 101, 126, 151-1)

- (11) On December 11, 2017, Defendant Prevo, ADOC'S State-Wide Coordinator, attended an interview with Plaintiff Oryang to address Plaintiff's ADA-related formal claims and complaints regarding Plaintiff's ailing left ear and hearing impairment. The interview was at Draper Correctional Facility between Defendant Prevo, Defendant Lt Parker, Plaintiff Oryang, and another lady who Plaintiff does not know. Plaintiff informed Defendant Prevo and the other ADOC officials about the lack of any required medical treatment for his ailing ear, about the painful symptoms he was experiencing as a result of his ailing ear, about his inability to function effectively as a result of the hearing loss, and about the lack of any required ADA services thereof. Defendant Prevo Departed the meeting without any comments.

On December 3, 2019, upon denying the appeal of the third formal ADA request form filed by Plaintiff Oryang in a two year period for the treatment and accommodation services of Plaintiff's ailing left ear and hearing disability, the official comments made by Defendant Prevo were that: "after being evaluated by ENT, Dr. Owens," it has been "determined that hearing aids would not be an appropriate solution to address the type of hearing loss" suffered by Oryang. Defendant Prevo completely disregarded the physician orders of May, 2000 and April 9, 2018, that diagnosed Plaintiff Oryang as legally and clinically deaf and requiring hearing aid accommodations. (Docs. 1, 5, 25,

25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

- (12) Upon seeing Plaintiff Oryang for the first time on January 30, 2018, at Draper Correctional Facility, while addressing another formal medical grievance filed by Plaintiff regarding the lack of treatment and hearing aid placement for Plaintiff's ailing left ear and hearing impairment, Defendant Dr Bell apologized to Oryang for the 18 year delay in treating Plaintiff's deteriorating inner left ear and hearing loss. Defendant Dr Bell denied allegations made by Defendant Waugh that Dr Bell had declined to address Plaintiff's ear ailments over the preceding year, told Plaintiff that Plaintiff's requests for the treatment of his ailing ear from the preceding year were in Plaintiff's medical file, but that the said requests had never been presented to him (Dr Bell) before January 30, 2018. Dr Bell told Plaintiff that he would seek approval to send Plaintiff for evaluation by a specialist, but said approval for the evaluation was not carried out until four months later after Defendant Corizon's contract with the ADOC had expired and Defendant Wexford had taken over as ADOC healthcare contractor, and also after Oryang had been transferred from Draper Correctional Facility to Staton Correctional Facility. After the specialist's diagnosis that Plaintiff Oryang was legally and clinically deaf, required a treatment plan for his ailing ear and required a special kind of hearing aid, Defendant Dr Bell still failed to provide Plaintiff Oryang any treatment for Plaintiff's ailing ear or hearing aids, and failed to send Oryang back to the specialist for the development of a treatment plan for Plaintiff's ear disease.
  During Defendant Dr Bell's tenure as medical doctor at both Draper and Staton Correctional Facilities, Plaintiff was denied all medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and was not provided or granted any required ADA claims or accommodation services whatsoever for Plaintiff's hearing disability and impairment. (Docs. 1, 5, 25, 25-1, 25-8, 25-9, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

- (13) Defendant Dr Borowicz saw Plaintiff Oryang for the first time on October 17, 2019, as a response to another formal ADA claim and request for accommodations filed by Plaintiff regarding the hearing impairment and disability that Plaintiff had been twice diagnosed as suffering. During the meeting Defendant Dr Borowicz informed Plaintiff that the final-official "report" located in "volume 3 of 3" of Oryang's medical file that had been compiled in response to Oryang's April 9, 2018 specialist evaluation and May 10, 2018 MRI indicating that nothing is wrong with Plaintiff's ability to hear, that there was therefore no need to treat Plaintiff Oryang's ailing ear or to provide Oryang with hearing aid accommodations and ADA services for his ear affliction. (Docs. 1, 5, 25, 25-1, 25-8, 25-9, 25-10, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)
  On or around December 4, 2019, Defendant Dr Borowicz and nurse Anthony, Ombudsman at Staton Correctional Facility, summoned Plaintiff Oryang to address another formal medical grievance filed by Plaintiff regarding the lack of any treatment for Plaintiff's ailing ear, the lack of hearing aid placement for Plaintiff, and the denials of Oryang's formal requests for required ADA certification and accommodation services. (Docs. 1, 5, 25-1, 25-6, 25-7, 25-9, 25-10, 51-2, 51-3, 126, 151-1) Dr Borowicz informed

Plaintiff that the official reports in Plaintiff's medical file had been updated to reflect that Oryang lost all hearing in the left ear and is clinically and legally deaf. When asked by Ombudsman Anthony if the update meant that Oryang could thus be given medical treatment, hearing aids and ADA accommodations for his ailing ear, Dr Borowicz responded that he (Dr Borowicz) had already submitted requests that had been denied by Dr Borowicz's "superiors" on the basis of a healthcare provider and ADOC policy to provide treatment and services to ADOC prisoners with ailing ears only if both ears are afflicted; because Oryang was afflicted in only the left ear, he failed to meet the criteria for treatment. Defendant Dr Borowicz apologized to Oryang for being unable to give Plaintiff any treatment and ADA accommodation services for Plaintiff's ailing left ear and hearing impairment. During Defendant Dr Borowicz's tenure as medical doctor at Staton Correctional Facility, Plaintiff has been denied all medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and has not been provided or granted any required ADA claims or accommodation services whatsoever for Plaintiff's hearing disability and impairment. (Docs. 1, 5, 25, 25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 51-1, 51-2, 51-3, 101, 126, 151-1)

- (14) From 2019 to 2020, Defendant Warden Headley ensured that ADOC's policies were adhered to at Staton Correctional Facility, including the policy used by Defendants Wexford, Prevo, Dr Borowicz, and Waugh to deny Plaintiff Oryang treatment for Plaintiff's ailing left ear and required ADA accommodation services for Plaintiff's hearing disability, on the basis that Oryang was not afflicted in both ears. During Defendant Headley's tenure as Warden at Staton Correctional Facility, Plaintiff was denied all medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and was not provided or granted any required ADA claims or accommodation services whatsoever for Plaintiff's hearing disability and impairment. Warden Headley also failed to intervene in Plaintiff's behalf despite Plaintiff's pleas that Defendant Headley intervene by getting Plaintiff medical treatment and ADA accommodations for Plaintiff's ailing ear and hearing disability. (Docs. 5, 25, 25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 51-1, 51-2, 51-3, 126, 151-1)

