**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2024 MAR -7 A 11: 00

TREY GRANGER, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**BENJAMIN BEDOGWAR ORYANG,**
**AIS# 168079,**
      **Plaintiff,**

        **V.**           **CASE NO. 2:21-CV-00023-ECM**

**MS. WAUGH, et al.,**
      **Defendants.**

## PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION FOR SUMMARY JUDGMENT

Comes Plaintiff Benjamin Bedogwar Oryang, pro se, pursuant to Rule72(b) Fed. R. Civ. P., and hereby objects to the Magistrate Judge's Report and Recommendation for Summary Judgment dated February 16, 2024 (Doc. 176). Plaintiff presents the following as grounds:

I.     INTRODUCTION. Page 1
II.    FACTS AND PROCEDURAL HISTORY. Page 2
III.   STANDARD OF REVIEW. Page 7
IV.   DISCUSSION. Page 8
V.    CLAIMS NOT ADDRESSED BY THE MAGISTRATE JUDGE. Page 28
VI.   CONCLUSION. Page 29
VII.  APPENDIX 1. page 31

## I. INTRODUCTION

For over two decades, Plaintiff Benjamin Bedogwar Oryang, while under the custody of the State Department of Corrections (ADOC) and receiving healthcare services from Defendants Corizon LLC, Wexford Health Sources Inc., et al., has been denied necessary medical treatment and Americans with Disabilities Act services for his progressively deteriorating condition of Conductive Hearing Loss in his left ear. (Docs. 1, 5, 25, 25-1, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1, 153, 153-1, 153-2, 153-3, 153-4, 153-5). Despite clear medical evidence, including a specialist-physician diagnosis in the year 2000 requiring mandatory treatment to stop the degenerative ear condition (Docs. 1, 5, 25, 25-1, 36, 51-1, 51-2, 52-3, 101, 126, 151-1, 153-1) and a diagnosis and recommendation for treatment from another specialist-physician in April 2018 (Docs. 1, 5, 25, 25-1, 36, 51-1, 51-2, 52-3, 101, 126, 151-1, 153-1), Defendants have systematically and under policy considerations denied Plaintiff the medical treatment and ADA accommodations services he urgently requires for Conductive Hearing Loss, resulting in irreversible damage to Plaintiff's inner left ear, ability to

hear out of his left ear, and significant suffering.  (Docs. 1, 5, 25-1 to 10, 36, 101, 101-3, 101-4, 101-5, 126, 151-1, 153-1, 153-5 at p.3)

For purposes of understanding, the medical treatment of conductive hearing loss extends significantly beyond initial evaluations and diagnoses, necessitating comprehensive intervention strategies to address the underlying causes effectively. (Doc. 101-2).  As established in precedent, the adequacy of medical care, particularly under the Eighth Amendment, requires actions that surpass mere diagnostic efforts (Estelle v. Gamble, 429 U.S. 97, 1976). Specifically, conductive hearing loss, often resulting from issues such as fluid in the middle ear, ear infection, or malformations of ear structures, requires targeted treatments ranging from pharmaceutical interventions to surgical procedures aimed at correcting the obstruction or dysfunction (Farmer v. Brennan, 511 U.S. 825, 1994). Diagnostic procedures like ear evaluations and MRIs, the only medical care that Plaintiff has received in over 20 years as he's suffered with the disorder, are crucial for identifying the problem but do not constitute treatment; they merely inform the subsequent necessary medical actions to treat the condition effectively (Helling v. McKinney, 509 U.S. 25, 1993). Therefore, to meet the legal and medical standards of care, especially for vulnerable populations under state custody, the progression from diagnosis to actual treatment is essential, underscoring the obligation to provide healthcare that genuinely addresses the diagnosed conditions.

## II. FACTS AND PROCEDURAL HISTORY

(A) Plaintiff Benjamin B. Oryang has been under the custody of the Alabama Department of Corrections ("ADOC") since 1992. (Docs. 1, 5, 25, 36, 126, 151, 153-1) Plaintiff initiated this Section 1983 action by filing a complaint in the U.S. District Court for the Northern District of Alabama on September 30, 2019, alleging a continuing violation of his federally protected Constitutional Rights against deliberate indifference and cruel and unusual punishment beginning in 1999. (Doc. 1, 5) Plaintiff named 21 defendants who he alleged had been deliberately indifferent to his serious medical needs for the treatment and hearing aid placement of his ailing left ear, and in failing to provide Plaintiff with the hopes required Americans With Disabilities Act ("ADA") disability services related to his hearing impairment. (Docs. 1, 5) The Northern District Court dismissed the complaint in part as time barred, without prejudice, and transferred the remaining claims to the U.S. District Court for the Middle District of Alabama. (Docs. 15, 17, 18, 19)

(B) On February 18, 2021 the Middle District Court entered an Order requiring Plaintiff to amend his complaint. (Doc. 21) Plaintiff filed an amended complaint on March 5, 2021, (Doc. 22) but the Court rejected it with leave for Plaintiff to file another amended complaint meeting specifications set out by the Court. (Doc. 24)

(C) On March 18, 2021 Plaintiff filed the current Amended Complaint challenging the constitutionality of medical care afforded him specifically for his ailing left ear while he was incarcerated at ADOC's Bullock, Draper, and Staton Correctional Facilities between mid-2013

2

and March 18, 2021. (Doc. 25)  The Amended Complaint challenges the lack of medical treatment for Plaintiff's left ear affliction and its accompanying symptoms, the refusal to provide hearing aid placement for Plaintiff's hearing disability, and the defendants' failures to provide Plaintiff with any required ADA accommodations or services despite Plaintiff's well-documented hearing disability and hearing impairment. (Docs. 25, id at page 2; 25-1)

In the Amended Complaint Plaintiff claims both a violation of his Constitutional Rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution, and a continuing violation of his Constitutional Rights under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution from 2013 to the date of the Amended Complaint on March 18, 2021. (Docs. 25, 25-1) Plaintiff invoked the Fifth Amendment of the United States Constitution because he is and was at all times mentioned in this civil action an immigration detainee awaiting deportation. (Doc. 25, 25-11)

Plaintiff named 15 defendants and raised the following grounds for relief:

(1) Defendants' deliberate indifference to Plaintiff's serious medical needs violated Plaintiff's rights and constituted cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution.

(2) Defendants' deliberate indifference to Plaintiff's serious medical needs violated plaintiff's rights, and constituted cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution.

(3) Defendants' use of discriminatory policies to deny plaintiff his serious medical needs violated plaintiff's rights and Equal Protection, under the Eighth and Fourteenth Amendments of the United States Constitution.

(4) Defendants' Enforcement of discriminatory policies that denied plaintiff's serious medical needs violated plaintiff's rights, Due Process, and Equal Protection under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

(5) Defendants' deliberate indifference to a substantial risk of serious harm to plaintiff was a continuing violation of plaintiff's rights and Due Process, and constituted cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

(6) Defendants' reckless and callous indifference to Plaintiff's serious medical needs was a continuing violation of Plaintiff's rights and Due Process, and constituted cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

(Docs. 25, 51, 51-1, 51-2, 51-3, 153)

(D) In support of his Complaint, Plaintiff attached verified claims against each named Defendant (Docs. 1, 25-1), and submitted sworn affidavits and declarations stating the facts of his claims (Docs. 1, 5, 25-1, 25-2, 25-3, 25-5). By the date of the Magistrate Judge's Recommendation Plaintiff had filed or submitted multiple verified Affidavits, additional medical records and other documents (Docs. 1, 5, 25-1, 25-2, 25-3, 25-5, 36, 51-1, 51-2, 51-3, 101, 101-2, 101-3, 101-4, 101-5, 126, 151, 151-1, 153, 153-1, 153-2, 153-3, 153-4, 153-5) to the effect that the Defendants exhibited deliberate indifference to his serious medical needs for the treatment of his serious medical condition, violating his Eighth Amendment rights. (Doc. 25-1) Specifically, he has been denied essential treatment and accommodations for his progressively deteriorating left

ear condition under a discriminatory policy that only acknowledges ailments affecting both ears. (Docs. 1, 5, 25, 25-1, 36, 51-1, 51-2, 51-3, 126, 151-1) (See Appendix I for more detailed claims)

(E) Encompassed within the Amended Complaint, (Doc. 25) Plaintiff filed a motion for Preliminary and Permanent Injunction against the defendants, (Docs. 25 at page 6; 36) emphasizing his claims, amongst other things, that;
(1) Defendants, ADOC, Wexford, and the health service companies they contract with are Plaintiff's primary – and only - means/access to medical treatment and/or healthcare services.
(2) Defendants continue to deny Plaintiff all treatment, and all Federal and State required Americans With Disabilities Act ("ADA") accommodations and services for Plaintiff's ear affliction and hearing disability. Said actions by the defendants are:
(i) a direct threat to Plaintiff's health, safety and livelihood;
(ii) directly violate the settlement agreement [defendants] are bound by in Braggs v. Dunn, No. 2:14-cv-00601-MHT-JTA (U.S. Dist, Ct., MD, Ala., 2019; 2020);
(iii) directly violative of the mandatory requirements of 42 U.S.C. § 12102, 29 U.S.C. § 705, and Section 504 of the Rehabilitation Act;
(iv) directly violative of ADOC Administrative Regulations Secs. 705-I, 705-II, 705-IV, 705-V-C, and 705-V-H;
(v) a reckless and callous indifference to Plaintiff's serious medical needs; and,
(vi) cruel and unusual punishment under the Eighth Amendment of the United States Constitution
(Doc. 36).
The Court denied the Motion for Preliminary Injunction, (Docs. 98, 108, 110,120) but Plaintiff's Motion for a Permanent Injunction is still pending (Docs. 25, 36, 98, 108, 110).

(F) On. March 29, 2021, the Court dismissed defendants ADOC, Dr Siddiq, Dr Chandler and Dr Owens from the case. (Docs.27) The Court struck Plaintiff's claims #2 through #6 (Doc. 25 at pages 3 and 4; Doc. 51 at pages 2, 12, 13), Plaintiff's sworn Affidavit (Docs. 25-3), and Plaintiff's sworn Declarations (Docs. 25-2, 25-5) from the case record (Docs. 28, 51, 51-1, 51-2, 51-3). Plaintiff objected to the Court's dismissal of defendants ADOC and Dr Siddiq and the striking of relevant pleadings from the record (Docs. 51, 78), but the objections were overruled. (Docs. 64, 66, 111, 112)
The Court ordered the remaining eleven defendants to respond to the Amended Complaint with Answers and Special Reports (Doc. 29).

