IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BENJAMIN BEDOGWAR ORYANG, AIS #168079, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) ) | CIVIL ACT. NO. 2:21-cv-23-ECM [WO] |
| MS. WAUGH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

In 2019, Plaintiff Benjamin Bedogwar Oryang brought this action *pro se* against Defendants Tehum Care Services, Inc. d/b/a Corizon Health, Inc./Corizon LLC ("Corizon"), Ms. Waugh, Lieutenant Parker ("Parker"), Deidre Prevo ("Prevo"), Dr. Bell, Dr. Perryman, Joseph Headley, Wexford Health Services ("Wexford"), Dr. Mike Borowicz ("Dr. Borowicz"), Christopher Gordy, and Jefferson Dunn (collectively, "Defendants"),[1] asserting claims pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA") arising out of medical treatment he received while in ADOC's custody.[2]  In the operative complaint, the Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and costs.  On February 28, 2023, Corizon filed a suggestion of

---

[1] On December 7, 2021, the Court dismissed with prejudice all claims against the Alabama Department of Corrections ("ADOC") and Dr. Tahir Siddiq and dismissed without prejudice all claims against Dr. Chandler and Dr. Owens. (Doc. 112).

[2] The case was originally filed in the United States District Court for the Northern District of Alabama and was transferred to this Court in 2021. (*See* docs. 19, 20).

bankruptcy and notice of automatic stay. (Doc. 154).  The Court thereafter stayed the Plaintiff's action against Corizon only. (Doc. 156).

On February 16, 2024, the Magistrate Judge entered a Recommendation that the Defendants' motions for summary judgment (docs. 49, 50, 52, 53, 87, 92, and 104) be granted, that summary judgment be entered in favor of the Defendants on all claims, and that this action be dismissed with prejudice. (Doc. 176).  The Plaintiff filed objections to the Recommendation. (Doc. 178).  After carefully reviewing the record in this case, the Recommendation of the Magistrate Judge, and the Plaintiff's objections, the Court concludes that a ruling on the Recommendation's disposition of Corizon's motion for summary judgment (doc. 49) is due to be held in abeyance due to the automatic stay of all proceedings against Corizon pursuant to 11 U.S.C. § 362(a), that the remainder of the Recommendation is due to be adopted as modified herein, and that the remaining motions for summary judgment (docs. 50, 52, 53, 87, 92, and 104) are due to be granted.  The Court further finds that there is "no just reason for delay," *see* FED. R. CIV. P. 54(b), and thus final judgment will be entered separately as to the Plaintiff's action against Defendants Ms. Waugh, Lieutenant Parker, Deidre Prevo, Dr. Bell, Dr. Perryman, Joseph Headley, Wexford, Dr. Mike Borowicz, Christopher Gordy, and Jefferson Dunn.[3]

---

[3] The Court's subsequent references to "the Defendants" in this opinion do not include Corizon.

2

## II.  LEGAL STANDARD

When a party objects to a Magistrate Judge's Report and Recommendation, the district court must review the disputed portions *de novo*. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 674 (1980).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).  *De novo* review requires that the district court independently consider factual issues based on the record. *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990).  However, objections to the Magistrate Judge's Report and Recommendation must be sufficiently specific in order to warrant *de novo* review. *See LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988) ("Whenever any party files a timely and specific objection to a finding of fact by a magistrate, the district court has an obligation to conduct a *de novo* review of the record with respect to that factual issue.").  Otherwise, a Report and Recommendation is reviewed for clear error.

## III.  DISCUSSION

The Court has carefully reviewed the record in this case, the Recommendation of the Magistrate Judge, and the Plaintiff's objections.  To the extent the Plaintiff makes conclusory objections or merely restates the claims and factual assertions in the operative complaint, these objections are reviewed for clear error and are due to be overruled.

The Plaintiff raises several specific objections to the Recommendation.  The Court begins with his objections to the Magistrate Judge's conclusions that the Plaintiff failed to present a question of fact as to whether he suffered from an objectively serious medical need and whether the Defendants exhibited an objectively insufficient response.