- (15) From 2020 to 2021, Defendant Warden Gordy ensured that ADOC's policies were adhered to at Staton Correctional Facility, including the policy used by defendants Wexford, Prevo, Dr Borowicz, and Waugh to deny Plaintiff Oryang treatment for Plaintiff's ailing left ear and required ADA accommodation services for Plaintiff's hearing disability, on the basis that Oryang was not afflicted in both ears. During Defendant Gordy's tenure as Warden at Staton Correctional Facility, Plaintiff was denied all medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and was not provided or granted any required ADA claims or accommodation services whatsoever for Plaintiff's hearing disability and impairment. Warden Gordy also failed to intervene in Plaintiff's behalf despite Plaintiff's pleas that Defendant Gordy intervene by getting Plaintiff medical treatment and ADA

accommodations for Plaintiff's ailing ear and hearing disability. (Docs. 5, 25, 25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 51-1, 51-2, 51-3, 126, 151-1)

- (16) As a result of the Defendants' failures, Plaintiff Oryang has suffered and is continuing to suffer:

    (i) two decades of preventable painful symptoms, dizzy spells, vertigo, ringing ears and other symptoms due to a detoriorating inner left ear and hearing disability;

    (ii) two decades of preventable gradual physical detorioration of Oryang's inner left ear culminating in irreversible, permanent damage to Oryang's inner left ear;

    (iii) preventable clinical and legal deafness;

    (iv) preventable loss of a bodily function;

    (v) constant feelings of endangerment due to an inability to hear verbal or sound warnings;

    (vi) repeated accusations of ignoring or disobeying authority orders that were not heard, and accusations of harassment stemming from persistent attempts to get treatment for Plaintiff's ailing ear and ADA certification due to Plaintiff's diagnosed hearing disability;

    (vii) missed opportunities and untold mental/psychological insecurities;

    (vii) a direct dampening effect on any future ability to execute safely and effectively in dual careers of practical nursing and as a master technician of high pressure appliances in the fields of heating, ventilation, air-conditioning and refrigeration, both of which require keen hearing.

(Docs. 1, 5, 25, 25-1 - 10, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

(E) Encompassed within the Amended Complaint, (Doc. 25) Plaintiff filed a motion for Preliminary and Permanent Injunction against the defendants, (Docs. 25 at page 6; 36) emphasizing his claims, amongst other things, that;

    (1) Defendants, ADOC, Wexford, and the health service companies they contract with are Plaintiff's primary - and only - means/access to medical treatment and/or healthcare services.

    (2) Defendants continue to deny Plaintiff all treatment, and all Federal and State required Americans With Disabilities Act ("ADA") accommodations and services for Plaintiff's ear affliction and hearing disability. Said actions by the defendants are:

        (i) a direct threat to Plaintiff's health, safety and livelihood;

        (ii) directly violate the settlement agreement [defendants] are bound by in Braggs v. Dunn, No. 2:14-cv-00601-MHT-JTA (U.S. Dist, Ct., MD, Ala., 2019; 2020);

        (iii) directly violative of the mandatory requirements of 42 U.S.C. § 12102, 29 U.S.C. § 705, and Section 504 of the Rehabilitation Act;

        (iv) directly violative of ADOC Administrative Regulations Secs. 705-I, 705-II, 705-IV, 705-V-C, and 705-V-H;

        (v) a reckless and callous indifference to Plaintiff's serious medical needs; and,

        (vi) cruel and unusual punishment under the Eighth Amendment of the United States Constitution.

(Doc. 36)

The Court denied the Motion for Preliminary Injunction, (Docs. 98, 108, 110,120) but Plaintiff's Motion for a Permanent Injunction is still pending. (Docs. 25, 36, 98, 108, 110)

(F) On. March 29, 2021, the Court dismissed four of the defendants from the case. (Docs.27) The Court struck Plaintiff's claims #2 - #6, (Doc. 25 at pages 3 and 4; Doc. 51 at pages 2, 12, 13) Plaintiff's sworn Affidavit, (Docs. 25-3) and Plaintiff's sworn Declarations (Docs. 25-2, 25-5) from the case record. (Docs. 28, 51, 51-1, 51-2, 51-3) Plaintiff's objections (Docs. 51, 78) were overruled. (Docs. 64, 66, 111, 112)
The Court ordered the remaining eleven defendants to respond to the Amended Complaint with Answers and Special Reports. (Doc. 29)

(G) Defendants Corizon LLC, Wexford Health Sources Inc., Dr Michael Borowicz, Charlie Waugh, Dr Scott Bell, and Dr Richard Perryman ("the medical defendants") responded with Answers (Docs. 44, 62, 88, 90) and Special Reports. (Docs. 49, 50, 52, 53, 87, 92) Each one of the medical defendants raised the following defenses:
- 1) Failure to state a claim: 2) Contributory negligence or last clear chance; 3) Assumption of the risk; 4) Doctrine of latches; 5) Statute of limitations bar; 6) Doctrine of waiver; 7) Lack of subject matter jurisdiction; 8) Improper venue; 9) Plaintiff lacks standing; 10) Doctrine of unclean hands; 11) Doctrine of qualified immunity; 12) Doctrine of sovereign immunity; 13) Doctrine of estoppel; 14) Doctrine of res judicata; 15) Failure to mitigate damages; 16) Acts or omissions performed by other persons for whom Defendant is not responsible; 17) Defendant did not breach any duty allegedly owed to Plaintiff; 18) No legal or proximate causal relationship between Defendant's actions and Plaintiff's injuries; 19) Existence of superseding intervening causes; 20) Lack of damages suffered due to any alleged wrongs; 21) Actions asserted are frivolous, malicious, and fail to state a claim; 22) Requested injunctive relief is not sufficiently narrowly drawn; 23) Plaintiff seeks to question a medical judgement; 24) Lack of showing of deliberate indifference; 25) Objection to attorney fees; 26) Claim for punitive damages violates Defendant's rights against cruel and unusual punishment; 27) Adoption of Alabama Medical Liability Act 6-5-481 and 6-5-542 as defense; 28) Plaintiff failed to comply with 28 USC 1915; 29) Cause due to be dismissed pursuant to 28 USC 1915A and 42 USC 1997(e)(C); 30) Case is frivolous, filed for purposes of harassment and intimidation, and Plaintiff should pay attorney fees under 42 USC 1988; 31) Claims have been resolved and are now moot; 32) All Alabama Code affirmative defenses; 33) All defenses pled by other defendants; 34) Additional defenses as discovery proceeds. (Docs. 44, 62, 88, 90)