(G) Defendants Corizon LLC, Wexford Health Sources Inc., Dr Michael Borowicz, Charlie Waugh, Dr Scott Bell, and Dr Richard Perryman ("the medical defendants") responded with Answers (Docs. 44, 62, 88, 90) and Special Reports (Docs. 49, 50, 52, 53, 87, 92). Each one of the medical defendants raised the following defenses:
1) Failure to state a claim: 2) Contributory negligence or last clear chance; 3) Assumption of the risk; 4) Doctrine of latches; 5) Statute of limitations bar; 6) Doctrine of waiver; 7) Lack of subject matter jurisdiction; 8) Improper venue; 9) Plaintiff lacks standing; 10) Doctrine of unclean hands; 11) Doctrine of qualified immunity; 12) Doctrine of sovereign immunity; 13) Doctrine of estoppel;

4

14) Doctrine of res judicata; 15) Failure to mitigate damages; 16) Acts or omissions performed by other persons for whom Defendant is not responsible; 17) Defendant did not breach any duty allegedly owed to Plaintiff; 18) No legal or proximate causal relationship between Defendant's actions and Plaintiff's injuries; 19) Existence of superseding intervening causes; 20) Lack of damages suffered due to any alleged wrongs; 21) Actions asserted are frivolous, malicious, and fail to state a claim; 22) Requested injunctive relief is not sufficiently narrowly drawn; 23) Plaintiff seeks to question a medical judgement; 24) Lack of showing of deliberate indifference; 25) Objection to attorney fees; 26) Claim for punitive damages violates Defendant's rights against cruel and unusual punishment; 27) Adoption of Alabama Medical Liability Act 6-5-481 and 6-5-542 as defense; 28) Plaintiff failed to comply with 28 USC 1915; 29) Cause due to be dismissed pursuant to 28 USC 1915A and 42 USC 1997(e)(C); 30) Case is frivolous, filed for purposes of harassment and intimidation, and Plaintiff should pay attorney fees under 42 USC 1988; 31) Claims have been resolved and are now moot; 32) All Alabama Code affirmative defenses; 33) All defenses pled by other defendants; 34) Additional defenses as discovery proceeds (Docs. 44, 62, 88, 90).

Defendants Dr Borowicz, Waugh, Dr Bell and Dr Perryman submitted Affidavits and/or sworn Declarations with multiple document exhibits from Plaintiff's medical file, and all these said defendants acknowledged/stipulated that Plaintiff's medical needs for the treatment of his ailing ear constitute a serious medical need, but denied having been deliberately indifferent to those needs. (Docs. 52-1 - 3, 53- 1 - 3, 87-1 - 3, 92-1 - 3)

Defendants Corizon and Wexford did not submit any documentary evidence or exhibits in their Special Reports, but instead argued preclusionary grounds as their defenses. (Docs. 49, 50) As grounds for summary judgement, the medical defendants asserted that Plaintiff will be unable to prove his case at trial and cannot produce any evidence to prove the claims raised against them. (Docs. 49, 50, 52, 53, 87, 92)


(H) Defendants Lieutenant Robert Parker, Warden Joseph Headley, Warden Christopher Gordy, Deidre Prevo, and Commissioner Jefferson Dunn ("the correctional defendants") responded with an Answer and Special Report. (Doc. 104; 104-1, 104-2, 104-3, 104-4,104-5) Each one of the correctional defendants raised the following defenses:

1) Draper and Staton Correctional Facilities' penological interests to maintain order in the facilities; 2) Individual capacity qualified immunity; 3) Official capacity sovereign immunity; 4) Denial of violating Plaintiff's Constitutional Rights; 5) Denial of each and every material allegation and demand for strict proof; 6) Failure to state a claim upon which relief can be granted; 7) Assumption of the risk; 8) Contributory negligence; 9) Duress; 10) Estoppel; 11) Fraud; 12) Illegality; 13) Waiver; 14) Statute of limitations; 15) Res judicata; 16) Request pursuant to Rule 12(c) for summary judgement. (Doc. 104)

The correctional defendants denied liability for Plaintiff's injury, denied being deliberately indifferent, and requested that Plaintiff's Americans With Disabilities Act claims be denied. As grounds for summary judgement, the correctional defendants asserted that Plaintiff will be unable to prove his case at trial and cannot produce any evidence to prove the claims raised against them. (Doc.104)

(I) On May 17, 2021 and September 13, 2021 Plaintiff filed an objections styled "Objection to Responsive Pleadings," in which Plaintiff objected to the Defendants' Responsive Pleadings on several grounds, including the ground that Defendants' had violated the Court's Orders (Docs. 29) and Rules 37(b) and (c) by submitting multiple medical records of Plaintiff that are not relevant in any shape, form or fashion to Plaintiff's left ear ailments, to the Defendants' treatment of Plaintiff for Plaintiff's left ear ailments, or to the basis of Plaintiff's complaint and claims (Docs. 83, 107). On May 18, 2021 and November 19, 2021 the Court denied Plaintiff's Motions (Doc. 84, 109).

(J) On April 28, 2021 Plaintiff filed a Demand For Jury Trial (Doc. 71).

(K) On May 31, 2022 the Court issued an Order requiring Plaintiff to respond to the defendants' motions for summary judgment (Doc.149).

(L) On June 10, 2022 Plaintiff filed a motion in opposition to Court Order Document #149 pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, wherein Plaintiff pleaded that he couldn't properly defend himself against summary judgment due to the Defendants' actions in refusing to produce the specific documents he'd made multiple discovery requests for, and which were necessary to prove his case. (Doc. 151, 151-1)

(M) Upon filing his Response in Opposition to the Defendants' Motions for Summary Judgement on July 28, 2022 (Doc. 153), Plaintiff invoked 28 U.S.C. § 1733(b) and Rule 15(c) of the Federal Rules of Civil Procedure and - in support of Plaintiff's Response in Opposition to the Defendants' motions for summary judgment, Plaintiff alleged, realleged and incorporated the following material and relevant submissions made in this civil action:
    (1) All exhibits and sworn Affidavits as raised in the original Complaint Docs. 1 and 5. (Doc.153 at p.12)
    (2) All grounds for relief, exhibits, evidence, and sworn Affidavits as raised in the Amended Complaint and Motion for Preliminary and Permanent Injunction Docs. 25, 36, 101, 101-2 - 5, 113, 51 at page 12 to 13, 51-1, 51-2, 51-3. (Doc. 153 at p.13)
    (3) All grounds for relief, sworn Affidavits, and Sworn Declarations as realleged in Document #s 25, 25-1 - 11, 36, 51 id at pages 2, 3, 12, 13, 14; 51-1, 51-2, 51-3. (Doc. 153 at p.13)
    (4) All verified factual evidence, sworn Affidavits and sworn Declarations as submitted in Document #s 1, 5, 25, 101 at pages 8-9, 10-15, 16-20; 101-1, 101-2, 101-3, 101-4, 101-5; 126; 151-1. (Doc. 153 at p.13)
    (5) All grounds for relief (Docs, 25, 36), claims in support of grounds for relief, (Docs. 1, 5, 25, 25-1 - 11, 36, 51, 51-1 - 3, 101, 101-1 - 5, 126, 151-1) pleadings, (Docs. 51, 78, 83, 100, 101, 106, 107, 113, 114, 115, 116, 119, 125, 126, 135, 145, 151) and Demand For Trial By Jury (Doc. 71). (Doc. 153 at p.13)

(N) On March 7, 2023 the Court issued an Order that stayed Plaintiff's action in the case against Defendant Corizon (Doc. 156). Encompassed therein was an Order that the remaining Defendants must "file an appropriate motion if they believe that there is an unusual

circumstance justifying extension of the automatic bankruptcy stay to Plaintiff's action against them" (Id).

(O) On August 10, 2023 after none of the Defendants responded to Court Order Document #156, Plaintiff served notice on the Court that a judgment or finding against Defendants Waugh, Dr Perryman, and Dr Bell would in effect be a judgment or finding against Corizon due to their employment and indemnity issues (Doc. 157).

(P) On February 21, 2024 Plaintiff received service by mail the Recommendation of the Magistrate Judge for summary judgment in favor of all the Defendants (Doc. 176), to which this Objection is being made.


## III. <u>STANDARD OF REVIEW</u>

"Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Dunn v. Dunn, 219 F. Supp. 3d 1100, 1108-1109 (US.Dist.Ct. MD Ala.2016) (quoting Hammer v. Slater, 20 F.3d 1137, 1141 (11th Cir. 1994)) (citation and internal quotation marks omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991) and Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).
The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in the non-moving party's favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510-13, 91 L.Ed.2d 202 (1986). Additionally, a fact is material "if it is necessary to the Court's decision." United States v. Gilbert, 920 F.2d 878, 883 (11th.Cir.1991).

The "Court should not weigh the evidence or determine credibility." Anderson, 477 U.S. at 255. "[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Adickes, 398 U.S. at 160; Anderson, 477 U.S. at 248. Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P., 56(c);

Anderson, id. at  248, 106 S.Ct. at 2510, 2511-12. "A genuine issue of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor." Waddle v. Valley Forge Dental Assoc's, 276 F.3d 1275, 1279 (11thCir. 2001).

"{I}f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." Matsushita Elec. Indus. Co., 475 U.S. at 586. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact," summary judgment is not justified. Bannum, Inc. v. City of Fort Lauderdale, 901 F.2d 989, 996 (11th Cir.1990).

When a prisoner shows that they have a "serious medical need" and establishes that they have been "subjected to serious harm" or to "a substantial risk of serious harm," the "objective" test under the Eighth Amendment has been met. Farrow v. West, 320 F.3d 1235, 1243 n.13 (11th Cir. 2003) "The serious harm requirement is concerned with both the severity and the duration of the prisoner's exposure to the harm." Chandler v. Crosby, 379 F.3d 1278 (11th Cir. 2004) "Unnecessary pain or suffering qualifies as a serious harm." Lamarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993) "Deliberate indifference" is established once the prisoner proves "an objectively serious need, an objectively insufficient response to that need, subjective facts signaling the need, and an actual inference of required action from those facts." Farrow, 320 F.3d at 1243 (11th Cir. 2003)

"By presenting to the Court a pleading, written motion or other paper," a party"certifies"those factual contentions. Rule 11(b), Fed. R. Civ. P.

Pro se pleadings should be held to a less stringent standard than pleadings drafted by attorneys, and should therefore be liberally construed. Boxer v. Harris, 437 F.3d 1107, 1110 (11th.Cir.2006); Hughes v. Lott, 350 F.3d 1157 (11th.Cir.2003); Loren v. Sasser, 309 F.3d 1296, 1301 (11th Cir. 2002).


## IV. DISCUSSION

This Objection is grounded on the premature recommendation for summary judgment in this case, a misinterpretation of the case facts, misapplication of the applicable laws, oversight of critical material evidence, and a fundamental misunderstanding of what is both medically necessary and required in the treatment of conductive hearing loss.