### A. Objective and Subjective Prongs of Deliberate Indifference to Medical Need.

As the Magistrate Judge explained, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).  "In either of these situations, the medical need must be 'one that, if left unattended, "pos[es] a substantial risk of serious harm."'" *Id.* (alteration in original) (citation omitted).  While the Eleventh Circuit has held that "significant and substantial hearing loss that can be remedied by a hearing aid is a serious medical need," it has also cautioned that "not all hearing loss amounts to a serious medical condition." *Gilmore v. Hodges*, 738 F.3d 269, 278 (11th Cir. 2013).  "[I]f a plaintiff can 'carry on a normal conversation' and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need." *Id.* at 276–77 (citation omitted).

In support of his objection to the Magistrate Judge's finding that he has not shown an objectively serious medical need, the Plaintiff contends that the record shows that in

2000, an off-site specialist physician diagnosed the Plaintiff as suffering from a progressively degenerative disorder in the inner left ear, suffering worsening damage to the inner left ear and worsening hearing loss, requiring treatment to stop the inner ear damage and hearing loss, and requiring hearing aids and follows-ups with a specialist. (Doc. 178 at 13).[4]  The Plaintiff also points to record evidence, including his own affidavit and affidavits from other inmates, submitted in response to the Defendants' answers and special reports demonstrating that the Plaintiff's hearing loss has caused him to be unable to hear officers' orders and to miss meals, medical appointments, and other routine activities about which prisoners were informed through announcements in the dormitories. (Docs. 153-1, 153-2, 153-3).  Thus, the Recommendation's finding that the Plaintiff failed to provide evidence that his left-ear hearing loss prevented him "from such basic functions as following directions" was incorrect, (see doc. 176 at 13), and thus the Court declines to adopt it. Additionally, and relatedly, the Court concludes that the Plaintiff's objection to the Recommendation's finding that he failed to demonstrate an objectively serious medical need is due to be sustained.

Nonetheless, on this record, the Court finds that any error in the Recommendation's analysis on the objective prong of his deliberate indifference claim does not change the ultimate outcome because the Plaintiff fails to show error in the Magistrate Judge's conclusion that the Plaintiff failed to present a question of fact on the subjective prong.

---

[4] The Court previously limited the scope of his claims to September 30, 2017, which is two years prior to his filing this action. (See docs. 21, 28).

The Magistrate Judge found, based on undisputed evidence, that the Plaintiff received "various types of medical treatment" for his left-ear hearing loss, including "multiple examinations, a referral to a free-world ENT, and an MRI." (Doc. 176 at 13). The Plaintiff does not object to this finding, but he contends that the treatment provided by the Defendants was inadequate and that they could and should have done more to treat his ear damage and hearing loss—including providing him a hearing aid, "medication, surgery, ear-wash, ear debridement, ear cleaning, or any other implementation intended to inhibit or alleviate the progress of [his] hearing disease." (Doc. 178 at 17–18). But the medical care provided to a prisoner need not be "perfect, the best obtainable, or even very good" in order to comport with the Constitution. *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citation omitted). As the Recommendation explains, the free-world ENT who examined the Plaintiff, Dr. Evans, stated that "conventional hearing aids would not be useful or beneficial" for the Plaintiff and that "a CROS hearing aid may help but that most patients do not like them." (Doc. 87-1 at 4). Drs. Bell and Borowicz noted the ENT's diagnosis and advice. (*See generally* docs. 87-1, 87-2). That the Defendants' treatment of the Plaintiff may not have been "perfect, the best obtainable, or even very good" does not support a finding that they violated the Constitution. *See id.* (citation omitted). On this record, the Defendants' treatment of the Plaintiff was not constitutionally deficient, and at the very least it did not violate clearly established law. Accordingly, the Plaintiff's objections concerning the objective and subjective prongs of his deliberate

6

indifference claim are due to be sustained as to the finding concerning an objectively serious medical need but overruled in all other respects.