Defendants Dr Borowicz, Waugh, Dr Bell and Dr Perryman submitted Affidavits and/or sworn Declarations as defenses in their Special Reports, with multiple document exhibits from Plaintiff's medical file, and all acknowledged/stipulated that Plaintiff's medical needs for the treatment of his ailing ear constitute a serious medical need, but denied having been deliberately indifferent to those needs. (Docs. 52-1 - 3, 53- 1 - 3, 87-1 - 3, 92-1 - 3)
Defendants Corizon and Wexford did not submit any documentary evidence or exhibits in their Special Reports, but instead argued preclusionary grounds as their defenses. (Docs. 49, 50)

As grounds for summary judgement, the medical defendants asserted that Plaintiff will be unable to prove his case at trial and cannot produce any evidence to prove the claims raised against them. (Docs. 49, 50, 52, 53, 87, 92)

(H) Defendants Lieutenant Robert Parker, Warden Joseph Headley, Warden Christopher Gordy, Deidre Prevo, and Commissioner Jefferson Dunn ("the correctional defendants") responded with an Answer and Special Report. (Doc. 104; 104-1, 104-2, 104-3, 104-4,104-5) Each one of the correctional defendants raised the following defenses:

- 1) Draper and Staton Correctional Facilities' penological interests to maintain order in the facilities; 2) Individual capacity qualified immunity; 3) Official capacity sovereign immunity; 4) Denial of violating Plaintiff's Constitutional Rights; 5) Denial of each and every material allegation and demand for strict proof; 6) Failure to state a claim upon which relief can be granted; 7) Assumption of the risk; 8) Contributory negligence; 9) Duress; 10) Estoppel; 11) Fraud; 12) Illegality; 13) Waiver; 14) Statute of limitations; 15) Res judicata; 16) Request pursuant to Rule 12(c) for summary judgement. (Doc. 104)

The correctional defendants denied liability for Plaintiff's injury, denied being deliberately indifferent, and requested that Plaintiff's Americans With Disabilities Act claims be denied. As grounds for summary judgement, the correctional defendants asserted that Plaintiff will be unable to prove his case at trial and cannot produce any evidence to prove the claims raised against them. (Doc.104)

(I) On May 17, 2021 and September 13, 2021 Plaintiff filed an objections styled "Objection to Responsive Pleadings," in which Plaintiff objected to the Defendants' Responsive Pleadings on several grounds, including the ground that Defendants' had violated the Court's Orders (Docs. 29) and Rules 37(b) and (c) by submitting multiple medical records of Plaintiff that are not relevant in any shape, form or fashion to Plaintiff's left ear ailments, to the Defendants' treatment of Plaintiff for Plaintiff's left ear ailments, or to the basis of Plaintiff's complaint and claims. (Docs. 83, 107) On May 18, 2021 and November 19, 2021 the Court denied Plaintiff's Motions. (Doc. 84, 109)

(J) On April 28, 2021 Plaintiff filed a Demand For Jury Trial. (Doc. 71)

(K) On May 31, 2022 the Court issued an Order requiring Plaintiff to respond to the defendants' motions for summary judgement. (Doc.149)

## 3
## STIPULATIONS/INCORPORATIONS

Under 28 U.S.C. § 1733(b) and Rule 15(c) of the Federal Rules of Civil Procedure, and in support of Plaintiff's Response in Opposition to the Defendants' motions for summary judgement, Plaintiff alleges, realleges and incorporates the following material and relevant submissions made in this civil action:
(1) All exhibits and sworn Affidavits as raised in the original Complaint. (Docs. 1, 5)

(2) All grounds for relief, exhibits, evidence, and sworn Affidavits as raised in the Amended Complaint and Motion for Preliminary and Permanent Injunction. (Docs. 25, 36, 101, 101-2 - 5, 113) (51 at page 12, 13; 51-1, 51-2, 51-3)

(3) All grounds for relief, sworn Affidavits, and Sworn Declarations as realleged in Document #s 25, 25-1 - 11, 36, 51 id at pages 2, 3, 12, 13, 14; 51-1, 51-2, 51-3.

(4) All verified factual evidence, sworn Affidavits and sworn Declarations as submitted in Document #s 1, 5, 25, 101 at pages 8-9, 10-15, 16-20; 101-1, 101-2, 101-3, 101-4, 101-5; 126; 151-1.

(5) All grounds for relief, (Docs, 25, 36) claims in support of grounds for relief, (Docs. 1, 5, 25, 25-1 - 11, 36, 51, 51-1 - 3, 101, 101-1 - 5, 126, 151-1) pleadings, (Docs. 51, 78, 83, 100, 101, 106, 107, 113, 114, 115, 116, 119, 125, 135, 145, 151) and Demand For Trial By Jury, (Doc. 71)

**4**
### PLAINTIFF'S RULE 56(c)(1), (c)(2), and (c)(4) SUBMISSIONS

A. All medical records, ADA records, and other documents previously filed in this case by Plaintiff Oryang, by the Defendants, and by any other party or non-party to this civil action.

B. Declaration Of Benjamin B Oryang (ATTACHMENT A)

C. Declaration Of Timothy Bryan Standfield (ATTACHMENT B)

D. Declaration Of Motis Wright (ATTACHMENT C)

E. Medical records of Plaintiff Oryang (ATTACHMENT D)

F. Exposed custom/policy (ATTACHMENT E)

**5**
### DISCUSSION

### I. STANDARD OF REVIEW

"Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. With respect to issues where the non-moving party bears the burden of proof ... at trial ..., the moving party ... must do one of two things: show that the nonmoving party has no evidence to support its case, or present affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Dunn v. Dunn, 219 F. Supp. 3d 1100, 1108-1109 (US.Dist.Ct. MD Ala.2016) (quoting Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1994)) (citation and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991) and Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in the non-moving party's favor."

United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510-13, 91 L.Ed.2d 202 (1986). Additionally, a fact is material "if it is necessary to the Court's decision." United States v. Gilbert, 920 F.2d 878, 883 (11th.Cir.1991)

The "Court should not weigh the evidence or determine credibility." Anderson, 477 U.S. at 255. "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Adickes, 398 U.S. at 160; Anderson, 477 U.S. at 248. Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson, id. at 248, 106 S.Ct. at 2510, 2511-12.

"[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." Matsushita Elec. Indus. Co., 475 U.S. at 586. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact," summary judgment is not justified. Bannum, Inc. v. City of Fort Lauderdale, 901 F.2d 989, 996 (11th Cir.1990).

Pro se pleadings should be held to a less stringent standard than pleadings drafted by attorneys, and should therefore be liberally construed. Boxer v. Harris, 437 F.3d 1107, 1110 (11th.Cir.2006); Hughes v. Lott, 350 F.3d 1157 (11th.Cir.2003); Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).