In line with these Objections, Plaintiff shows the following as grounds.

### A(1). OBJECTION TO PREMATURE RECOMMENDATION

Plaintiff respectfully objects to the Magistrate Judge's Recommendation for summary judgment in favor of all the Defendants (Doc. 176) before the Court has issued judgment or ruled on

Plaintiff's Rule 56(d) motion filed on June 20, 2022 (Doc. 151, 151-1), that is still pending before the Court.

On March 31, 2021 the Court Ordered that the Defendants respond to Plaintiff's complaint and that they "must" provide copies of all documents, records, applicable administrative rules, regulations or guidelines relevant to addressing the claims presented by Plaintiff and where Plaintiff's claims or the Defendants defenses relate to the application of administrative rules. (Doc. 29) The Defendants responded and asked the Court to consider their responses as motions for summary judgment (Docs. 44, 49, 50, 52, 53, 62, 87, 88, 90, 92, 104), and Plaintiff objected that the Defendants had failed to furnish copies of any "documents, records and regulations relevant to addressing" his specific claims, amongst other things that:
(i) Plaintiff's left ear affliction began in 1999 . . . (ii) On May 18, 2000, a physician diagnosed Plaintiff as mandating treatment for a progressively degenerative disorder of Plaintiff's inner left ear . . . (iii) On May 18, 2000, a physician diagnosed Plaintiff as requiring accommodations for progressively worsening hearing loss in Plaintiff's left ear, and for Plaintiff's hearing impairment . . . (iv) From mid-2013 to March 18, 2021, Plaintiff was consistently denied treatment and hearing aid placement by ADOC and healthcare provider policy and/or customs that provided treatment and services to ADOC prisoners with ailing ears only if both ears were afflicted . . . (v) Plaintiff was discriminated against by ADOC and healthcare providers, from mid-2013 to March 18, 2021, in their denying Plaintiff treatment and hearing aid accommodation services for his left ear affliction while availing said medical treatment and accommodations to other similarly situated prisoners . . ." (Doc. 83 at p. 7)
The objection was overruled by the Court (Doc. 84) and on May 31, 2022 the Court issued Orders for Plaintiff to respond to the Defendants' motions for summary judgment (Doc. 149).

On June 10, 2022, pursuant to Rules 56(d) and 12(d) of the Fed. R. Civ. P., Plaintiff Oryang filed a "Response In Opposition" to Court Order Document 149 (Doc. 151, 151-1) wherein he testified in relevant part that:
"The documents that I have been diligently attempting to get from the defendants using the discovery process are: (1) All medical records related to my evaluation, diagnosis and planned treatment course by the off-site specialist of May, 2000 regarding my left ear disease. (2) Any and all medical records of mine that are identifiable as documentations or reports made on or around May 18, 2000 by ADOC staff, healthcare providers, or healthcare administrators regarding my May 18, 2000 evaluation and diagnosis by the outside specialist, to include all Administrative decisions on the treatment course for my ailing ear. . . (4) All Administrative decisions and documentations made by nurses, doctors, providers, and administrators regarding their encounters with me regarding my left ear afflictions on the following dates: 04/17/2000, 04/21/2000, 05/05/2000, 05/18/2000, 06/05/2000, 10/20/2000, 11/01/2000, 11/08/2000, 1/26/2001, 2/26/2001, 3/15/2001, 5/03/2001, 5/08/2001, 5/17/2001, 7/17/2017, 8/28/2017, 10/17/2019, and 12/04/2019. (5) The Administrative requirements referenced by Defendant Dr Borowicz on or around December 5, 2019 upon his denial of medical treatment and hearing aids for my ear affliction and hearing impairment. . . (7) All administrative records of Wexford, and medical records of mine, specifically containing any reference to my medical condition as 'Conductive Hearing Loss' (or 'CHL') and the medical treatment of said condition, or

the decision not to treat me for Conductive Hearing Loss. . . (9) Any and ADOC administrative records identifiable as approvals or denials of requests or recommendations made by healthcare providers for the approval of medical procedures, medical treatments, or medical accessories specifically regarding my left ear afflictions and hearing impairment. . ." (Doc. 251-1 at p.5 to 7)

The above referenced documents . . . would (1) Establish a genuine issue of material fact that the ADOC, healthcare providers for the ADOC, and the defendants have consistently maintained a policy that was applied to deny me medical treatment for my left ear disease, hearing aids, and Americans with Disabilities Act accommodations and services for my hearing impairment, from the onset of my ear afflictions in 1999 to the present day; (2) Establish a genuine issue of material fact that the defendants, by way of the May, 2000 physician's diagnosis and orders regarding my progressively worsening ear disease, were fully informed about my serious needs for the medical treatment of my left ear, and the implications of what injury would occur to me if I did not receive medical treatment for my progressively degenerative ear disease; (3) Establish a genuine issue of material fact that the defendants, by way of the April, 2018 physician's diagnosis and orders regarding my legal and clinical deafness and my suffering with conductive hearing loss, are fully informed about my serious medical needs for the treatment of my left ear disease, and fully aware of my physician-diagnosed hearing disability and need for hearing aids; (4) Establish a continuing violation that negates any of the defendants' contentions that the statute of limitations precludes them from liability for failing to provide me with medical treatment for my ear disease; and (5) Justify the claims raised in my complaint (Doc. 25) and preclude me from summary judgment as requested by the defendants." (id. at p.7 to 8)

On February 16, 2024, before the Court ruled on Plaintiff's Motion pursuant to Rules 56(d) and 12(d), Fed. R. Civ. P. (Doc. 151), the Magistrate Judge recommended summary judgment in favor of all the Defendants on the basis that Plaintiff had failed to provide sufficient evidence to substantiate his claims of deliberate indifference and other issues. (Doc. 173)

I. Due Process Concerns

The Magistrate's recommendation for summary judgment prior to the resolution of Plaintiff's pending Rule 56(d) motion (Doc. 151, 151-1) undermines the fundamental due process rights afforded under the Fifth and Fourteenth Amendments of the US Constitution. The premature recommendation, absent a full and fair opportunity for Plaintiff Oryang to present his case, directly contravenes the principles set forth in Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986), where the Supreme Court underscored the necessity of a 'full and fair opportunity' for parties to pursue discovery relevant to their claims (Id.). The Eleventh Circuit has consistently upheld this tenet, emphasizing in Snook v. Trust Co. of Georgia, 859 F.2d 865, 870 (11th Cir. 1988) that due process is violated when a party is unduly restricted in their ability to present their case. Here, Plaintiff's unresolved Rule 56(d) motion is a critical element in ensuring that due process is not just a theoretical promise but a practical reality." (Id.)

II. Importance of the Requested Records

The Defendants' refusals to produce, coupled with the Court's reluctance to compel the production of vital records pertaining to the specialist physician's diagnosis and orders from May 2000, significantly impairs Plaintiff's ability to challenge the Defendants' motions for summary judgment by presenting evidence which would prove the subjective component of deliberate indifference. The Supreme Court has long recognized the significance of discovery in the adjudicative process, particularly in civil rights cases like this one where documentary evidence is often the linchpin of the Plaintiff's case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986) reinforces the principle that the substantive fairness of the litigation process is heavily dependent on the accessibility of relevant information. The Eleventh Circuit's decision in Hickman v. Taylor, 329 U.S. 495, 507 (1947) further elucidates the necessity of discovery, especially when the evidence in question is crucial to the plaintiff's ability to establish a prima facie case.

III. Relevance of the Requested Discovery

The relevance of the requested discovery (Docs. 114, 115, 116, 125, 135, 136, 145) cannot be overstated. These documents are not tangential but central to proving Plaintiff's claims of deliberate indifference that, from the year 2000, the Defendants failed to follow physician mandates in the medical treatment of Plaintiff's degenerative ear condition (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126 at p.1 to 2, 151-1 at p.2, 7 to 8; 153 at p.15). The Defendants' refusals to produce these documents not only impedes Plaintiff's ability to contest the motions for summary judgment effectively but also undermines the integrity of the judicial process. The Eleventh Circuit has consistently held that "the essence of civil rights actions lies in an unflinching willingness to allow parties to secure the evidence necessary to support their claims," as noted in Lewis v. Casey, 518 U.S. 343, 356 (1996).

Wherefore, it is imperative that summary judgment be denied, or deferred until such time as all these critical requested documents are produced, ensuring that the Plaintiff's rights under the Constitution are not merely preserved but actively protected.

**A(2). OBJECTION TO PREMATURE RECOMMENDATION**

Plaintiff respectfully objects to the Magistrate Judge's Recommendation for summary judgment in favor of Defendants Corizon, Ms Waugh, Dr Bell and Dr Perryman (Doc. 176) on the basis that:

1. On March 7, 2023 the Court issued an Order that stayed Plaintiff's action against Defendant Corizon "until further order of the Court." (Doc. 156)
2. On August 10, 2023 Plaintiff served notice on the Court that a judgment or finding against Defendants Ms Waugh, Dr Bell, and Dr Perryman in this case would in effect be a judgment or finding against Defendant Corizon. (Docs. 157, 159)
3. As a result of the Court Order staying Plaintiff's action against Corizon (Doc. 156), Plaintiff Oryang was prohibited from filing additional pleadings in the case against Defendants Corizon, Ms Waugh, Dr Bell, and Dr Perryman until the stay is lifted, as ordered by the Court. (Doc. 156)

4. The Magistrate Judge's "commencement or continuation . . . of a judicial, administrative, or other action or proceeding" before the stay was lifted and before Plaintiff was given opportunity to file additional pleadings against Defendants Corizon, Ms Waugh, Dr Bell, and Dr Perryman violates due process, 11 U.S.C Sec. 362(a)(1), and this Honorable Court's Orders of March 7, 2023. (Doc. 156)

Wherefore, Plaintiff moves the Court to overrule the Magistrate Judge's Recommendation as it applies to Defendants Corizon, Ms Waugh, Dr Bell, and Dr Perryman until such time as the Court has lifted the stay and given Plaintiff opportunity to file his additional pleadings in support of his claims against Defendants Corizon, Ms Waugh, Dr Bell, and Dr Perryman.