### B.  Policy or Custom of Deliberate Indifference

Additionally, the Plaintiff objects to the Magistrate Judge's conclusion that the Plaintiff failed to present a dispute of fact as to whether the Defendants had a policy or custom of deliberate indifference to prisoners' medical needs.  The Plaintiff contends that since 2000, the Defendants exhibited a policy or practice of failing to provide treatment for "ADOC prisoners with ailing ears if only one ear is afflicted." (Doc. 178 at 18).  In support, the Plaintiff cites evidence purportedly showing that ADOC and ADOC healthcare officials consistently denied him medical treatment, hearing aids, and accommodations based on their policy of treating prisoners with ailing ears only if both ears are afflicted.  A conclusory assertion of a policy, custom, or practice is insufficient to defeat a summary judgment motion. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (explaining that "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion").  Moreover, the Plaintiff does not identify evidence of any occasion where the Defendants' alleged policy or custom exacerbated another prisoner's medical condition; instead, the Plaintiff relies only on evidence of his own treatment.  The Eleventh Circuit has held that evidence which is limited to a plaintiff's own treatment amounts to proof of a single incident, which is insufficient to establish a policy or custom for purposes of imposing § 1983 liability. *Craig*

*v. Floyd Cnty.*, 643 F.3d 1306, 1311 (11th Cir. 2011).  Consequently, the Plaintiff's objections are due to be overruled.

### C. Objections to Recommendation as Premature

The Plaintiff also objects to the Magistrate Judge's Recommendation as "premature" because the Plaintiff had filed a motion pursuant to Federal Rule of Civil Procedure 56(d), which was still pending when the Recommendation was entered.  The record reveals that on June 14, 2022, the Plaintiff filed a "Response in Opposition" in which he moved the Court to "deny or defer consideration of the defendants' motions for summary judgement [sic] and motions to dismiss unless or until a reasonable amount of time after the defendants have completed service of essential discovery documents upon the plaintiff." (Doc. 151 at 1).  In his objections, the Plaintiff contends that he has unsuccessfully sought documents from the Defendants which would show, among other things, that the Plaintiff's left ear affliction began in 1999; in May 2000, a physician diagnosed the Plaintiff as requiring treatment for his inner left ear and accommodations for "progressively worsening hearing loss" in the Plaintiff's left ear; the Defendants denied the Plaintiff treatment consistently from mid-2013 through March 2021; and the Defendants' denial of treatment and accommodations for the Plaintiff constituted discrimination because the Defendants provided treatment and accommodations to other similarly situated prisoners.[5] (Doc. 178 at 9).

---

[5] In support of his contention that similarly situated prisoners received treatment and accommodations that he did not, the Plaintiff cites his own sworn allegations and declaration testimony.  The Plaintiff provides virtually no details concerning these other prisoners.

8

Even if these documents were before the Court, the Plaintiff fails to show how they would alter the Magistrate Judge's conclusion that no dispute of fact exists as to whether the Defendants were deliberately indifferent to the Plaintiff's serious medical need. Additionally, the Plaintiff's vague assertion that similarly situated prisoners were treated more favorably is insufficient to defeat summary judgment on his ADA claim. *See Ellis*, 432 F.3d at 1326.  Moreover, the Plaintiff's assertion that similarly situated prisoners were treated more favorably is insufficient to defeat summary judgment on his ADA claim against the individual capacity defendants because defendants cannot be held liable under the ADA in their individual capacities. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996).  Accordingly, the Plaintiff's objections regarding the allegedly premature nature of the Recommendation are due to be overruled.