## II. DELIBERATE INDIFFERENCE

"[W]hen the State takes a person into its custody,... the Constitution imposes upon it a corresponding duty to assume... responsibility for his safety and general well being." Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct 2475, 2480, 125 L. Ed 2d 22 (1993). Under this duty, a prison official's deliberate indifference to the serious medical needs of prisoners, and a prison official's deliberate indifference to a substantial risk of serious harm to a prisoner, are both violative of the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Farmer v. Brennan, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L. Ed 2d 811 (1994); Helling, 509 U.S. at 32, 113 S.Ct. at 280 (1993); McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.2003). First, the plaintiff must prove an objectively serious medical need. Id. Second, the plaintiff must prove that the prison official acted with deliberate indifference to that need. Id.

Plaintiff Oryang has been under the custody of the ADOC since 1992, since when the ADOC and the health service providers that they contract with have been Plaintiff's primary and only healthcare providers. Since around 1997 Oryang has suffered with dermatosis, arthriti-related ailments, hypertension, and Paget's disease of bone for which he has received medical treatment from the defendants, but none of those conditions are at the root of this § 1983 action. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 36, 101, 126, 151-1)

Beginning in 1999 when Plaintiff was imprisoned at the Donaldson Correctional Facility, he began having medical problems with his left ear. Plaintiff was suffering bouts of dizziness, elevated body temperatures, vertigo, and ringing sounds in the ear so he formally requested treatment for his ailing ear multiple different times by signing up for sickcall screening. Each time that Plaintiff requested treatment for his ailing ear it was denied. The ear ailments persisted and eventually in May 2000 Plaintiff was sent for evaluation by an off-site specialist-physician. The off-site specialist-physician told Plaintiff that Plaintiff's inner left ear was marked by scarring that was consistent with an ear infection that had gone untreated for too long, and diagnosed Plaintiff as:

    (1) suffering with a progressively degenerative disorder in the inner left ear,

    (2) suffering progressively worsening damage to the inner left ear,

    (3) suffering progressively worsening hearing loss as a result of the ear disorder,

    (4) mandating treatments to stop the inner ear damage,

    (5) mandating treatment to stop the hearing loss,

    (6) requiring hearing aids to account for the hearing difficulties, and

    (7) requiring follow-ups with a specialist to monitor the medical treatment of the disorder and monitor the progression of the disease.

(Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126, 151-1)

Plaintiff's ear ailments clearly meet the standard that a "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187.

Upon Plaintiff's return to the prison from the off-site specialist-physician in May, 2000, the ADOC and ADOC healthcare providers refused to provide Plaintiff any of the treatments or prescriptions that had been ordered by the specialist-physician for Plaintiff's ailing ear. From May 18, 2000 to April 9, 2018, Plaintiff filed numerous and persistent formal requests for the treatment of his ailing ear, formal medical grievances about the failure to treat his ailing ear, and formal claims and requests for required ADA accommodation services, but they were all denied by the defendants and other non-parties to this civil action because, according to them, Oryang was not afflicted in both ears and could hear them well enough when they spoke to him. Beginning in February 2001 and lasting until December, 2019, the defendants and non-party healthcare providers informed Plaintiff that he was being denied treatment for his ailing left ear on the basis of an ADOC and ADOC healthcare provider policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126, 151-1)

From the onset of Plaintiff's ear ailments in 1999 to April 9, 2018, Plaintiff received zero medical treatment whatsoever to: (i) inhibit the progression of his left ear disease, (ii) manage the

degenerative ear disease, (iii) inhibit, alleviate or manage the symptoms suffered as a result of the ear affliction, and (iv) was not provided or granted any required ADA claims, hearing aid or accommodation services whatsoever for his hearing disability and impairment. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126, 151-1)

On April 9, 2018 Dr Olan Evans - the second off-site specialist-physician since 1999 that Oryang was sent to for evaluation of the ear ailments - evaluated Plaintiff's medical records and ears, then:

(1) admonished the 2-decade lapse in the treatment of Plaintiff's inner left ear degenerative disease,

(2) diagnosed Plaintiff as having become clinically and legally deaf as a result of the uninhibited progression of a progressively degenerative disorder known as Conductive Hearing Loss,

(3) diagnosed Plaintiff as requiring a special kind of hearing aid, and

(4) ordered further evaluation by MRI of Plaintiff's cranium to rule out other possible diagnoses, and also as a prerequisite to a follow-up for developing a required treatment plan for Plaintiff's Conductive Hearing Loss.

(Docs. 1, 25, 25-2, 25-3, 25-5, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1)

The MRI that was conducted on May 10, 2018 confirmed Dr Olan Evans' diagnosis. Multiple different times between the May 9, 2018 MRI and the date of this pleading Plaintiff has filed numerous and persistent formal requests for the treatment of his ailing ear, formal medical grievances about the failure to treat his ailing ear, and formal claims and requests for required ADA accommodation services, but they have all been denied. Defendants Waugh, Prevo, Dr Bell, Dr Perryman, Dr Borowicz, Wexford, Warden Headley, Warden Gordy, and other non-party ADOC officials and ADOC healthcare providers continue to deny Plaintiff any treatment whatsoever for the progressively degenerative Conductive Hearing Loss, any hearing aids for Plaintiff's hearing impairment, and any required ADA claims and accommodation services for Plaintiff's hearing disability. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1) (Attachments A, B, C, D)


"[A] serious medical need is determined by whether a delay in treating the need worsens the condition" or, "if left untreated, poses a substantial risk of serious harm." Mann v. Taser Intern. Inc., 588 F.3d 1291, 1307 (11th Cir.2009) (citing Hill, 40 F. 3d at 1188-89 and Farrow v. West, 320 F.3d at 1243).


On the date of this pleading Plaintiff Oryang has:

(1) suffered with the progressively degenerative Conductive Hearing Loss in his inner left ear for 23 years without any treatment for it,

(2) suffered the preventable loss of a bodily function,

(3) been diagnosed as clinically and legally deaf as a result of the uninhibited progression of Conductive Hearing Loss,

(4) continued to suffer deterioration of the inner left ear due to Conductive Hearing Loss without any relief,

(5) been unable to find alternative means of treatment to inhibit the continuing deterioration of his inner left ear,

(6) continued to suffer with bouts of painful and psychological symptoms related to Conductive Hearing Loss without any relief, and

(7) as a result of the hearing disability he was subjected to, Plaintiff lost the ability to execute safely and effectively in his dual careers.

(Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1) (Attachments A, B, C, D)

"A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott, 182 F.3d at 1257 (quoting Estelle, 429 U.S. at 103, 97 S.Ct. 285 and In re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890)) (internal citation marks omitted). Here, the Defendants fell short in their duties regarding Plaintiff's left ear ailments.