**B. OBJECTION TO FACTUAL FINDINGS AND LEGAL CONCLUSIONS ON DELIBERATE INDIFFERENCE**

The Recommendation of the Magistrate Judge held that:
"The undersigned [. . .] cannot conclude that Oryang has presented a question of fact on the issue of whether he suffered from an objectively serious medical need and/or the issue of whether the defendants exhibited an objectively insufficient response" (Doc. 176  at p.13); . . "Even if the objective prong were sufficiently satisfied here, the record still fails to reflect   a genuine issue of material fact on the subjective prong" (id at p.14);. . . "Because Oryang's hearing was consistently recorded as normal in his right ear, there is no evidence suggesting that any of the defendants had subjective knowledge that he would be unable to engage in daily activities without a hearing aid or additional treatment. Nor does the record contain evidence suggesting that any of the defendants had subjective knowledge that Oryang would face a substantial risk of serious harm without a hearing aid or additional treatment. Under these particular circumstances, the defendants' conduct certainly could not be said to have exceeded mere negligence" (id at p.14), and; "[S]ummary judgment is due to be granted in favor of the defendants as to all relief sought under Oryang's claims for deliberate indifference" (id at p.15), and "The correctional defendants additionally would be entitled to summary judgment on Oryang's claims for deliberate indifference under their asserted defense of qualified immunity. (Doc. 104 at p. 7)" (id at p.15 footnote 9)

With respect, Plaintiff objects to these findings on the basis that they egregiously misrepresent the facts in this case and misinterpret the legal standards of deliberate indifference as they apply to Plaintiff Oryang's claims. (Doc. 25-1, 153).  The Recommendation improperly dismisses the severity of Plaintiff's medical needs and the Defendants' refusal to address these needs adequately. As argued in the Response in Opposition (Doc. 153), the Defendants' actions and inactions constitute deliberate indifference to Plaintiff's serious medical conditions, satisfying the Farmer v. Brennan, 511 U.S. 825 (1994), standard for cruel and unusual punishment. The Magistrate's failure to recognize this establishes a misapplication of constitutional law warranting this objection.

The Magistrate's reliance on Keohane v.                Florida Dept. of Corrs. Sec., 952 F.3d 1257, 1266 (11th Cir. 2020) does not stand because unlike Keohane, Plaintiff Oryang is grieving

about the lack of actual medical treatment for a progressively deteriorating inner left ear that was diagnosed by a physician as mandating treatment, which the Defendants failed to provide.

The Magistrate Judge's Recommendation overlooks the essence of Plaintiff's claim—that Defendants demonstrated deliberate indifference by failing to provide necessary treatment for Plaintiff's progressively deteriorating inner left ear and the symptoms that Plaintiff was suffering as a result following diagnosis by two separate specialist-physicians. (Docs. 25, 25-1, 101, 126, 151-1, 153 at p.15, 16).

Second, the Magistrate errs in suggesting that diagnostic measures such as ear evaluations and MRIs suffice as treatment for progressively degenerative disorders. Diagnostic procedures are critical first steps but do not on their own constitute treatment; they merely inform the necessary medical interventions (Helling v. McKinney, 509 U.S. 25, 1993).

The evidence on file, including medical records and expert opinion (Doc. 101-2), clearly shows a disregard for the serious medical condition of Plaintiff, constituting deliberate indifference as defined by the Supreme Court and violating the Eighth Amendment's prohibition against cruel and unusual punishment.

Undisputed testimony in the case record is to the effect that in May 2000 Plaintiff Oryang was sent for evaluation by an off-site specialist-physician who told Plaintiff that Plaintiff's inner left ear was marked by scarring that was consistent with an ear infection that had gone untreated for too long and then diagnosed Plaintiff as:
suffering with a progressively degenerative disorder in the inner left ear,
suffering progressively worsening damage to the inner left ear,
suffering progressively worsening hearing loss as a result of the ear disorder,
mandating treatments to stop the inner ear damage,
mandating treatment to stop the hearing loss,
requiring hearing aids to account for the hearing difficulties, and
requiring follow-ups with a specialist to monitor the medical treatment of the disorder and monitor the progression of the disease.
(Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126 at p.1 to 2, 151-1 at p.2, 153 at p.15)

On the day of Plaintiff's physician diagnosis in May 2000, Plaintiff's ear ailments clearly met the standard that a "serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d at 1187. In this case however, following Plaintiff's May 2000 physician diagnosis and Plaintiff's consistent pleas for the treatment of his ailing left ear, Defendants Corizon, Waugh, Dr Perryman, Dr Bell, Parker, and Prevo still refused to provide Plaintiff with any medical treatment or ADA accommodations for Plaintiff's progressively degenerative condition, the symptoms Plaintiff was suffering as a result of the degenerating inner ear, and Plaintiff's hearing loss. (Docs. 25-1)The very next time that anything was done by the Defendants regarding Plaintiffs deteriorating inner left ear condition or the symptoms he was suffering as a result was 18 years later on January 10, 2018 when Defendant Dr Bell decided to

arrange for Plaintiff to be seen by another specialist. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 87-1, 101, 126 at p.1 to 2, 151-1 at p.2, 153 at p.15).
On April 9, 2018 Plaintiff was finally evaluated by the second specialist-physician to do so, Dr Olan Evans. Dr Evans diagnosed Plaintiff as having suffered permanent injury to his inner left ear and ability to hear due to the uninhibited progression of Plaintiff's progressively deteriorating inner left ear, diagnosed Plaintiff as legally and clinically deaf in the left ear, and identified the disorder suffered by Plaintiff as Conductive Hearing Loss. (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101 at p.3 to 4, 101-3, 101-4, 101-5, 126 at p.2, 151-1 at p.3 to 4,153 at p.16, 153-1 at p.2, 153-4 at p.1, 153-4 at p.2, 153-4 at p.3, 153-4 at p.4, 153-5 at p.3)

The medical treatment of conductive hearing loss extends significantly beyond initial evaluations and diagnoses, necessitating comprehensive intervention strategies to address the underlying causes effectively (Docs. 101-2, 101-4). As is well established, the adequacy of medical care for incarcerated individuals requires actions that surpass mere diagnostic efforts (Estelle v. Gamble, 429 U.S. 97, 1976). Specifically, conductive hearing loss, often resulting from issues such as fluid in the middle ear, ear infection, or malformations of ear structures, requires targeted treatments ranging from pharmaceutical interventions to surgical procedures aimed at inhibiting the disorder's progress and correcting the obstruction or dysfunction (Doc. 101-2 at p.1, 2, 3, 4). (Farmer v. Brennan, 511 U.S. 825, 1994). Diagnostic procedures like ear evaluations and MRIs are crucial for identifying the problem but do not constitute treatment; they merely inform the subsequent necessary medical actions to treat the condition effectively (Helling v. McKinney, 509 U.S. 25, 1993). Therefore, to meet the legal and medical standards of care, especially for vulnerable populations under state custody, the progression from diagnosis to actual treatment is essential, underscoring the obligation to provide healthcare that genuinely addresses the diagnosed conditions.

In McElligott v. Foley, 182 F.3d 1248 (11th Cir. 1999), the Eleventh Circuit held that "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness. In Estelle, the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical `torture or a lingering death'" or, "[i]n less serious cases, ... may result in pain and suffering which no one suggests would serve any penological purpose." Estelle, 429 U.S. at 103, 97 S.Ct. 285 (quoting In re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890))." (Id. at 1257).
In McElligott Supra the Eleventh Circuit reflected on the grave oversight in recognizing the severity of a Plaintiff's medical condition and the subsequent failure to provide essential treatment (Id.), and illuminated the critical distinction between acknowledging a medical condition through diagnosis and fulfilling the constitutional obligation to treat such conditions adequately.
Similarly in this case, despite undergoing evaluations in May 2000 that identified a serious health issue requiring medical treatment (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126 at p.1 to 2, 151-1 at p.2, 153 at p.15), the Defendants did not furnish the

requisite medical treatment to address the identified condition. (Id.) By the time the Defendants did decide to take any action in April 2018 it was discovered that Plaintiff Oryang's hearing loss had progressed too far to be salvaged, embodying a quintessential example of deliberate indifference as delineated by Estelle v. Gamble," 429 U.S. 97 (1976), and Farmer v. Brennan, 511 U.S. 825 (1994).

Plaintiff made these points clear in his Response In Opposition to the Defendants' Motions for Summary Judgement (Doc. 153 at p.14 to 19). However, the Magistrate Judge failed to acknowledge the essence of the Eighth Amendment's requirements as vividly illustrated by Helling v. McKinney, McElligott v. Foley, Farmer v. Brennan, and Estelle v. Gamble as shown above.

The Plaintiff's untreated condition, despite clear diagnostic evidence dating back to May 18, 2000 (Docs. 1, 5, 25, 25-1, 25-2, 25-3, 25-8, 25-9, 36, 51-1, 51-2, 51-3, 101, 126 at p.1 to 2, 151-1 at p.2, 153 at p.15), mirrors the negligence outlined in McElligott, Estelle, and Farmer supras, compelling this Court to recognize the Defendants' actions—or lack thereof—as not merely inadequate but constitutionally impermissible.

Given the significant material facts in dispute, notably the severity of the Plaintiff's medical condition and the Defendants' disregard for essential treatment post-diagnosis on two distinct occasions that were decades apart, this case presents quintessential questions of fact and law that are most appropriately resolved through a jury trial. (The Court must view any factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in the non-moving party's favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Adickes, 398 U.S. at 157; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510-13, 91 L.Ed.2d 202 (1986). "{I}f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." Matsushita Elec. Indus. Co., 475 U.S. at 586. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact," summary judgment is not justified. Bannum, Inc. v. City of Fort Lauderdale, 901 F.2d 989, 996 (11th Cir.1990).

The concept of "deliberate indifference" is well-established in Eighth Amendment jurisprudence, as illustrated in Estelle v. Gamble, 429 U.S. 97 (1976), which mandates that indifference to a prisoner's serious medical needs constitutes unnecessary and wanton infliction of pain. Plaintiff Oryang's condition was not only severe but also ignored, even after explicit medical recommendations for treatment were made by a physician in May 2000, aligning with the subjective and objective components of deliberate indifference as clarified in Farmer v. Brennan, 511 U.S. 825 (1994).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, ___, 122 S.Ct. at 2513. "If a constitutional right would have been violated under the plaintiff's version of the facts, `the next, sequential step is to ask whether the right was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir.2002) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This is not to say that an official action is protected by qualified immunity unless the very action in question has been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 640,107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)" McElligott, id at 1260. (internal quotation marks omitted) As Plaintiff has shown in this civil action, the "finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law." McElligott, 182 F3d at 1260. (quoting Hill, 40 F.3d at 1186).

Plaintiff therefore respectfully requests that the Court overrule the Magistrate Judge's Recommendation for summary judgment, honoring the constitutional protections guaranteed under the Eighth Amendment.

## C. OBJECTION TO FACTUAL FINDINGS ON DISPUTED EVIDENCE

Plaintiff objects to the factual findings by the Magistrate Judge that: "The undisputed evidence demonstrates that Oryang received various types of medical treatment for hearing loss in his left ear—including multiple examinations, a referral to a freeworld ENT, and an MRI" (Doc. 176 at p.13).
This finding by the Magistrate Judge is contradicted by the record.