### D.  ADA Claims

Additionally, the Plaintiff objects to the Magistrate Judge's conclusion that summary judgment is due to be granted on his ADA claims.  Construing his objections liberally, he objects to the Recommendation's finding that he failed to allege or demonstrate that his left-ear hearing loss "caused him to be excluded from participation in the prison's services, programs, or activities or that he suffered any denial of the prison's benefits or other forms of discrimination." (Doc. 176 at 17–18).  As explained above, the Plaintiff did produce evidence in response to the Defendants' answers and special reports demonstrating that his hearing loss has caused him to be unable to hear officers' orders and to miss meals, medical appointments, and other routine activities about which prisoners

9

were informed through announcements in the dormitories. (Docs. 153-1, 153-2, 153-3). Additionally, the Plaintiff appears to object to the Magistrate Judge's failure to expressly address whether the Defendants failed to provide reasonable accommodations for his hearing loss.

A plaintiff can pursue a Title II ADA claim on the theory of "failure to make reasonable accommodations." *Rylee v. Chapman*, 316 F. App'x 901, 906 (11th Cir. 2009) (per curiam) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008)).[6] "[T]he defendant's duty to provide a reasonable accommodation is not triggered until the plaintiff makes a 'specific demand' for an accommodation." *Id.* (citation omitted). "The claimant himself must explain what it is he requires—public entities are not required to 'guess at what accommodation they should provide.'" *Smith v. Dunn*, 568 F. Supp. 3d 1244, 1261 (M.D. Ala. 2021) (quoting *Randolph v. Rogers*, 170 F.3d 850, 858 (8th Cir. 1999)). "However, an express demand for a reasonable accommodation may be unnecessary where the need for an accommodation is obvious." *Arenas v. Ga. Dep't of Corr.*, 2020 WL 1849362, at *12 (S.D. Ga. Apr. 13, 2020); *see also Smith*, 568 F. Supp. 3d at 1261.

The Plaintiff contends that he was denied an accommodation for his hearing loss despite meeting with Prevo and Parker on December 11, 2017 "to address [his] ADA issues." (Doc. 178 at 27); (doc. 153-1 at 4). The Plaintiff claims that during this meeting,

---

[6] Here, and elsewhere in this opinion, the Court cites nonbinding authority. While the Court acknowledges that these cases are nonprecedential, the Court finds their analysis persuasive.

he explained to Prevo and Parker "the lack of ADA accommodation services for [his] hearing impairment" and his need for assistance with being notified "when announcements are made for meals, pillcall, fire-drills and other common activities." (Doc. 153-1 at 4).

The Court will assume for argument's sake that missing meals, medical appointments, and other routine activities amounts to an exclusion from participation in the prison's services, programs, or activities; a denial of the prison's benefits; or both. Nonetheless, the Court is not persuaded that, on this record, the Plaintiff's notifying Prevo and Parker at the December 11, 2017 meeting that he needed assistance with being notified about various events amounts to a "'specific demand' for an accommodation"—be it a hearing aid, "medication, surgery, ear-wash, ear debridement [or] ear cleaning"—such that the Defendants can be said to have failed to provide a reasonable accommodation. Additionally, on this record, the Court is not persuaded that his need for any of these specific accommodations was obvious to the Defendants for ADA purposes.

The Plaintiff further contends that he was denied a reasonable accommodation after submitting a Request for Accommodation form on October 11, 2019, in which he requested "a hearing-aid and all other prescriptions as ordered by the audiologist on April 9, 2018." (Docs. 25-6, 25-7). Prevo, ADOC's Statewide ADA Coordinator and/or Assistant Coordinator, explained that the hearing aid and prescriptions were "things to treat [the Plaintiff's] hearing impairment," and because ADA coordinators "lack the authority to treat conditions or make decisions regarding medical care, the denial of his request and appeal was based on the decision that was made by the medical care provider that assessed him."

(Doc. 104-4 at 2).  As noted above, Dr. Evans stated that "conventional hearing aids would not be useful or beneficial" for the Plaintiff and that "a CROS hearing aid may help but that most patients do not like them." (Doc. 87-1 at 4).  Drs. Bell and Borowicz noted the ENT's diagnosis and advice. (*See generally* docs. 87-1, 87-2).  Thus, the question is whether the failure to provide "conventional hearing aids [which] would not be useful or beneficial" or a different hearing aid which "may [have] help[ed] but that most patients do not like" amounts to the denial of a reasonable accommodation under the ADA.