In their defense the defendants do not deny that Plaintiff Oryang's ailing ear constitutes a serious medical need. (Docs. 49, 50, 52, 53, 87, 92, 104, 104-1, 104-2, 104-3, 104-4, 104-5) The medical defendants acknowledge they were aware of Plaintiff's ear afflictions and medical history since the onset of Plaintiff's ear ailments in 1999, (Docs. 50-1 at page 2; 52-1 at page 2; 53-1; 54 at page 2; 54-1; 87; 87-1; 92; 92-1) and all of the Defendants assert as a ground for summary judgement that they responded sufficiently to Oryang's serious medical needs by: sending Plaintiff to be "seen" by an Enterologist, sending Plaintiff for an MRI, giving Plaintiff access to healthcare staff, and through the fact that Plaintiff has been "seen" by multiple healthcare providers and received extensive treatment for Plaintiff's hypertension, Paget's disease of bone and other unrelated ailments for which they submitted multiple medical records as proof. (id.) (Docs. 49, 50, 52, 53, 87, 92, 104) However, with exception to the two diagnostic procedures - the audiology examination of April 9, 2018 and the MRI report of May 10, 2018 - all the other medical records submitted by the Defendants are devoid of any actual provisions of medical treatment, care, or implementations whatsoever for Plaintiff's ear ailments specifically. (id.) (See also Docs. 1, 5, 25-1, 25-2, 25-3, 25-5 - 10, 101, 101-3 - 5, 126, 151-1) (Attachment A)

The Defendants also argue that Plaintiff is improperly using this civil action to vent a disagreement with prison staff over a difference in opinion on the provision of medical care to Plaintiff . This argument by the Defendants fails, because Plaintiff has not alleged any disagreement or differences in opinion concerning the provision of medical care for his ailing ear. Rather, Plaintiff's entire Complaint asserts that the medical care provided regarding his ailing left ear has been so inadequate to amount to no treatment at all. "When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985).

The correctional defendants also raise a defense that they provided Plaintiff with access to medical professionals and thus Plaintiff's claims that they "refused to allow" him to get treatment

for his ear are due for summary judgement. (Doc. 104) This argument is void, because Plaintiff's claims are that: Defendants Dunn, Headley and Gordy "created, approved, and/or enforced a policy that was used by other defendants to deny Plaintiff Oryang treatment for his ailing left ear, hearing aid placement, and required ADA accommodation services for Plaintiff's hearing disability, on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear out of his right ear;" Defendants Headley, Gordy and Prevo failed to intervene when facts were presented to them by Plaintiff that signaled the need for medical treatment; Defendants Prevo and Parker directly failed to provide Plaintiff with required ADA accommodations and services. (Docs. 1, 5, 25, 25-1, 25-2 - 10, 36)

It is well established that "deliberate indifference to serious medical needs of prisoners constitutes the `unnecessary and wanton infliction of pain'... proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (citation and footnotes omitted). A prisoner states a valid claim, under 42 U.S.C. section 1983, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs ... or by prison guards in intentionally denying or delaying access to medical care ... or intentionally interfering with treatment once proscribed." Id. at 104-05, 97 S.Ct. at 291. "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs." McElligott, id at 1255 (quoting Harris v. Coweta Cnty., 21 F.3d 388, 393-94 (11th Cir. 1994) and Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)). The Eleventh Circuit has also held that deliberate indifference may be established by a showing of grossly inadequate care, as well as by a decision to take an easier but less efficacious course of treatment. See Steele v. Shah, 87 F.3d 1266, 1269-70 (11th Cir. 1996); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989). "A complete denial of readily available treatment for a serious medical condition obviously constitutes deliberate indifference." Harris, 21 F.3d at 393.

As Plaintiff has done here, (Docs. 101-3, 101-4, 101-5; Attachments D) a plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated in part on other grounds, Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n. 12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730 (2002) . . . the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.") Plaintiff Oryang has clearly met this burden, and the Defendants' arguments to the contrary are due to be denied.

Plaintiff Oryang has produced amply sufficient evidence to survive the Defendants' motions for summary judgment on the claims of deliberate indifference, "from which a reasonable jury could conclude: (1) that he had an objectively serious medical need, (2) that defendants acted with deliberate indifference to that need, and (3) that his injury was caused by defendants' wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). In showing that the Defendants were deliberately indifferent to Plaintiff's medical needs under the second prong of the Goebert test, Oryang has provided ample proof that Defendants: "(1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk by (3)

following a course of action which constituted "more than mere negligence." McElligott, 182 F.3d at 1255; Goebert, at 1327. Deliberate indifference is established once the prisoner proves "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signalling the need, and an inference of required action from those facts." Farrow v. West, 320 F.3d. at 1329 (11th.Cir.2003)

## III. DISCRIMINATORY POLICIES/CUSTOMS

"Government and state agencies are liable under Section 1983 for the deliberate indifference of their agents or employees when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by the body's officers," or if the alleged Constitutional violation was "visited pursuant to a governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Monell v. New York City Dep't. Of Soc. Serves., 436 U.S. 658, 690-92, 98 S.Ct. 2018, 56 L.Ed 2d 611 (1978)

In this civil action Plaintiff has provided evidence that beginning in the year 2000 and lasting till December, 2019, ADOC and ADOC healthcare providers have consistently denied him medical treatment for his ailing left ear, hearing aid placement for his hearing impairment, and required ADA accommodation services for his physician-diagnosed hearing disability, on the basis of an ADOC and ADOC health service provider policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 1, 5, 25, 25-1 - 3, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 126, 151-1) (Attachments A, C, E)
Because "[a]n allegation ... is admitted if a responsive pleading is required and the allegation is not denied," the correctional defendants and Defendants Dr Borowicz, Waugh, Dr Bell and Dr Perryman have admitted Plaintiff's allegations that they applied the unconditional ADOC and ADOC health service provider policy in denying him treatment for his ailing left ear. Rule 8 (b)(6), Fed. R. Civ. P. As for Defendants Corizon and Wexford who denied the existence of the policy, it is necessary for Plaintiff to have shown that the custom or policy is indeed such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it," Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir.1991).