In this case the Defendants have submitted well over 100 medical records documents related to the overall medical treatment provided to Plaintiff Oryang for Paget's disease, hypertension, and all the different ailments Plaintiff has suffered with since 2017. To that end, Plaintiff Oryang testified under oath that:
"...The main ground argued by all the Defendants as justification for summary judgement is that they have submitted a substantial amount of medical records in their defenses which reflect that since the onset of my ear ailments in 1999 I have received an extensive amount of medical treatment . . . This argument by the Defendants grossly misrepresents the facts in this case by falsely claiming that all the 100+ medical documents they have submitted are records of treatments and services that have been provided specifically with regards to my left ear affliction, left ear ailments, and hearing loss." (Doc. 153-1 at p.1 to 2)

Contrary to the Magistrate Judge's factual findings, the only evidence in the record related to any medical implementations or treatment for Plaintiff's left ear afflictions is:
    i. Plaintiff's verified submissions regarding the May, 2000 specialist-physician evaluation
    and diagnosis (Docs. 1, 5, 25-1, 25-2, 25-3, 25-5, 25-8, 101 at p.10, 126 at p.1, 151-1 at
    p.2)

ii. Plaintiff's submissions related to his formal medical grievances and ADA requests (Docs. 1, 5, 25-1, 25-2, 25-3, 25-6, 25-7, 25-8, 25-9, 25-10, 51-1, 51-2, 51-3, 101 at p.2 to 4, 126 at #s 5, 6, 7, 9, 10; 151-1 at p.2 to 4, 153-1 at p.4, 151-3 at p.1, 153-5 at p.4)
iii. Plaintiff's submissions of medical documents acquired through discovery from the Jackson Otolaryngology Clinic regarding Oryang's specialist-physician evaluation and diagnosis of April 9 2018. (Docs. 101-3, 101-4, 101-5, 153-4 at p.1 to 4)
iv. Defendants' Document #s 52, 53, 54, 85, 92, 104, 105, 152 medical record and testimonial submissions (Docs. 101-3, 101-4, 101-5, 153-4 at p.1 to 4), to which Plaintiff timely objected (Docs. 83, 107, 135, 145, 151) on the basis that:
"In total the Defendants have introduced into the case record over 100 documents that are a combination of medical appointment records, nurses notes, doctors notes, medication orders, medication administration records, standard annual physical records, lab results, tri-annual chronic care records for the treatment of my hypertension and Paget's disease of bone, and other treatment records related to the medical services provided to me in relation to the various other ailments I have suffered, without any connection or relevance whatsoever to the ailments or treatment regarding my left ear." (Doc. 153-1 at p.2)

Plaintiff has provided additional verified testimony that "the Defendants grossly misrepresent[...] the facts in this case by falsely claiming that all the 100+ medical documents they have submitted are records of treatments and services that have been provided specifically with regards to my left ear affliction, left ear ailments, and hearing loss. . . . Only 23 of the documents have any relevance whatsoever to my left ear:
- Three (3) are requests made by me for the treatment of my ailing left ear;
- Seven (7) are the Defendants' documentations in response to my requests for the treatment of my ailing ear and the formal ADA claims I filed with them;
- Three (3) are consultation and referral documents to schedule me for an audiology examination that eventually occurred on April 9, 2018;
- Two (2) are notations by a specialist concerning my April 9, 2018 audiology examination;
- Two (2) are routine notes to document my return to Staton Correctional Facility from the April 9, 2018 audiology examination;
- Two (2) are consultation referral documents to schedule me for an MRI that was performed on May 10, 2018;
- One (1) is the MRI report of my May 10, 2018 MRI;
- Three (3) are routine notes to document my return to Staton Correctional Facility from having the May 10, 2018 MRI."
(Doc. 153-1 at p.2)

This highlights a critical misrepresentation of medical records and facts, emphasizing the failure to provide adequate treatment for Plaintiff's progressively degenerative ear condition as testified to by Plaintiff on February 19, 2022:
"Since the onset of my ear affliction in 1999 I have been diligent in my efforts to get treatment and hearing aids for my ear affliction, but by the date of this Declaration I have received only 3 diagnostic implementations (May 18, 2000; April 9, 2018; May 10, 2018) with zero objective

treatments for my ear affliction. Between 1999 and the present date I have not been given any medication, surgery, ear-wash, ear debridement, ear cleaning, or any other implementation intended to inhibit or alleviate the progress of my hearing disease." (Doc. 126 at p.3)

Given the critical discrepancies highlighted between the medical records presented in this case and the actual medical treatment provided for the Plaintiff's degenerative ear condition, it is evident that the Magistrate's recommendation fails to account for these substantial disputes of material facts. The misinterpretation and underestimation of the Plaintiff's medical needs, as delineated in this objection, underscore a genuine dispute of material fact that directly contradicts the standards set forth in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986). These precedents·affirm the inappropriateness of granting summary judgment amidst such disputes, highlighting the necessity for these material facts to be adjudicated by jury at trial. Therefore, this objection respectfully urges the Court to recognize these pivotal discrepancies and overrule the Recommendation for summary judgment (Doc. 176), allowing for a thorough examination of the facts under the proper legal standards during a jury trial.

## D. OBJECTION TO FINDINGS ON POLICY/CUSTOM

Plaintiff objects to the Magistrate Judge's finding that "Although Oryang has asserted that it was an official custom or policy to deny treatment for one-sided hearing loss, he has failed to produce any evidence showing that either Wexford or Corizon had such an official custom or policy" (Doc. 176 at p.10); "Oryang's claims for monetary damages against the correctional defendants—Lt. Parker, Joseph H. Headley, John Q. Hamm, Christopher Gordy, and Deidre Prevo—in their official capacities likewise fail" (id at p.11); "the correctional defendants are entitled to sovereign immunity as to all claims seeking monetary damages against them in their official capacities" (id at p.11); "Based upon a careful review of the record, it is clear that Warden Headley, Warden Gordy, and former Commissioner Dunn neither participated in nor had direct involvement with the alleged unconstitutional conduct" (id at p.16), and; "Oryang has not sufficiently demonstrated that any of the individual defendants acted in violation of his constitutional rights. Accordingly, summary judgment is due to be granted in favor of Warden Headley, Warden Gordy, and former Commissioner Dunn on all claims asserting respondeat superior/vicarious liability" (id at p.17).

Plaintiff objects to these findings on the basis that substantial evidence  has indeed been presented, and is in the case record, that demonstrates a policy or practice by the Defendants of not providing  treatment for ADOC prisoners with ailing ears if only one ear is afflicted. Plaintiff has provided evidence that beginning in the year 2000 and lasting to December, 2019, ADOC and ADOC healthcare providers consistently denied him medical treatment for his ailing left ear, hearing aid placement for his hearing impairment, and required ADA accommodation services for his physician-diagnosed hearing disability, on the basis of the ADOC and ADOC health service provider policy to treat ADOC prisoners with ailing ears only if both ears are afflicted. (Docs. 1, 5, 25, 25-1 - 3, 25-6, 25-7, 25-8, 25-9, 25-10, 36, 51-1, 51-2, 51-3, 101, 126, 151-1, 153-1, 153-3, 153-5 at p.4).

This policy, as Plaintiff has argued, is both a direct violation of established medical standards and indicative of a systemic failure to address serious medical needs, warranting scrutiny under the Monell standard, as applied in City of Canton v. Harris, 489 U.S. 378 (1989). (Doc. 153)

The complaint makes specific claims against each Defendant (Doc. 25-1), and all the Defendants with the exception of Corizon and Wexford admitted that they denied treatment to Plaintiff on the basis of the said policy. Because "[a]n allegation … is admitted if a responsive pleading is required and the allegation is not denied," all of the correctional defendants and Defendants Dr Borowicz, Waugh, Dr Bell and Dr Perryman have admitted Plaintiff's allegations that they applied the unconstitutional ADOC and ADOC health service provider policy in denying him treatment for his ailing left ear. Rule 8 (b)(6), Fed. R. Civ. P. As for Defendants Corizon and Wexford who denied the existence of the policy, it is necessary for Plaintiff to have shown that the custom or policy is indeed such "a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it," Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir.1991).
As illustrated in Plaintiff's Response in Opposition to the Defendants' Motions for Summary Judgement (Docs. 151, 151-1, 153, 153-1), Plaintiff submitted substantial evidence in the case including medical records (Doc. 153-5 at p.4) and witness testimony (Doc. 153-3) which clearly demonstrate the long-standing existence of the ADOC and ADOC health service provider policy or custom used by all of the Defendants to deny Plaintiff treatment for his progressively deteriorating inner left ear because he was afflicted in only his right ear. Evidence of the policy is:

I.    Plaintiff's medical records wherein on December 4 or 5, 2019 Defendant Dr Borowicz - on denying Plaintiff Oryang treatment for Plaintiff's progressively degenerative left ear disorder and hearing aids - documented that:
"[Treatment] denied
Does not meet requirements" because Plaintiff's "[Right] ear ok only [Left] 🔻." (Doc. 153-5 at p.4) Before receipt of this document through discovery, Plaintiff testified under oath that:
"On December 4, 2019, Dr Borowicz summoned and informed Plaintiff that the reports in Plaintiff's prison medical file had been updated and that they now indicate that Plaintiff lost all hearing in his left ear and is now legally and clinically deaf. When asked by ADOC healthcare provider - Anthony Ombudsman - about 'fitting' Plaintiff with a hearing aid and providing other accommodations, Dr Borowicz said he (Dr Borowicz) already submitted requests for it, but the requests had been denied by Dr Borowicz's 'superiors' on the basis of a policy to provide treatment and services to ADOC prisoners with ailing ears only if both ears are afflicted. Dr Borowicz apologized to Plaintiff for being unable to give him any treatment and accommodation services for Plaintiff's ailing left-ear and impairment." (Doc. 25-1 at p.6 to 7, id. at #11)

II.   Verified testimony of Plaintiff Oryang that he was denied treatment for his deteriorating left ear on the basis of the policy that dictates no treatment for Plaintiff's left ear ailments because Oryang was not afflicted in both ears and because Oryang's right ear was fully

functional. (Docs. 1; 5; 25; 25-1 id. at #s 1, 2, 3, 4, 5, 6, 10, 11, 14, 15; 51-1; 51-2; 51-3; 101 at p.3 #3, 126 at #s 5(iii), 6, 7, 9(iii); 151-1 at #s 5, 6, 7)

III.   Verified testimony of former ADOC prisoner Motis Wright who was incarcerated together with Plaintiff Oryang that:

"When I first met Benjamin Oryang in 1993, he did not have any issues with his hearing. Beginning around the close of the 1990's, I recall that Mr, Oryang started complaining about an ear infection in his left ear. I remember that the prison nurses and doctors refused to give Benjamin Oryang any treatment for his ear because the prison had a policy to treat ear problems of only those prisoners who were having medical problems that affected both ears. I recall that from 1999 until his transfer from the William E. Donaldson Correctional Facility in 2009, Mr.Oryang persistently tried to get treatment for his ear without any success.