"When an individual is unable to access services or benefits because of his disability, the ADA requires that the public entity provide sufficient accommodations *to ensure that individual is permitted access to the same benefits and services as others*." *Arenas*, 2020 WL 1849362, at *11 (emphasis added).  As indicated above, the ADA coordinators denied the Plaintiff's request for a hearing aid and prescriptions "based on the decision that was made by the medical care provider that assessed [the Plaintiff]." (Doc. 104-4 at 2).  While it is a close question, the Court concludes that on this record, the Plaintiff has failed to create a genuine dispute of material fact as to whether the Defendants failed to provide reasonable accommodations for his left-ear hearing loss.  Even if he had, the Plaintiff has failed to make a sufficient showing of deliberate indifference to be entitled to an award of damages on his ADA claim for substantially similar reasons.  *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019) (explaining that ordinarily, "proof of a Title II . . . violation entitles a plaintiff only to injunctive relief" and that "[t]o get damages—as [the Plaintiff] seeks here—a plaintiff must clear an additional hurdle: he

must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of 'deliberate indifference'" (citations omitted)).  On this record, the Plaintiff has failed to create a genuine dispute of material fact as to whether the ADA coordinators' decision not to provide him a hearing aid or prescriptions, which was based on the advice of the medical provider who assessed him, amounts to deliberate indifference. Finally, as explained above, summary judgment is due to be granted on his ADA claim against the individual capacity defendants in any event because defendants cannot be held liable under the ADA in their individual capacities. *See Mason*, 82 F.3d at 1009. Consequently, the Plaintiff's objections are due to be overruled.

### E.  Dismissal of Corizon

The Plaintiff further objects to the dismissal of the claims against Corizon because he has been unable to pursue these claims due to the automatic stay.  Because the Court will hold in abeyance its ruling on Corizon's motion for summary judgment, this objection is due to be overruled without prejudice.

## IV.  CONCLUSION

Accordingly, upon an independent review of the record, and for good cause, it is ORDERED as follows:

1.    The Plaintiff's Objections (doc. 178) are SUSTAINED as to the finding concerning an objectively serious medical need and OVERRULED in all other respects;

2.    The Recommendation of the Magistrate Judge (doc. 176) is ADOPTED as modified herein;

13

3.     A ruling on the Recommendation's disposition of Corizon's motion for summary judgment (doc. 49) is HELD IN ABEYANCE due to the automatic stay of all proceedings against Corizon pursuant to 11 U.S.C. § 362(a);

4.     The answers and special reports filed by Defendants Ms. Waugh, Lieutenant Parker, Deidre Prevo, Dr. Bell, Dr. Perryman, Joseph Headley, Wexford, Dr. Mike Borowicz, Christopher Gordy, and Jefferson Dunn (docs. 50, 52, 53, 87, 92, and 104) are construed as motions for summary judgment, and the motions for summary judgment (docs. 50, 52, 53, 87, 92, and 104) are GRANTED;

5.     Because there is "no just reason for delay," *see* FED. R. CIV. P. 54(b), final judgment will be entered separately as to Plaintiff's action against Defendants Ms. Waugh, Lieutenant Parker, Deidre Prevo, Dr. Bell, Dr. Perryman, Joseph Headley, Wexford, Dr. Mike Borowicz, Christopher Gordy, and Jefferson Dunn;

6.     The Clerk of the Court is DIRECTED to terminate Defendants Ms. Waugh, Lieutenant Parker, Deidre Prevo, Dr. Bell, Dr. Perryman, Joseph Headley, Wexford, Dr. Mike Borowicz, Christopher Gordy, and Jefferson Dunn as parties to this action.

DONE this 26th day of March, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

14