Plaintiff's verified evidence in the case record is to the effect that from the onset of his left ear ailments in 1999, he was denied treatment for it by ADOC officials and ADOC healthcare providers. Beginning in the year 2000 and continuing consistently until December, 2019, after Plaintiff had filed the original Complaint, multiple party and non-party ADOC officials and ADOC healthcare providers denied Plaintiff medical care and treatment for his ailing left ear, because Plaintiff was not afflicted in both ears and could hear them using his right ear. As a result of the unconstitutional policy, Plaintiff has been subjected to:
- (i) two decades of preventable painful symptoms, dizzy spells, vertigo, ringing ears and other symptoms due to a detoriorating inner left ear and hearing disability;
- (ii) two decades of preventable gradual physical detorioration of Oryang's inner left ear culminating in irreversible, permanent damage to Oryang's inner left ear;

- (iii) preventable clinical and legal deafness;
- (iv) preventable loss of a bodily function;
- (v) constant feelings of endangerment due to an inability to hear verbal or sound warnings;
- (vi) repeated accusations of ignoring or disobeying authority orders that were not heard, and accusations of harassment stemming from persistent attempts to get treatment for Plaintiff's ailing ear and ADA certification due to Plaintiff's diagnosed hearing disability;
- (vii) missed opportunities and untold mental/psychological insecurities;
- (vii) a direct dampening effect on any future ability to execute safely and effectively in dual careers of practical nursing and as a master technician of high pressure appliances in the fields of heating, ventilation, air-conditioning and refrigeration, both of which require keen hearing.

(Docs. 1, 5, 25, 25-1 - 10, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1) (Attachments A, B, C, D, E)

A local government is liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury...." Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). See also Geter v. Wille, 846 F.2d 1352, 1354 (11th Cir.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 870, 102 L.Ed.2d 994 (1989). Defendants Corizon and Wexford have argued that Plaintiff cannot present any evidence to support his allegations against them, and that Plaintiff's verified statements by themselves are not sufficient to meet the standard set by Craig v. Floyd, 643 F 3d 1306, 1310 (11th cir.2011) Craig received 16 evaluations for his medical condition in 9 days from 9 different health employees before receiving a CT Scan that revealed his diagnosis, after which Craig was promptly given treatments for his ailments. (id.)
"[A]n act performed pursuant to a `custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S.Ct. 1382; see also Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir.1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation"). To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is well-settled. See Praprotnik, 485 U.S. at 127, 108 S.Ct. 915 (noting that the Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is `so permanent and well settled as to constitute a "custom or usage" with the force of law'" (quoting Adickes, 398 U.S. st 167-68.

Plaintiff's case is very different from Craig in two key ways. First, Plaintiff's left ear ailments have gone untreated for over 2 decades. Second, unlike in Craig's case, after the diagnostic measures determined what exactly has been afflicting Plaintiff's ear, the Defendants in this civil action have still continued to deny Plaintiff any medical treatment for Plaintiff's ailing left ear, hearing aids and ADA accommodations for Plaintiff's hearing disability.

In determining whether a custom exists, the Eleventh Circuit has found customs based on as few as 3 occurrences. Young v. City of Augusta ex Rel. Devaney, 59 F 3d 1160, 1173 (11th Cir.1995) (holding that Plaintiff produced enough evidence of custom to survive summary judgement where 3 separate jailers ignored her medical complaints)

Here Plaintiff's requests for the treatment of his ailing ear have been ignored and/or denied literally hundreds of times over a 20+ year span, on the basis of the same ADOC and ADOC healthcare provider policy. (See Marcado v. City of Orlando, 407 F 3d 1152, 1162 (11th Cir.2005) (holding that the court should look to how similar the incidents are to one another))

If Plaintiff's verified statements by themselves are not enough to overcome summary judgement of this claim, then the addition of material documentary evidence in support of the claim should suffice: on December 5, 2019 when Defendant Dr Borowicz denied Plaintiff medical treatment and medical care for Plaintiff's left ear ailments, he stated as grounds for the denial that ADOC and ADOC health service provider policy dictates no treatment for my left ear ailments because I am not afflicted in both ears. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-5 - 10, 126, 151-1) Through the discovery process the Defendants submitted the medical document record of the December 5, 2019 denial of treatment by Defendant Dr Borowicz, where in Dr Borowicz states clearly that Plaintiff "does not meet [the] criteria" to receive treatment for his ailing left ear, hearing aids, or ADA accommodations because Plaintiff's right ear is normal and "only" the left side is affected. (Attachment E)

A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. Waddell v. Valley Forge Dental Assocs., 276 F 3d 1275, 1279 (11th Cir.2001)

Plaintiff has done here more than shown a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) and Defendants Corizon and Wexford's motions for summary judgement on this ground are thus due to be denied.

## IV. PROCEDURAL GROUNDS

1. QUALIFIED IMMUNITY;

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, ___, 122 S.Ct. at 2513. "If a constitutional right would have been violated under the plaintiff's version of the facts, `the next, sequential step is to ask whether the right was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir.2002) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

"[Q]ualified immunity seeks to ensure that defendants `reasonably can anticipate when their conduct may give rise to liability, by attaching liability only if [t]he contours of the right [violated are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. United States v. Lanier, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (citations omitted). This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of

preexisting law the unlawfulness must be apparent. <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)" <u>McElligott</u>, id at 1260. (internal quotation marks omitted) As Plaintiff has shown in this civil action, the "finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." <u>McElligott</u>, 182 F3d at 1260. (quoting <u>Hill</u>, 40 F.3d at 1186).

## 2. JUSTICIABILITY:

Plaintiff satisfies Article III's standing requirements as he has shown that (1) he has "suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC)</u>, Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (quotation marks and citation omitted)

## 3. ADA CLAIMS/DISCRIMINATION:

Title II of the Americans With Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Section 504 provides that, "No otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[14] Claims under both statutes are governed by the same standards. <u>Cash v. Smith</u>, 231 F.3d 1301, 1305 (11th Cir.2000); see also <u>Everett v. Cobb County Sch. Dist.</u>, 138 F.3d 1407, 1409 (11th Cir.1998). To have stated a claim under either statute, a Plaintiff must have shown: "(1) that [they are] qualified individual[s] with a disability; (2) that [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff[s'] disability." <u>Bircoll v. Miami-Dade Cnty.</u>, 480 F.3d 1072, 1083 (11th Cir.2007) (citation omitted); see also <u>Harris</u>, 941 F.2d at 1522 (applying those elements in the prison context) (see also <u>Bledsoe v. Palm Beach Cnty. Soil and Water Conservation Dist.</u>, 133 F.3d 816, 821-22 (11th Cir.1998)) (holding that the ADA prohibits "all discrimination by a public entity" regardless of the form it takes).