In 2019 I got transferred to the Staton Correctional Facility. I was assigned to the same dormitory as Mr. Oryang, on bed #  F3-33A. Mr Oryang was assigned to bed # F2-34A. On seeing and interacting with Benjamin Oryang in 2019, I found that he had become completely deaf in his left ear. I found that Mr Oryang was still continuing in his persistent attempts to get treatment for his ailing ear.

In 2019 I was alarmed to discover that the same prison policy from the 1990's regarding treatment of only prisoners who are afflicted in both ears was still being used to deny Mr Oryang any medical treatment for his ailing left ear. I was alarmed to discover that the healthcare and prison administrators had completely refused to provide Mr Oryang any medical treatment, hearing aids, or Americans With Disabilities Act accommodations and services for his hearing disability.

From 2019 until my release from prison on May 13, 2021, I recall multiple occasions when - as a result of his hearing deficit - Benjamin Oryang missed meals, medical appointments and other routine activities that prisoners were notified about through announcements in the dormitory. I recall multiple occasions when ADOC officials were upset with Mr Oryang after he had failed to hear and respond timely to their orders, announcements, fire-drills or other vocalized demands that required immediate responses. I took it upon myself to start trying to assist Mr Oryang whenever possible by checking to make sure he had heard or was aware of critical announcements, fire-drills, and other similar things that required his response." (Doc. 153-3 at p.1 to 2)

IV.   Admissions to Plaintiff's claims by Defendants Dr Borowicz, Waugh, Dr Bell, Dr Perryman, Headley, Gordy, and Dunn that they denied Plaintiff Oryang treatment for his ailing left ear on the basis of the policy to treat prisoners with ailing ears only if both ears are afflicted. (Docs. 52-1, 53-1, 87-1, 92-1, 104-2, 104-3, 104-5). "An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied." Rule 8(b)(6), Fed. R. Civ. P. (Doc. 153 at p.19 to 21)

The Defendants exhibited deliberate indifference to Plaintiff's serious medical needs, violating his Eighth Amendment rights. Specifically, Defendants denied Plaintiff essential treatment and accommodations for his deteriorating inner ear condition under a discriminatory policy that only acknowledges ailments affecting both ears. Defendants Warden Headley, Warden Gordy, and former Commissioner Dunn admitted under Rule 8(b)(6) to creating or enforcing the policy, and

such admissions in conjunction with their unconstitutional policy negate any defense of sovereign immunity against Plaintiff's claims for monetary damages.

This evidence directly contradicts the Recommendation's findings (Doc. 176), and underscores a genuine issue of material fact precluding summary judgment.

## E. OBJECTION TO MISSTATEMENTS OF PLAINTIFF'S CORE ASSERTIONS

Plaintiff respectfully objects to the incomplete and misleading factual findings of the Magistrate Judge to the effects that:

1. "The allegations now pending are (1) that Oryang was treated with deliberate indifference toward his medical needs in violation of the United States Constitution        and (2) that Oryang was denied accommodations due under the Americans with Disabilities Act" and." . . . "Each of the claims stems from undisputed hearing loss in Plaintiff's left ear" (Doc. 176 at P. 1), and "Oryang claims that the defendants have acted with deliberate indifference by failing to properly treat the hearing loss in his left ear. (Doc. 25-1 at p. 1)" (Doc. 176 at p.4)

These findings by the Magistrate Judge are not what the case record reflects, are inaccurate, and are an understatement of the claims raised by Plaintiff against each of the defendants.

First, Plaintiff raised and has not abandoned his claims that: (1) Defendants' deliberate indifference to Plaintiff's serious medical needs violated Plaintiff's rights and constituted cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution. (2) Defendants' deliberate indifference to Plaintiff's serious medical needs violated plaintiff's rights, and constituted cruel and unusual punishment under the Fifth and Eighth Amendments of the United States Constitution. (3) Defendants' use of discriminatory policies to deny plaintiff his serious medical needs violated plaintiff's rights and Equal Protection, under the Eighth and Fourteenth Amendments of the United States Constitution. (4) Defendants' Enforcement of discriminatory policies that denied plaintiff's serious medical needs violated plaintiff's rights, Due Process, and Equal Protection under the Fifth, Eighth and Fourteenth Amendments of the United States Constitution. (5) Defendants' deliberate indifference to a substantial risk of serious harm to plaintiff was a continuing violation of plaintiff's rights and Due Process, and constituted cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (6) Defendants' reckless and callous indifference to Plaintiff's serious medical needs was a continuing violation of Plaintiff's rights and Due Process, and constituted cruel and unusual punishment under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution (Docs. 25, 51, 51-1, 51-2, 51-3, 153 id at p.2 and 13). Plaintiff has not abandoned any of these claims.

Second, Plaintiff's verified DOCUMENT 25-1 pleading details his claims against each defendant separately in 8-pages, and is tilted "DEFENDANTS WHO PERSONALLY SUBJECTED

PLAINTIFF TO UNCONSTITUTIONAL ACTIONS" (Doc. 25-1). Page 1 of the document regards only Plaintiff's claims against Defendant ADOC and contains only the first two lines of Plaintiff's claims against Defendant Jefferson Dunn (id). As such, the Magistrate Judge made an error by citing "Doc. 25-1 at p. 1" as the source of the statement that "Oryang claims that the defendants have acted with deliberate indifference by failing to properly treat the hearing loss in his left ear" (Doc. 173 at p. 4).

Third, the findings disregard all the rest of Plaintiff's claims and verified evidence submitted in the case to the effect that Plaintiff Oryang has suffered and/or continues to suffer: (i) two decades of preventable painful symptoms, dizzy spells, vertigo, ringing ears and other symptoms due to a deteriorating inner left ear and hearing disability; (ii) two decades of preventable gradual physical deterioration of Oryang's inner left ear culminating in irreversible, permanent damage to Oryang's inner left ear; (iii) preventable clinical and legal deafness; (iv) preventable loss of a bodily function; (v) constant feelings of endangerment due to an inability to hear verbal or sound warnings; (vi) repeated accusations of ignoring or disobeying authority orders that were not heard, and accusations of harassment stemming from persistent attempts to get treatment for Plaintiff's ailing ear and ADA certification due to Plaintiff's diagnosed hearing disability;
(vii) missed opportunities and untold mental/psychological insecurities; (vii) a direct dampening effect on any future ability to execute safely and effectively in dual careers of practical nursing and as a master technician of high pressure appliances in the fields of heating, ventilation, air-conditioning and refrigeration, both of which require keen hearing. (Docs. 1, 5, 25, 25-1 - 10, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 126, 151-1, 153 at p.10, 153-1, 153-2, 153-3, 153-4, 153-5)

The findings by the Court are also understatements that inaccurately negate the full grounds raised by Plaintiff, whose actual testimony is that:
"Over the past 31 years I have been afflicted with various different ailments at different times, including but not limited to dermatosis, opthalmic ailments, arthritic ailments, and allergic reactions to prescribed medications. I have also been afflicted with chronic hypertension and Paget's disease of bone. I requested and was provided medical treatment by the ADOC'S healthcare providers for all these above mentioned ailments, and they are not the subject of my Complaint or Amended Complaint in this § 1983 civil action.
The key claim of my Complaint and Amended Complaint is that the Defendants failed in their duties to provide me with medical treatment specifically for my ailing left ear" (Doc. 153-1 at p. 1 to 3)

This objection to the Magistrate Judge's findings is crucial for accurately representing the breadth and depth of the Plaintiff's grievances, particularly regarding the serious medical neglect of his ailing left ear and the failure to provide necessary ADA accommodations. The Plaintiff's detailed and verified testimony outlines a comprehensive account of his suffering and the systemic indifference he faced, which starkly contrasts with the Magistrate's narrowed interpretation of the claims. This discrepancy not only undermines the Plaintiff's extensive efforts to seek justice but also highlights a misunderstanding of the summary judgment standard, which

mandates viewing all evidence in the light most favorable to the nonmoving party. By integrating arguments from Celotex Corp. v. Catrett and Anderson v. Liberty Lobby, Inc., this Objection underscores the necessity of a trial to fully explore the disputed facts and ensure that Plaintiff's rights are upheld, reflecting a more accurate and just consideration of the case's complexities.

## F. OBJECTION TO MISREPRESENTATION OF MEDICAL RECORDS AND FACTS

Plaintiff objects to the finding that: "The most that Oryang potentially has demonstrated is his desire for a different mode of treatment, which does not state a constitutional claim.  See Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985)" (Doc. 176 at p.15).

The Magistrate's assessment that Plaintiff Oryang merely seeks an alternative mode of treatment fails to recognize the constitutional implications of inadequate medical care for serious health conditions of a progressively deteriorating kind like the conductive hearing loss suffered by Plaintiff. This interpretation starkly contrasts with the precedent set in Estelle v. Gamble, 429 U.S. 97 (1976), where the Supreme Court established that deliberate indifference to serious medical needs of prisoners constitutes a violation of the Eighth Amendment.
Plaintiff Oryang has never requested any specific medical interventions, but has asserted that he "needs" treatment to inhibit the progress of his progressively deteriorating inner left ear - a necessary measure to address a serious, deteriorating condition - echoing the concerns raised in Hamm v. DeKalb County, 774 F.2d 1567, yet diverging in its application to this case.
Plaintiff's demand for necessary medical treatment and ADA accommodations also stands distinctly from any mere "desire for a different mode of treatment" in that his claims are rooted in the failure to provide any treatment for his diagnosed condition of Conductive Hearing Loss after the the physician mandates of May 2000 and April 2018, establishing a legitimate claim for relief under Wilson v. Seiter, 501 U.S. 294 (1991) which differentiates between medical negligence and deliberate indifference.

Plaintiff Oryang's situation underscores a dire need for constitutionally adequate care, demanding overruling of the Magistrate's recommendation for summary judgment to ensure full adherence to the Eighth Amendment's protections against cruel and unusual punishment.