Plaintiff's Complaint made a prima-facie showing, of the <u>Briscoll</u> standard, and the defendants' responses failed to establish that any proposed accommodations are not "reasonable" because implementation would impose "undue financial and administrative burdens" or require "a fundamental alteration in the nature" of the Defendants' "program" at issue." <u>Harris</u>, 941 F.2d at 1527 n. 48 (citations omitted); see also <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 280 (2d Cir.2003) ("[I]t is enough for the plaintiff to suggest the existence of a plausible accommodation, like the provision of hearing aids and the notification of prison officials about the Plaintiff's hearing disability, the costs of which, facially, do not clearly exceed its benefits, and ... [becaus] the plaintiff has done this, ...he has made out a prima facie showing that a reasonable accommodation is available...") (quotation marks and citation omitted). . . . . . As such, it serves only to discriminate for the sake of discrimination. That is precisely the sort of "irrational

disability discrimination" that the ADA "seeks to [prohibit]." <u>Tennessee v. Lane</u>, 541 U.S. 509, 522, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004); see also <u>Bledsoe v. Palm Beach Cnty. Soil and Water Conservation Dist.</u>, 133 F.3d 816, 821-22 (11th Cir.1998) (holding that the ADA prohibits "all discrimination by a public entity" regardless of the form it takes).

4. STATUTE OF LIMITATIONS:

The statute of limitations for a § 1983 claim is determined by reference to state law; the court looks to the limitations period for personal injury torts. <u>Wallace v. Kato</u>, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). In Alabama, it is two years. However, "it is federal law that determines when the cause of action accrues—that is, when the clock begins to run." <u>Wallace v. Kato</u>, Id. at 388, 127 S.Ct. 1091.

"Aspects of Section 1983 which are not addressed by state law are governed by federal rules conforming in general to common-law tort principles." <u>Wallace v. Kato</u>, 549 U S. 384, 127 S.Ct. 1091, 1095 (2007). A Section 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the prisoner knows of his physical injury and its cause, which is "when the prisoner received his diagnosis." <u>United States v. Kubrick</u>, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed 2d 259 (1979) "An allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." <u>Lavellee v. Listi</u>, 611 F.2d 1129, 1132 (5th Cir. 1980); <u>Lovette v. Ray</u>, 327 F.3d 1181, 1182-1183 (11th.Cir.2003).

"The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of law occur within the statutory period." <u>Ctr. For Biological Diversity v. Hamilton</u>, 453 F.3d 1331, 1333 (11th.Cir.2006)

Plaintiff's injury was discovered on April 9, 2018 when Dr Olan Evans evaluated and diagnosed Oryang as legally and clinically deaf in the left ear. Under the continuing violations theory, the clock did not begin to run on all Plaintiff's claims until after April 9, 2018. As such, none of the defendants have raised any credible statute of limitations grounds for summary judgement. <u>Ctr. For Biological Diversity</u>, 453 F.3d at 1333

5. PUNITIVE DAMAGES:

The Defendants responses argue that Plaintiff's claims for Punitive damages are not alpropriate. Punitive damages are appropriate under § 1983 when, like Plaintiff has shown, "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves callous or reckless indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). See also <u>H.C. by Hewett v. Jarrard</u>, 786 F.2d 1080, 1089 (11th Cir.1986).

6. MOOTNESS:

"[T]he voluntary cessation of challenged conduct will moot a claim only when there is no `reasonable expectation' that the accused litigant will resume the conduct after the lawsuit is dismissed." <u>Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 633 F.3d *1286 1297, 1309 (11th Cir.2011) (citations omitted). "Otherwise a party could moot a challenge to a practice simply by changing the practice during the course of the lawsuit, and then reinstate

the practice as soon as the litigation was brought to a close." Id. (quotation marks and citations omitted).

On considering the Defendants' motions for summary judgement the court must conduct the mootness inquiry with attention to three relevant factors: (1) "whether the termination of the offending conduct was `unambiguous'"; (2) "whether the change in government policy or conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction"; and (3) "whether the government has `consistently applied' a new policy or adhered to a new course of conduct." Nat'l Ass'n of Bds. of Pharmacy, 633 F.3d at 1310 (citations omitted). However, the Defendants' never clarifief how exactly mootness applies in this civil action, and thus have fallen short in the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur." Friends of the Earth, Inc., 528 U.S. at 170, 120 S.Ct. 693.

## 7. PLEADINGS:
Rule 12(b) is clear that: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." By reserving the right to raise future defenses not specifically raised in their responsive pleadings as required by Rule 12(b), the Medical Defendants run awry of the controlling precedent and Plaintiff objects to their future use of any defense not specifically raised in their responsive pleadings.

## 8. FRAUD:
Under Rule 9(b) of the Fed. R. Civ. P., "[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Defendants failed in their duties to state with particularity the circumstances of the alleged fraud that they asserted as a defense. Summary judgement is thus due to be denied.

## 6
## GENUINE DISPUTES OF MATERIAL FACTS

1. Defendants Corizon and Wexford deny the existence of any ADOC and health service provider custom or policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. However, Attachment E from Plaintiff's medical records that was submitted by the correctional defendants and Defendant Waugh is a corroboration of Plaintiff Oryang's verified claims and clearly reflects the grounds used by the ADOC and all the defendants to deny Oryang treatment and required ADA accommodation services for his ailing ear and hearing deficit as that Oryang is not afflicted in both ears, and thus Plaintiff does not meet ADOC and health service provider "criteria" for the treatment, hearing aid placement and required ADA accommodation services his ailing left ear. (Attachment E) This constitutes a genuine issue as to material fact about the ADOC and ADOC health service provider policy that the defendants deny the existence of and asserted that Plaintiff cannot provide any evidence or medical records to indicate or infer that Corizon and Wexford have a policy that caused or contributed to Plaintiff's claims. (Docs. 49, 50)

2. Defendants Corizon, Wexford, Borowicz, Waugh and all of the Correctional Defendants submitted material evidence to the effect that their actions regarding Plaintiff's left ear ailments were informed by an April 9, 2018 diagnosis of Plaintiff Oryang by a physician named Dr Chandler, as suffering with Unilateral Hearing Loss, (Docs. 49, 50, 52, 53, 104) while Defendants Bell and Perryman submitted a conflicting version of material evidence about the same physician diagnosis of Plaintiff to the effect that Defendant Bell and Perryma's actions regarding Plaintiff's left ear ailments were informed by the diagnosis of Plaintiff on April 9, 2018, by a different physician named Dr Olan Evans, as suffering with Conductive Hearing Loss instead. (Docs. 87, 92) Unilateral Hearing Loss and Conductive Hearing Loss are distinctively different disorders that have markedly different effects on the person affected by them, and that each require different treatment responses. (Doc. 101-2)

Whether Plaintiff Oryang was diagnosed as suffering with Unilateral Hearing Loss or as suffers with Conductive Hearing Loss are material facts that are necessary to the determination of this civil action. Whether on April 9, 2018 Plaintiff Oryang was evaluated and diagnosed by Dr Chandler or was evaluated and diagnosed by Dr Olan Evans is a material fact that is necessary to the determination of this civil action.