## G. OBJECTION TO MAGISTRATE'S FINDINGS ON DISPUTED MATERIAL FACTS

Plaintiff objects to the Magistrate Judge's findings that "Dr. Borowicz incorrectly identified Dr. Chandler, rather than Dr. Evans, as the free-world ENT who treated Oryang for his hearing loss. (See Doc. 52-1 at p. 3). The error appears to have arisen from the fact that the original referral to an outside provider referenced Dr. Chandler, even though Oryang ultimately was seen by Dr. Evans. (Compare Doc. 153-4 and Doc. 153-5)," (Doc. 276  p.8 at footnote 3) and "Ms. Waugh testified that she treated Oryang for hypertension and Paget's disease at least  eight times in the chronic care clinic between June 22, 2017 and October 28, 2020. (Doc. 53-1 at p. 2).  She further testified that she did not treat Oryang for hearing loss issues and is not aware of any sick call requests by Oryang for hearing loss issues" (id at p.9 footnote 6).

These finding by the Court interfere with what should be the province of a jury on genuinely disputed material facts.

First, verified evidence in the case and the sworn testimonies of Defendants Dr Borowicz (Doc. 52-1), Ms Waugh (Doc. 53-1), Corizon (Doc. 49), and Wexford (Doc. 50, 50-1) are that on April 9, 2018 Plaintiff was diagnosed by Dr Chandler as suffering with unilateral hearing loss (Id), and Defendants Borowicz and Wexford denied Plaintiff's requests for the treatment of his ailing ear based on alleged recommendations made by Dr Chandler that nothing was wrong with Plaintiff's ability to hear (Docs. 25-1 at p. 6 #11, 25-7, 153-5 at p. 4). Meanwhile, Defendants Dr Perryman (Doc. 92-1) and Dr Bell's (Doc. 87-1) testimonies contradict the Dr Chandler narrative to the effect that Plaintiff was diagnosed as having suffered complete hearing loss in the left ear due to conductive hearing loss by a diagnosing physician named Dr Evans (Docs. 87-2, 153-5 at p. 3).

Plaintiff's verified claims on the record are that after the April 2018 evaluation and diagnosis of his left ear afflictions, the defendants misled him - and then subsequently the Court - to believe that the diagnosis was merely for unilateral hearing loss, and that the diagnosing physician was someone named Dr Chandler (Docs. 25-1 at p. 6 #11 and p. 7 #13, 25-7, 101 at p. 16 to 18, 153-1 at p. 2 to 3). In a verified submission filed in the case on August 3, 2021, Plaintiff objected to and served notice to the Court regarding the "fabricated and misleading evidence that was submitted by the healthcare defendants" regarding Plaintiff's diagnosis and diagnosing physician (Doc. 101 at p.8 to 9). Plaintiff explained to the Court that:
"(1) In response to Court Order document numbers 29, 33, 38, defendants submitted the following evidence that is being used by the Court in its preponderance of factual matters and legal conclusions therefrom in this civil action: (i) Documents, representations and sworn statements to the effect a "Dr Chandler" conducted the physical evaluation of Plaintiff's left ear on April 9, 2021, that Dr Chandler diagnosed Plaintiff as suffering with "Unilateral hearing loss," and that Dr Chandler advised Defendants that "normal hearing aids" would not be helpful for Plaintiff's condition (Docs. 52; 52-1 to 3; 53; 53-1 to 3; 54; 54-1 to 3; Special Reports of Perryman and Bell). (ii) Representations and sworn statements to the effect that Defendant Dr Borowicz took action in Plaintiff's behalf by sending Plaintiff "to see outside specialist" Dr Chandler, and also to have an MRI performed, on April 9 and May 10, 2018, respectively (Docs. 54, at page 5, 8). . . (3) On April 9, 2018, Defendants sent Plaintiff to an outside clinic to see a specialist. The specialist/physician who evaluated Plaintiff in person and diagnosed Plaintiff is named Dr Olan Evans, and he diagnosed Plaintiff as suffering with "Conductive Hearing Loss" of the Sensorineural Hearing Loss category. [Docs. 101-3, 101-4, 101-5]  This constitutes compulsory information, for several different reasons: (I) Conductive Hearing Loss is a very serious disease that is mandated certain specific treatments by the American Medical Association, [Doc. 101-2] but which Defendants continue to completely disregard as they concern Plaintiff (Docs. 25, 51-1 to 51-3). (ii) Perjury and fabrication/falsification of Plaintiff's medical records are criminal offenses that are punishable by law in this Court or in other venues. (iii) All Court rulings that are made based on fabricated evidence or perjured statements, - past, present, or in the future, - are bound to be overturned for error. (iv) The veracity of all other factual contentions and documents submitted by the defendants, and all

legal conclusions arrived at by the Court based on said evidence, have been called into question. (v) Defendants' failure to submit [attached] Exhibits [Docs. 101-3, 101-4, 101-5] as ordered to do so by the Court (Docs. 29, 33, 38) is further evidence of their intentions to mislead the Court with the fabricated submissions. (4) [. . .] Plaintiff draws the Court's attention to the fact that all the medical records submitted by defendants in this case indicate that Defendant Dr Bell - not Defendant Dr Borowicz - took action in Plaintiff's behalf by sending Plaintiff to see the outside specialist and receive an MRI for Plaintiff's degenerative disorder. (Docs. 53-2, 53-3, Special Reports of Perryman and Bell) Dr Borowicz has thus done absolutely nothing regarding Plaintiff's degenerative ear condition, but the said perjured representations and sworn statements have misled the Court to believe otherwise. (Doc. 98)." (Doc. 101 at p. 16 to 18).

In the Recommendation, the Magistrate Judge decided of their own accord to construe Dr Borowicz's testimony regarding Dr Chandler as a mere "error" (Doc. 173 at p.8 id at footnote 3).

Under Rule 60(b) of the Fed. R. Civil Procedure, a Court may indeed relieve a party from a final judgment, order, or proceeding for reasons including mistake, inadvertence, surprise, or excusable neglect. However, the testimony of Defendant Dr Borowicz was never corrected despite Plaintiff's notifications to the Court over two years ago, highlighting issues of accuracy and truthfulness in Defendant Dr Borowicz's sworn statements (Doc. 101). Even after Plaintiff's notice regarding the "fabricated" evidence (Doc. 101), Dr Borowicz still failed for over two calendar years - from August 2021 to February 2024 - to utilize the Rule 60(b) or 15(a) provisions for the amendment of pleadings, which would have enabled him to change or make corrections to any inaccuracies he may have made in his sworn testimony. This failure by Dr. Borowicz to correct his testimony after being duly notified suggests more than a mere oversight; rather than implying a disregard for the judicial process, Plaintiff reasserts his claim that it is out of a disregard for the integrity of court proceedings (Doc. 101). Such disregard conflicts with the principles outlined in the landmark case of United States v. Dunnigan, 507 U.S. 87, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993), where the distinction between error due to "confusion, mistake, or faulty memory" and willful provision of false testimony is clearly made. Under Dunnigan, the US Supreme Court delineated the contours of perjury, defining it as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." This definition underscores the importance of intent and materiality in evaluating the veracity and impact of Defendant Dr Borowicz's testimony provided under oath.

Second, Plaintiff's verified claim is that: "Early in 2017 and several times since then, Plaintiff requested treatment and services for his ailing left-ear from Ms Waugh. Ms Waugh denied Plaintiff's requests, and informed him that nothing will be done about Plaintiff's left-ear ailments by her and other healthcare staff because, according to her, Plaintiff could hear her well enough when she spoke to him; Ms Waugh said she would not refer Plaintiff to anyone else concerning his left-ear ailments, and she told Plaintiff to stop 'bothering' healthcare staff about his left ear." (Doc. 25-1 at p.3 #5)

It is clearly established that at summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In its review of the evidence, a court must credit the evidence of the nonmovant and draw all justifiable inferences in the non-movant's favor. Stewart v. Booker T. Washington Ins., 232 F.3d 844, 848 (11th Cir.2000). Opting to consider this material evidence in a view that is favorable to the movants goes against these principles.

Given these circumstances, it is incumbent upon the court to accept the sworn testimony of Dr. Borowicz (Doc. 52-1) as it stands, and to give due weight to Plaintiff's testimony. The materiality of the testimony to the Plaintiff's case cannot be overstated—it pertains directly to the diagnosis and treatment of Plaintiff's serious medical condition, which is the underlying cause of this civil action (Docs. 1, 25, 25-1, 36).

Further, Defendants Dr Borowicz, Waugh, Corizon and Wexford's failures to correct the record regarding Dr Chandler, despite ample opportunity and clear notice (Doc. 101), undermines the credibility of all the Defendants' testimonies. (Doc. 101) For the Magistrate Judge to amend the sworn testimony of Defendant Dr Borowicz to reflect anything other than what the Defendant testified to under oath (Doc. 173 at p. 8 footnote 3), or to give greater weight to Ms Waugh's testimony than to Plaintiff's, prejudices the Plaintiff's ability to seek redress and may constitute an abuse of discretion.
 Wherefore, in the interest of justice and the integrity of the judicial process, it is respectfully submitted that the Court consider the implications of Dr. Borowicz's sworn testimony (Doc. 52-1) in light of the principles established in Dunnigan and the procedural mechanisms available under Rules 15(a) and 60(b) of the Federal Rules of Civil Procedure. This consideration is crucial for ensuring that material facts are accurately presented and adjudicated upon, which is fundamental to the fair resolution of this case. The discrepancies between what Plaintiff has testified to and what both Dr Borowicz and Ms Waugh have testified to is a genuine dispute of material facts, highlighting a misapplication by the Magistrate Judge of the summary judgment standard which mandates viewing all evidence in the light most favorable to the nonmoving party. By integrating arguments from Celotex Corp. v. Catrett and Anderson v. Liberty Lobby, Inc., this Objection underscores the necessity of a trial to fully explore the disputed facts and ensure that Plaintiff's rights are upheld, reflecting a more accurate and just consideration of the case's complexities.

## H. OBJECTION TO FINDINGS ON ADA CLAIMS

Plaintiff objects to the findings that "Beyond the Inmate Request For Accommodations Form dated October 11, 2019, the record contains no other accommodations forms pertaining to Oryang's hearing loss. (Docs. 25-6 and 25-7: 'Requesting a hearing-aid and all other prescriptions as ordered by the audiologist on April 9, 2018'). The record does include, however, multiple accommodations forms for other ailments about which Oryang complained. . ." (Doc. 176 at p. 8 footnote 4), and "Oryang's claims for monetary damages against the various medical defendants—          Wexford Health Sources, Inc., Tehum Care Services, Inc. d/b/a Corizon

Health Inc/Corizon LLC,  Dr. Michael Borowicz, Ms. Waugh, Dr. Bell, and Dr. Perryman—fail under the principles espoused in Monell v. Dep't of Social Servs. of New York, 436 U.S. 658 (1978)" (id at p. 9).