When material facts such as Plaintiff's specific diagnosis and Plaintiff's diagnosing physician are in dispute, summary judgement is inappropriate. Rule 56(c), Fed. R. Civ. P.


3. "An allegation … is admitted if a responsive pleading is required and the allegation is not denied." Rule 8(b)(6) of the Fed. R. Civ. P. Thus, by failing to deny the following allegations that were made by Plaintiff Oryang, the Defendants have admitted to them and in effect established that there are several genuine disputes of material fact that are ripe for trial by jury:

> (i) Defendant Corizon admits that they failed to provide any medical treatment for Plaintiff's left ear ailments while Plaintiff was incarcerated at the Bullock and Draper Correctional Facilities between 2013 and 2018. (Doc. 44)
> (ii) Defendants Dr Borowicz, Waugh, Dr Bell, Dr Perryman, Parker, and Prevo admit that they denied Plaintiff treatment for Plaintiff's ailing left ear on the basis of their policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 52, 53, 62, 87, 88, 90, 92, 104, 104-1, 104-4)
> (iii) Defendants Headley, Gordy, and Dunn admit that they created, upheld and/or enforced the unconstitutional treatment policies at Bullock, Draper and Staton Correctional Facilities that enabled the other defendants to deny Plaintiff treatment for his ailing left ear on the basis that both of Plaintiff's ears were not afflicted and because Plaintiff could hear using his right ear. (Docs. 104, 104-2, 104-3, 104-5)
> (iv) Defendant Dunn admits that he was deliberately indifferent to a substantial risk of serious harm to Plaintiff by creating, upholding and enforcing the policy to treat ADOC prisoners with ailing ears only if both ears are afflicted, and in effect causing Plaintiff's injury. (Docs. 104-5, 104-6)
> (v) Defendants Dr Borowicz, Waugh, and Dr Bell admit that they failed to provide Plaintiff any treatment for Plaintiff's ailing left ear while Plaintiff was incarcerated at Draper Correctional Facility between January, 2017 and March, 2018. (Docs. 62, 87, 88)

All these admissions by the Defendants create genuine disputes of material facts that preclude summary judgement.

4. From April 9, 2018 until May 5, 2021 when Plaintiff Oryang discovered his precise diagnosis through mail from a third party, (Docs. 101, 101-3, 101-4, 101-5) the medical defendants misled Oryang with false information that:

- (i) the April 9, 2018 offsite physician who diagnosed Plaintiff was named Dr Chandler;
- (ii) on April 9, 2018, the offsite physician by the name of Dr Chandler diagnosed Plaintiff Oryang as suffering with Unilateral Hearing Loss;
- (iii) on April 9, 2018, the offsite physician by the name of Dr Chandler diagnosed Plaintiff Oryang as not requiring any treatment or hearing aid placement for the said Unilateral Hearing Loss; and,
- (iv) as a result of the offsite physician by the name of Dr Chandler's April 9, 2018 diagnosis of Plaintiff Oryang as not requiring any treatment or hearing aid placement for the Unilateral Hearing Loss that Plaintiff was suffering with, the medical defendants were denying Plaintiff all treatment, hearing aid placement, and ADA accommodation services for Plaintiff's left ear disease and hearing impairment.
- (Docs. 1, 25-1, 25-6 - 25-10, 101-3, 101-4, 101-5, 126, 151-1)

On April 9, 2018, an offsite physician by the name of Dr Olan Evans diagnosed Plaintiff Oryang as clinically and legally deaf as a result of the uninhibited progression of Conductive Hearing Loss, and as requiring a special kind of hearing aid. Dr Olan Evans ordered an MRI of Plaintiff's cranium to rule out other possible diagnoses, and also as a prerequisite to developing a required treatment plan for Plaintiff's left ear disease. (Docs. 1, 25-1, 25-6 - 25-10, 101-3, 101-4, 101-5, 126, 151-1) Plaintiff Oryang has never been evaluated in person for his left ear disorder by any person known as Dr Chandler, and all submissions made by the defendants that reference Dr Chandler as Plaintiff's diagnosing physician are false and perjured. (Docs. 101, 101-3, 101-4, 101-5, 126, 151-1)

This constitutes a genuine dispute of material fact that precludes Plaintiff's claims from summary judgement. Rule 56(c).

## 7
## CONCLUSION

Wherefore, Plaintiff Oryang prays that after considering all the claims of the Complaint and Amended Complaint, in conjunction with all the evidence and the Defendant's responses, the Court will:

1. Deny the Defendants' motions for summary judgement
2. Grant declaratory judgement against the defendants in this civil action, ot, in the alternative,
3. Appoint an expert witness under Fed.R.Evid. 706(a), selected by the Court's own choosing, specifically to study and interpret the medical implications of this case and to provide substance to the Court's delibeations upon the medical documents, medical terminology and other details that are necessary to the understanding of Conductive Hearing Loss, Unilateral Hearing Loss, and the medical treatments that are deemed legally appropriate or required for them;
4. Set this case for pretrial conference;

5. Grant Plaintiff all the relief requested in the Amended Complaint (Doc. 25) and Plaintiff's Motions for Preliminary and Permanent Injunctions;. (Doc. 36) and,

6.Grant Plaintiff any other relief that the Court deems to be just fair and equitable in this matter.

Respectfully submitted on this the 24th day of July, 2022.

BENJAMIN BEDOGWAR ORYANG
AIS# 168079.     F2-34A
STATON CORRECTIONAL FACILITY
2690 MARION SPILLWAY ROAD
ELMORE, ALABAMA 36025

(Plaintiff, Pro Se)

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing upon General Counsel for the ADOC and Counsel for the Medical Defendants on this the 28th day of July, 2022, by placing the same in the U.S. Mail with First Class postage prepaid and properly addressed to:

J. MATT BLEDSOE
OFFICE OF THE ATTORNEY GENERAL,
STATE OF ALABAMA
501 WASHINGTON AVENUE
MONTGOMERY, ALABAMA 36130-0152

AND,

PHILIP G. PIGGOTT
WEBSTER HENRY, P.C.
TWO PERIMETER PARK SOUTH
SUITE 445 EAST
BIRMINGHAM, ALABAMA 35243

Respectfully Submitted,

BENJAMIN BEDOGWAR ORYANG

AIS# 168079.     F2-34A



BENJAMIN BEDOGWAR ORYANG
AIS # 168079 F2-34A
STATON CORRECTIONAL FACILITY
2690 MARION SPILLWAY ROAD
ELMORE, AL 36025

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
11 CHURCH ST. SUITE B-110
MONTGOMERY ALABAMA 36104-40