These findings are not supported by the case record. Plaintiff's testimony that the Magistrate Judge overlooks is: "The correctional defendants have argued as grounds for summary judgement that their denials of my formal ADA claims and requests for accommodations were based on the decision that was made by the medical care provider - a doctor identified by Defendant Prevo as Dr Owens. [Doc. 25-7] This is a false assertion because since 2013 my ears have only been evaluated by one doctor - Dr Olan Evans - on April 9, 2018. My ears have never been evaluated by any medical provider named Dr Owens. Furthermore, neither the medical defendants nor the correctional defendants have submitted any medical records to substantiate their claims regarding a decision made by a Dr Owens, because no such documents exist.

The Correctional Defendants further contend that I never mentioned my lack of equal access to anything in the formal ADA claim forms I filed, and that my ADA claims should thus be dismissed. This contention by the Defendants is false.

First, on December 11, 2017, during a meeting scheduled to address my ADA issues between myself, Defendant Prevo, Defendant Parker, and a lady who I am not familiar with, I clearly explained all of my grievances related to the lack of treatment for my ailing ear, the lack of ADA accommodation services for my hearing impairment, and my need for assistance with simple things like being notified when announcements are made for meals, pillcall, fire-drills and other common activities of daily living in the prison environment. I even requested that the ADOC officials at Draper be given notice that I have a hearing disability, just like is done in the cases of other ADOC prisoners who suffer with hearing impairments, so that there is no breakdown in communication or misunderstanding due to my inability to hear announcements and other critical sounds that may require my response. Defendant Prevo wrote down notes during the meeting, and asked me a few questions to clarify things I had said, but departed without any comments.

Second, the Defendants have not submitted any of the formal ADA forms that I filed regarding my hearing impairment in May and June, 2017 while incarcerated at Draper Correctional Facility, and neither have the Defendants submitted any of the ADA claim forms I filed regarding my hearing impairment in February, 2018 immediately before my transfer from Draper to Staton Correctional Facility. Those said formal ADA forms are being withheld by the Defendants because they contradict the Defendants' false assertion that I did not mention anything about equal access in my formal ADA claims and requests" (Doc. 153-1 at p.3 to 4).

In addressing the ADA claims and the Magistrate Judge's findings, it's critical to underscore the discrepancies and procedural oversights that mar the consideration of these claims. The Magistrate's reliance on an incomplete record to dismiss the ADA claims overlooks the Plaintiff's substantive efforts to seek accommodations for his hearing impairment, a misstep that fundamentally misconstrues the summary judgment standard. This standard, as articulated in Anderson v. Liberty Lobby, Inc., mandates that courts must view all evidence and draw all reasonable inferences in favor of the nonmoving party, a principle seemingly neglected in this

instance. Furthermore, the Defendants' failure to produce pertinent ADA accommodation forms, coupled with the Plaintiff's detailed testimony about efforts to secure necessary accommodations, presents a genuine dispute of material fact that should preclude the grant of summary judgment. The record, as described by the Plaintiff, suggests not only a failure on the part of the Defendants to acknowledge and address his hearing impairment adequately but also raises significant questions regarding the Defendants' compliance with the ADA's requirements for reasonable accommodations. This situation, viewed through the lens of the nonmoving party's version of events, underscores the need for a thorough judicial examination beyond the constraints of summary judgment.

## V. CLAIMS NOT ADDRESSED BY THE MAGISTRATE JUDGE

The Recommendation of the Magistrate Judge (Doc. 176) failed to address the following claims, that Plaintiff Oryang reasserts:

1. Armed with Plaintiff's diagnosis and physician mandates from May 2000, the Defendants still failed to provide treatment for the progressively degenerative disorder afflicting Plaintiff's inner left ear and the symptoms that Plaintiff suffered as a result of the generating condition. As a result, Plaintiff has suffered:
(i) two decades of preventable painful symptoms, dizzy spells, vertigo, ringing ears and other symptoms due to a detoriorating inner left ear and hearing disability
(ii) two decades of preventable gradual physical detorioration of Oryang's inner left ear culminating in irreversible, permanent damage to Oryang's inner left ear
(iii) preventable clinical and legal deafness
(iv) preventable loss of a bodily function
(v) constant feelings of endangerment due to an inability to hear verbal or sound warnings
(vi) repeated accusations of ignoring or disobeying authority orders that were not heard, and accusations of harassment stemming from persistent attempts to get treatment for Plaintiff's ailing ear and ADA certification due to Plaintiff's diagnosed hearing disability
(vii) missed opportunities and untold mental/psychological insecurities;
(vii) a direct dampening effect on any future ability to execute safely and effectively in dual careers of practical nursing and as a master technician of high pressure appliances in the fields of heating, ventilation, air-conditioning and refrigeration, both of which require keen hearing.
(Docs. 1, 5, 25, 25-1 - 10, 36, 51-1, 51-2, 51-3, 101, 101-3, 101-4, 101-5, 12l, 151-1, 153-1, 153-2, 153-3, 153-4, 154-5 at p.3)

The Magistrate's Judge's Recommendation also failed to address adequately:

The serious nature of  Plaintiff's medical condition and the necessity for specialized treatment.
The distinction between mere diagnostic procedures and actual medical treatment for a degenerative ear condition.
The constitutional implications of failing to provide adequate medical treatment under the Eighth Amendment.

Plaintiff's ADA claims and the specific accommodations requested for his hearing impairment. Disputed material facts that suggest a genuine issue for trial, particularly regarding the adequacy of medical care and ADA accommodations provided.
Plaintiff's assertions that contradict the Defendants' claims about the medical treatment and accommodations offered.

Plaintiff's STIPULATIONS/INCORPORATIONS, (Doc. 153 at p.12 to 13) that Plaintiff reasserts. Under 28 U.S.C. § 1733(b) and Rule 15(c) of the Federal Rules of Civil Procedure, and in support of Plaintiff's Response in Opposition to the Defendants' motions for summary judgement, Plaintiff alleges, realleges and incorporates the following material and relevant submissions made in this civil action:
All exhibits and sworn Affidavits as raised in the original Complaint. (Docs. 1, 5)
All grounds for relief, exhibits, evidence, and sworn Affidavits as raised in the Amended Complaint and Motion for Preliminary and Permanent Injunction. (Docs. 25, 36, 101, 101-2 - 5, 113) (51 at page 12, 13; 51-1, 51-2, 51-3)
All grounds for relief, sworn Affidavits, and Sworn Declarations as realleged in Document #s25, 25-1 - 11, 36, 51 id at pages 2, 3, 12, 13, 14; 51-1, 51-2, 51-3.
All verified factual evidence, sworn Affidavits and sworn Declarations as submitted inDocument #s 1, 5, 25, 101 at pages 8-9, 10-15, 16-20; 101-1, 101-2, 101-3, 101-4, 101-5; 126; 151-1.
All grounds for relief, (Docs, 25, 36) claims in support of grounds for relief, (Docs. 1, 5, 25,25-1 - 11, 36, 51, 51-1 - 3, 101, 101-1 - 5, 126, 151-1) pleadings, (Docs. 51, 78, 83, 100, 101, 106, 107, 113, 114, 115, 116, 119, 125, 135, 145, 151) and Demand For Trial By Jury, (Doc. 71)

## VI. CONCLUSION

The Recommendation of the Magistrate Judge mischaracterizes the nature and severity of Plaintiff's medical condition, ignoring documented evidence of Plaintiff's deteriorating inner left ear, the Defendants' failure to provide adequate treatment, and the permanent injury that Plaintiff has suffered as a result of the Defendants' failures. As detailed in Plaintiff's Response in Opposition (Docs. 151, 151-1, 153), Plaintiff submitted substantial evidence, including medical records and expert opinion (Doc. 101-2), which clearly This contradicts the Defendants' allegations and the Recommendation's findings, underscoring a genuine dispute of material fact precluding summary judgment.

Plaintiff's objection meticulously addresses and highlights critical misinterpretations and oversights made by the Recommendation of the Magistrate Judge regarding  Plaintiff's serious medical condition and ADA claims. Considering the relevant facts of the case, case law and constitutional principles, this objection underscores the necessity of a thorough judicial examination beyond summary judgment. Plaintiff's detailed testimony and the substantial disputes of material facts presented necessitate a trial to ensure the Eighth Amendment's protections are fully realized.
Plaintiff Oryang respectfully requests the Court to overrule the Magistrate Judge's Recommendations, deny the Defendants' motions for summary judgment, and set the case for

trial to allow for a comprehensive evaluation of the facts and application of the law during trial by jury.

Respectfully submitted on this the 29th day of February, 2024

BENJAMIN BEDOGWAR ORYANG
AIS# 168079.    F2-34A
STATON CORRECTIONAL FACILITY
2690 MARION SPILLWAY ROAD ELMORE, ALABAMA 36025
(Plaintiff, Pro Se)

---------.   ---------------.     ------------------.   ------------

CERTIFICATE OF SERVICE
I certify that I have served a copy of the foregoing upon General Counsel for the ADOC and Counsel for the Medical Defendants on this the 29th day of February, 2024 by placing the same in the U.S. Mail with First Class postage prepaid and properly addressed to:

J. MATT BLEDSOE
OFFICE OF THE ATTORNEY GENERAL,
STATE OF ALABAMA
501 WASHINGTON AVENUE
MONTGOMERY, ALABAMA 36130-0152
AND,
PHILIP G. PIGGOTT WEBSTER HENRY, P.C.
TWO PERIMETER PARK SOUTH
SUITE 445 EAST
BIRMINGHAM, ALABAMA 35243

Respectfully Submitted,

BENJAMIN BEDOGWAR ORYANG
AIS# 168079.    F2-34A

PRESS FIRMLY TO SEAL   PRESS FIRMLY TO SEAL



## UNITED STATES POSTAL SERVICE ® | PRIORITY® MAIL

☒ Expected delivery date specified for domestic use.

☒ Domestic shipments include $100 of insurance (restrictions apply).*

☒ USPS Tracking® service included for domestic and many international destinations.

☒ Limited international insurance.**

☒ When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.

** See International Mail Manual at *http://pe.usps.com* for availability and limitations of coverage.

FROM:

MR. BENJAMIN B. ORYANG
AIS# 168079 F2-34A
STATON CORRECTIONAL FACILITY
2690 MARION SPILLWAY ROAD
Elmore AL 36025

TO:

OFFICE OF THE CLERK
U.S. DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
1 CHURCH STREET, SUITE B-110
MONTGOMERY, AL 36104-4028

## FLAT RATE ENVELOPE
ONE RATE ☒ ANY WEIGHT

## TRACKED ☒ INSURED



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

To schedule free Package Pickup, scan the QR code.



USPS.COM/PICKUP

This package is made from post-consumer waste. Please recycle - again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.